IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WONDERLAND SWITZERLAND AG | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-727 (RGA) |
| | ) | |
| EVENFLO COMPANY, INC., | ) | **PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |

**DEFENDANT EVENFLO COMPANY INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE THE OPINIONS OF PLAINTIFF'S DAMAGES EXPERT W. TODD SCHOETTELKOTTE**

|  |  |
|---|---|
| | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| | Jack B. Blumenfeld (#1014) |
| | Jeremy A. Tigan (#5239) |
| OF COUNSEL: | Sarah E. Simonetti (#6698) |
| | 1201 North Market Street |
| Lauren Douville | P.O. Box 1347 |
| B. Trent Webb | Wilmington, DE  19899 |
| Aaron E. Hankel | (302) 658-9200 |
| Lydia C. Raw | jblumenfeld@morrisnichols.com |
| SHOOK, HARDY & BACON L.L.P. | jtigan@morrisnichols.com |
| 2555 Grand Blvd. | ssimonetti@morrisnichols.com |
| Kansas City, MO  64108 | |
| (816) 559-0348 | *Attorneys for Defendant* |

**Confidential Version Filed: March 10, 2022**

**Public Version Filed: March 17, 2022**

**TABLE OF CONTENTS**

I.      NATURE & STAGE OF THE PROCEEDINGS ................................................................. 1

II.     SUMMARY OF ARGUMENT ......................................................................................... 1

III.    ARGUMENT .................................................................................................................... 2

        A.      Legal Standards for *Daubert* and Patent Infringement Damages .......................... 2

        B.      Mr. Schoettelkotte's Damages Opinion for the '951 Patent is Unreliable,
                Unhelpful, and Inadmissible Because he Fails to Apportion and Relies on
                (Admittedly) Non-comparable Licenses. ............................................................... 3

                1.      Mr. Schoettelkotte's Reliance on Economically Non-comparable
                        Agreements—the "Meeker" Agreements—Is Unreliable. .......................... 4

                2.      Even if the Meeker Agreements were Comparable, Mr. Schoettelkotte's
                        Reliance on them is Still Improper Because He Failed to Apportion. .......... 6

                3.      Mr. Schoettelkotte's Use of the ▮▮▮▮▮ Agreement—An Agreement That
                        He Admits is Noncomparable—as a "Reasonableness Check" Is
                        Unreliable and Unhelpful. ........................................................................... 10

        C.      Mr. Schoettelkotte's Damages Opinion for the '043 Patent Fails to Apportion the
                Value of Non-Patented Features and Must be Excluded. .................................... 12

IV.     CONCLUSION ............................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AVM Techs., LLC v. Intel Corp.*,
No. 10- 610-RGA, 2013 WL 126233 (D. Del. Jan. 4, 2013)........................................................10

*Bayer HealthCare LLC v. Baxalta Inc.*,
No. 16- 1122-RGA, 2019 WL 330149 (D. Del. Jan. 25, 2019).................................................11

*Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc.*,
No. 15-152-RGA, 2018 WL 4691047 (D. Del. Sept. 28, 2018)................................................9

*Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc.*,
No. 15-152-RGA, 2018 WL 5729732 (D. Del. Nov. 2, 2018) ..................................................9

*Bourjaily v. United States*,
483 U.S. 171 (1987)..................................................................................................................2

*Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*,
809 F.3d 1295 (Fed. Cir. 2015)................................................................................................7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993)..................................................................................................................2

*Dow Chem. Co. v. Mee Indus., Inc.*,
341 F.3d 1370 (Fed. Cir. 2003).................................................................................................2

*Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*,
879 F.3d 1332 (Fed. Cir. 2018).................................................................................................3

*Garretson v. Clark*,
111 U.S. 120 (1884)..................................................................................................................3

*General Elec. Co. v. Joiner*,
522 U.S. 136 (1997)..................................................................................................................2

*ICM Controls Corp. v. Honeywell Int'l Inc.*,
No. 12-cv-1766, 2021 WL 3403734 (N.D.N.Y. Aug. 4, 2021)...............................................11

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
694 F.3d 51 (Fed. Cir. 2012)...............................................................................................6, 12

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) .................................................................................... *passim*

*M2M Sols. LLC v. Enfora, Inc.*,
    167 F. Supp. 3d 665, 678 (D. Del. 2016)....................................................................................11

*ResQNet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010).............................................................................................3, 11

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011)...............................................................................................6

*Vectura Ltd. v. Glaxosmithkline LLC*,
    981 F.3d 1030 (Fed. Cir. 2020).................................................................................................7

*VirnetX, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014)..................................................................................3, 10, 14

*Withrow v. Spears*,
    967 F. Supp. 2d 982 (D. Del. 2013)..........................................................................................2

*Wonderland Switzerland AG v. Evenflo Co., Inc.*,
    No. 18-1990-RGA, 2021 WL 4453656 (D. Del. Sept. 29, 2021).............................................5

iii

## I.    NATURE & STAGE OF THE PROCEEDINGS

Plaintiff Wonderland Switzerland AG ("Wonderland") filed this patent infringement action against Defendant Evenflo Company, Inc. ("Evenflo") on May 29, 2020 alleging infringement of two patents—U.S. Patent Nos. 8,141,951 (the "'951 patent") and 7,625,043 (the "'043 patent"). (D.I. 1 at 9, 23).[1] Fact and expert discovery are closed. A pretrial conference is set for August 5, 2022, and a jury trial is set to begin on August 29, 2022. (D.I. 95.)

## II.    SUMMARY OF ARGUMENT

Evenflo respectfully requests that the Court exclude certain testimony and opinions of Wonderland's damages expert, Mr. Schoettelkotte, that are unreliable, unhelpful, and inadmissible. It is axiomatic that prior patent licenses may only be relied on if they are economically and technologically comparable. Mr. Schoettelkotte's reasonable royalty opinion for the '951 patent violates this requirement by relying on two non-comparable agreements— including one this Court already held is not comparable to a hypothetical negotiation between these parties—to justify his royalty opinion. Likewise, Mr. Schoettelkotte relies on a second agreement for a "reasonableness check" of his royalty opinion, even though he admits the agreement is not comparable. Mr. Schoettelkotte's opinions relating to the '951 patent should be excluded.

In addition, Mr. Schoettelkotte's opinions for the '951 patent and the '043 patent fail to apportion out the value of non-patented features. With respect to the '951 patent, Mr. Schoettelkotte alleges that he was not required to apportion because he relied on a technologically comparable license. Although prior agreements may, in limited circumstances, have built-in apportionment, that is not the case here, and Mr. Schoettelkotte's opinions should be excluded because they assume that any such built-in apportionment (there is none) would be sufficient. And

---

[1] Wonderland originally alleged infringement of a design patent also (D.I. 1 at 45) but dropped that allegation in its amended complaint. (D.I. 41.)

with respect to the '043 patent, Mr. Schoettelkotte summarily claims that if there is "any portion of the profit premium not attributable to the '043 patent" he accounted for it. He could not identify what portion of the profit premium he believed was attributable to non-patented feature at his deposition, instead confirming that, to the extent apportionment was necessary, he surely did apportion. Mr. Schoettelkotte's opinions are conclusory and unreliable, and the Court should exclude them for these reasons as well.

## III. ARGUMENT

### A. Legal Standards for *Daubert* and Patent Infringement Damages

The proponent of expert evidence bears the burden of proof as to the admissibility of such evidence and must prove the testimony's reliability and relevance by a preponderance of the evidence. *See*, *e.g.*, *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987); *Withrow v. Spears*, 967 F. Supp. 2d 982, 992 (D. Del. 2013). The trial judge is the gatekeeper and must ensure that only relevant and reliable expert testimony reaches the jury. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993). "Relevance depends upon whether [the expert's] reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 593. Otherwise, the testimony fails the "fit" requirement because it is not "sufficiently tied to the facts of the case" to assist the jury in resolving a factual dispute. *Id*. at 591(citation omitted). Expert testimony "must constitute more than subjective belief or unsupported speculation." *Id*. at 590. An expert's opinion is inherently unreliable and inadmissible if there is "too great an analytical gap" between the basis for the expert's opinion and the opinion proffered. *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

The patentee bears the burden of proving damages. *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1372, 1381 (Fed. Cir. 2003). Where licenses are at issue, the patentee further has "the burden to prove that the licenses were sufficiently comparable." *Lucent Techs., Inc. v.*

*Gateway, Inc.*, 580 F.3d 1301, 1329 (Fed. Cir. 2009); *see ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010).

The most common approach to determining a reasonable royalty is through a hypothetical negotiation, which "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). A less common approach is the "analytical method" which "focuses on the infringer's projections of profit for the infringing product." *Id.*

Regardless of the method used, "a patentee must take care to seek only those damages attributable to the infringing features." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014). A patentee "must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative" *Garretson v. Clark*, 111 U.S. 120, 121 (1884) (quotation marks omitted).

"To be admissible, expert testimony opining on a reasonable royalty must 'sufficiently [tie the expert testimony on damages] to the facts of the case. If the patentee fails to tie the theory to the facts of the case, the testimony must be excluded.'" *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1349 (Fed. Cir. 2018) (quoting *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011)).

**B. Mr. Schoettelkotte's Damages Opinion for the '951 Patent is Unreliable, Unhelpful, and Inadmissible Because he Fails to Apportion and Relies on (Admittedly) Non-comparable Licenses.**

To determine a royalty rate for the '951 patent, Mr. Schoettelkotte considered two non-comparable licenses. First, he considered a series of related ▮▮▮▮▮▮▮▮▮▮▮▮ agreements between Evenflo and Mr. Paul Meeker. Ex. A, Schoettelkotte Rpt. ¶ 182. Under those agreements,

3

Mr. Meeker granted Evenflo ██████████████████████████████████████████

████████████████████████████████████████████████████████████████████

*Id.* at ¶¶ 73-81, 182. The Meeker agreements were executed ██████████████████. *Id.* at ¶¶ 73-75. At least 22 patents resulted from the consulting arrangement between Mr. Meeker and Evenflo, which claimed inventions directed to a range of children's products, including door bouncers, high chairs, and car seats. *Id.* at ¶ 76. This agreement is not economically comparable to the hypothetical negotiation between Wonderland and Evenflo, as further discussed below.

Second, Mr. Schoettelkotte relied on an agreement between ██████ and Evenflo to provide a "reasonableness check" on his opinion. *Id.* ¶ 183; Ex. B, Schoettelkotte Depo. Tr. at 52:24-55:2. Yet, in doing so, he admits that the ██████ agreement does not cover comparable technology to the '951 patent. Ex. A, Schoettelkotte Rpt. at ¶ 136.

### 1. Mr. Schoettelkotte's Reliance on Economically Non-comparable Agreements—the "Meeker" Agreements—Is Unreliable.

Mr. Schoettelkotte's reliance on the Meeker agreements to inform a royalty rate for the '951 patent is unreliable because what Evenflo agreed to ███████████████████████████████ ████████████████████████████████████████████████████████████ has no application to the hypothetical negotiation in this case. Wonderland bears the burden of showing that the Meeker agreements are economically comparable, and Wonderland fails to meet that burden. *Lucent Techs*, 580 F.3d at 1329. It is undisputed that the terms of the Meeker agreements differ substantially from the circumstances surrounding the hypothetical negotiation. The Meeker agreements were executed ███████████████, whereas the alleged hypothetical negotiation date is decades later in late 2014. Ex. A, Schoettelkotte Rpt. at ¶¶ 58, 73, 78. In addition, the Meeker agreements required Mr. Meeker ████████████████████████████████████ ████████████████████████████████████████████ whereas the

hypothetical negotiation would have involved a single license for known technology in the '951 patent. *Id.* at ¶ 73. Another difference is that Mr. Meeker ████████████████████████, whereas the parties to the hypothetical negotiation are competitors. *Id.* at ¶ 79. Further, Mr. Meeker ██████ ████████████████████████████████, which differs substantially from the non-exclusive license that would be agreed upon during a hypothetical negotiation. *Id.* at ¶ 80. Indeed, the only commonality between the Meeker agreements and Mr. Schoettelkotte's hypothetical negotiation opinion for the '951 patent is that ████████████████████████████████ *Id.* at ¶¶ 73-75, 182, 184. But even so, the Meeker agreements ████████████████████████████ ████████████ and Mr. Schoettelkotte contends that the parties would have agreed to a per-unit rate. *Id.*

The circumstances of the present case are no different than those in *Wonderland Switzerland AG v. Evenflo Co., Inc.* ("Wonderland I"), No. 18-1990-RGA, 2021 WL 4453656 (D. Del. Sept. 29, 2021), where this Court held that the Meeker agreement was non-comparable and inadmissible. *Id.* at *13. Specifically, the Court determined that the Meeker agreements did not "provide a sound basis for calculating reasonable royalties" between Wonderland and Evenflo, because "[t]he Meeker agreement[s] involved hiring the inventorship services of an individual; the parties here are direct competitors. Licensing terms and applicable royalty rates in that agreement, therefore, are inapposite to the dynamics here." *Id.*

To make matters worse, Mr. Schoettelkotte does not opine that the Meeker agreement is economically comparable to the hypothetical negotiation. At most, his opinion is that "the Meeker agreements provide a benchmark for which the parties agreed that any particular invention was valued[.]"[2] *Id.* at 81. But this ignores that the only relevant agreements in a hypothetical negotiation

---

[2] Notably, despite claiming the Meeker agreement is relevant for "any particular invention" several times in his opening report (Ex. A, ¶¶ 81, 182), Mr. Schoettelkotte apparently did not find

are those that are technically and economically comparable. Agreements that suggest "loose or vague comparability between different technologies or licenses do[] not suffice," let alone do agreements that lack economic comparability altogether. *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012); *see also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327–32 (Fed. Cir. 2009) (reliance on license agreements "radically different" from the hypothetical negotiation weighed strongly against the jury's damages award).

When faced with the criticism that the Meeker agreements are not economically comparable, Mr. Schoettelkotte provided no evidence to the contrary. Ex. C., Schoettelkotte Reply at ¶ 48. Instead, he opined that he "identified and accounted for any differences between the Meeker agreements and the hypothetical negotiation," as though describing ways the agreements are not comparable were sufficient to transform them into comparable agreements. *Id.* It is not. "[T]here must be a basis in fact to associate the royalty rates used in prior licenses to the particular hypothetical negotiation at issue in the case." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011). There is no such basis here.

For these reasons, the Meeker agreements will not aid the trier of fact in recreating a hypothetical negotiation between a willing licensor and willing licensee in this case. The Court should exclude Mr. Schoettelkotte's reliance on them.

### 2. Even if the Meeker Agreements were Comparable, Mr. Schoettelkotte's Reliance on them is Still Improper Because He Failed to Apportion.

The Court should also exclude Mr. Schoettelkotte's opinions because he not only based his royalty rate on a non-comparable license agreement, but also he failed to account for the value of

---

it relevant to value the technology in the '043 patent and contends that doing so is not proper. Ex. C, Schoettelkotte Reply Rpt. ¶¶ 45-49.

non-patented features in the accused products, incorrectly assuming that the Meeker agreements provided "built-in" apportionment.

Wonderland seeks a ▮▮▮▮ royalty for the alleged infringement of the '951 patent and bases the calculation of this royalty on the rates in the Meeker agreements, adjusted based on the *Georgia-Pacific* factors. However, despite agreeing that the products accused of infringing the '951 patent have valuable non-patented features (Ex. B, Depo Tr. at 92:21-93:4), he admits that he did not make any adjustments to account for the value of those features when arriving at his ▮ reasonable royalty conclusion. *Id.* at 93:5-14.[3] Instead, he says that he focused on the alleged comparability to the technology in the Meeker agreement as a substitute for apportionment. *Id.*

> Well, I would agree that there are certainly features and attributes of the patent or of the product that are not covered by the '951, which is why I focused on comparability of the technology as set forth in the Meeker agreement.

*Id.* at 92:21-93:4.

Although there are circumstances "when a sufficiently comparable license is used as the basis for determining the appropriate royalty, [and] further apportionment may not necessarily be required," this is not such a case. *Vectura Ltd. v. Glaxosmithkline LLC*, 981 F.3d 1030, 1040 (Fed. Cir. 2020). "Built-in apportionment effectively assumes that the negotiators of a comparable license settled on a royalty rate and royalty base combination embodying the value of the asserted patent." *Id.* at 1041. This is commonly the case where the prior license or negotiation relied upon is between the same parties as the hypothetical negotiation. *Id.*; *see Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1302-03 (Fed. Cir. 2015) (finding built-in apportionment for negotiations between the same parties over the same patent).

---

[3] Ex. A., Schoettelkotte Rpt. ¶¶ 138-169 (discussing only the '043 patent in Factor 13).

Here, the limited exception of "built-in" apportionment does not apply because the Meeker agreements are not comparable at all—and especially not temporally or economically—and did not involve the same parties as those involved in the hypothetical negotiation.

First, Mr. Schoettelkotte points to no evidence that any of the allegedly "technologically comparable" patents licensed to Evenflo under the Meeker agreement were ever incorporated into an Evenflo product. Without this most basic of information, there was no way for Mr. Schoettelkotte to reliably conclude that the agreements apportioned Mr. Meeker's contributions over the contributions of others to any such hypothetical products.

Second, even if Meeker's inventions were commercialized, Mr. Schoettelkotte provides no basis to assume that all three of the "technologically comparable" Meeker patents contributed equal relative value to three distinct commercial products. In particular, the three allegedly comparable patents are a 1989 patent directed to a three-point seat belt in a car seat, a 1996 patent directed to a high chair of adjustable height with an adjustable tray, and a 1999 patent directed to an adjustable handle in an infant car seat.[4] Ex. A, Schoettelkotte Rpt. at ¶ 77. Mr. Schoettelkotte provides no reason to believe that the value of being able to adjust a high chair (relative to the other non-patented features of the high chair) is equivalent to the value of having an adjustable backrest on an infant car seat (relative to the other non-patented features of the infant car seat). This problem is confounded by the fact that Mr. Meeker exclusively licensed 22 total patents to Evenflo. *Id.* at ¶ 76. A non-exclusive license at a hypothetical negotiation in 2014 is a far cry from an exclusive license to 22 patents in ███████████ Mr. Schoettelkotte's opinions are unreasonable, unsupported, and inadmissible—there is simply no credible claim that an exclusive

---

[4] *See* Ex. D, U.S. Patent No. 4,826,246; Ex. E, U.S. Patent No. 5,489,138, Ex. F, U.S. Patent No. 5,971,476, respectively.

license to 22 patents ██████████████ is reflective of the exact same patent value at a hypothetical negotiation in 2014.

Finally, even if Mr. Schoettelkotte were able to show that some sort of apportionment was considered by Mr. Meeker and Evenflo, he provides no reason to conclude that an identical apportionment analysis should apply here. As this Court has previously observed:

> [T]he fact that the parties to each agreement incorporated the concept of apportionment into their reasonable royalties does not itself show that the same royalty rates apply here. For example, one comparable agreement might provide a 15% reasonable royalty where the patented technology accounts for 50% of a product. A second comparable agreement might provide a 3% reasonable royalty where the patented technology accounts for 10% of a different product. Both rates are apportioned, but further analysis is required to determine whether either rate is apportioned in a comparable fashion to the contribution of the patented technology to the accused products.

*Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc.*, No. 15-152-RGA, 2018 WL 4691047, at *8 n. 3 (D. Del. Sept. 28, 2018).

This situation is also similar to *Omega Patents., LLC v. CalAmp Corp.*, where the plaintiff offered testimony of a standard license rate of five dollars per unit regardless of how many patents were licensed. 13 F.4th 1361, 1379 (Fed. Cir. 2021). The Federal Circuit held that this licensing scenario did "not sufficiently speak to 'built-in apportionment' between the patented improvement … and the conventional features of the [accused products]." *Id.* Likewise here, the Meeker agreements provide for ██████████████████████████████████

██████████████ Ex. A, Schoettelkotte Rpt. at ¶ 75. Thus, there is no "built-in" apportionment.[5]

---

[5] This Court has also excluded expert opinions for improperly relying on built-in apportionment when it was, as here, illogical to do so: "I excluded [the] initial reasonable royalty opinion because he relied on the benchmark licenses as having built in apportionment, without conducting a separate apportionment analysis, and without a logical basis for doing so. Specifically, [he] failed to explain how the royalty rates in the benchmark licenses were 'apportioned in a comparable fashion to the contribution of the patented technology to the accused

Because Mr. Schoettelkotte provides no reasons why the Meeker agreements included "built in apportionment" or that any such apportionment was done "in a comparable fashion," the Court should exclude his opinions for the same reasons. *See VirnetX, Inc. v. Cisco, Sys.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014).

**3. Mr. Schoettelkotte's Use of the ▮▮▮▮ Agreement—An Agreement That He Admits is Noncomparable—as a "Reasonableness Check" Is Unreliable and Unhelpful.**

Mr. Schoettelkotte's reliance on the ▮▮▮▮ agreement should be excluded because he admits that it is not a technologically comparable license. Ex. A, Schoettelkotte Rpt. at ¶ 136. The ▮▮▮▮ agreement licensed rights to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which is vastly different technology than the movable backrest claimed in the '951 patent. *Id.* at ¶ 134. If a prior agreement is not comparable, it is unreliable and unhelpful to a jury; reliance on that agreement should not be permitted at trial. "Federal Circuit precedent is clear that [Wonderland] must show that the prior licenses are truly comparable to the license that the parties would have negotiated for the asserted patent before introducing this evidence to the jury." *AVM Techs., LLC v. Intel Corp.*, No. 10- 610-RGA, 2013 WL 126233, at *3 (D. Del. Jan. 4, 2013) (citation omitted).

Although Mr. Schoettelkotte's analysis of the reasonable royalty rate for the '951 patent focuses on the Meeker agreements, he also offends traditional standards by relying on the ▮▮▮▮ agreement to arrive at a ▮▮▮▮ royalty despite admitting it is not comparable. Ex. A, Schoettelkotte Rpt. at ¶ 136 ("I understand from Dr. Cameron that the [technology in the ▮▮▮▮ agreement] is not comparable to the patents at issue."); *see also*, *id.* at ¶¶ 73-81.

---

products.'" *Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc.*, No. 15-152-RGA, 2018 WL 5729732, at *2 (D. Del. Nov. 2, 2018).

Mr. Schoettelkotte opines that his reliance on the ██████ agreement is appropriate because it is used only as a "reasonableness check." Ex. B, Schoettelkotte Depo. Tr. at 53:3-5 ("I'm looking at it as a reasonableness check based on my opinions as it relates to the Meeker analogy."). Specifically, he opines that the ██████ agreement—a ██████████████████



██████ shows the "reasonableness" of Mr. Schoettelkotte's determination that a reasonable royalty for the '951 patent would be ██████. Ex. A, Schoettelkotte Rpt. at ¶¶ 134, 135, 183.

This explanation does not justify admitting Mr. Schoettelkotte's improper opinions; rather, it mandates their exclusion. Essentially, Mr. Schoettelkotte plans to suggest to the jury that because Evenflo has paid ██████████ in the past, it is "reasonable" to argue that Evenflo should pay ██ ██████ here—even though the prior rate was with an unrelated entity for admittedly non-comparable technology.

Claiming that a license provides a "reasonableness check" cannot provide a back-door to the fundamental requirement that only evidence of comparable licenses may be presented to a jury. *See ResQNet.com, Inc.*, 594 F.3d at 871 (holding that licenses that did not relate to the claimed technology "simply have no place in this case").This Court, and others, have held the same:

> I find little merit in [the] argument that [a damages expert] can use incomparable licenses in his reasonable royalty analysis if he only uses them as a "sanity check," rather than using them to drive the analysis. Federal Circuit precedent requires that for a license to be used in a damages analysis, the license must be proven comparable to the hypothetical negotiation. *See, e.g., Lucent Techs.*, 580 F.3d at 1325. [A party] cannot escape this requirement by suggesting that the incomparable licenses only played a minor role as a quantitative reference point, instead of being a driving force in the reasonable royalty estimate.

*M2M Sols. LLC v. Enfora, Inc.*, 167 F. Supp. 3d 665, 678 (D. Del. 2016); *see also ICM Controls Corp. v. Honeywell Int'l Inc.*, No. 12-cv-1766, 2021 WL 3403734, at *5 (N.D.N.Y. Aug. 4, 2021) (excluding reliance on a noncomparable license allegedly used "just as a check").

11

Indeed, "[c]omparability is a preliminary issue. An expert cannot retroactively justify the use of certain agreements by asserting that his ultimate damages value is similar to the values in those agreements." *Bayer HealthCare LLC v. Baxalta Inc.*, No. 16- 1122-RGA, 2019 WL 330149, at \*6 (D. Del. Jan. 25, 2019). That is exactly what Mr. Schoettelkotte did here, and the Court should exclude his opinions as a result. *See* Ex. B, Schoettelkotte Depo. Tr. at 54:18-22 ("Because I'm in essence understanding that the rate that I have arrived at independently of the ███████ agreement is a rate that is not inconsistent with what I see in the ███████ agreement."). *See also LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 80 (Fed. Cir. 2012) (reversing damages verdict where district court "erroneously permitted continued reliance" on non-comparable evidence).

Because the ███████ agreement is admittedly not comparable, Mr. Schoettelkotte's opinions drawn from the same should be excluded.[6]

### C. Mr. Schoettelkotte's Damages Opinion for the '043 Patent Fails to Apportion the Value of Non-Patented Features and Must be Excluded.

Mr. Schoettelkotte's damages opinion for the '043 patent should be excluded because it does not apportion out the value of non-patented features. Using the analytical method of patent damages, Mr. Schoettelkotte calculates three "profit premiums" by comparing projected profits for the accused products over existing products and product categories that do not practice the '043 patent. Ex. A, Schoettelkotte Rpt. ¶¶ 138-169. However, Mr. Schoettelkotte's report fails to identify what portion of each calculated profit premium is attributable to the '043 patent, and which portion is attributable to non-patented features. Apportionment is a required step, and Mr.

---

[6] Mr. Schoettelkotte's opinions relating to the ███████ agreement are even more egregious because he admitted that he could not recall whether he analyzed if it was economically comparable. *See* Ex. B, Schoettelkotte Depo. Tr. at 55:22-56:4. Mr. Schoettelkotte's failure to articulate economic comparability is yet another reason to exclude his opinions involving the ███████ agreement.

Schoettelkotte's failure to provide a quantitative measure for non-patented features requires exclusion. *Lucent Techs., Inc.*, 580 F.3d at 1324.

The first profit premium that Mr. Schoettelkotte calculated compares the anticipated profits of the SafeMax, Evolve, and Transitions car seats over pre-existing Evenflo backless booster seats. The SafeMax, Evolve, and Transitions car seats (also called the "Turducken") car seats, are 3-in-1 car seats with harnessed booster, belt-positioning booster, and no-back booster modes. Ex. A, Schoettelkotte Rpt. ¶ 47. Existing Evenflo backless booster seats included one or two of these modes. With respect to non-patented features of the Turducken he states:

> I have considered that the parties to the hypothetical negotiations would have considered a downward adjustment to this profit premium to account for any portion of the profit premium not attributable to the '043 patent.

*Id.* at ¶ 147, 178. By using the phrase "for any portion," Mr. Schoettelkotte does not take a position on whether any portion of the profit premium is attributable to the '043 patent, much less identify what that portion is. In effect, he states "to the extent there is something I was required to apportion for, I did." He confirmed this view at his deposition:

> [I]n large part there would not need to be any adjustments taken for any additional features, however, **to the extent that there was an necessity to do that**, I've adjusted my rate ▮▮▮ based on these analytical approaches, as well as any additional feature adjustments and the Georgia-Pacific amounts.

*See* Ex. B, Schoettelkotte Depo. Tr. at 156:14-20. This is insufficient. Mr. Schoettelkotte was asked at least three times during his deposition to identify what portion of the profit premium[7] he

---

[7] Specifically, he was asked what amount of the profit premium he understood to be attributable to the '043 patent. *See* Ex. B, Schoettelkotte Depo. Tr. at 137:25-144:18. He was unable to provide a specific response. He was then asked: "Very specifically, can you give me a number or a percentage of your profit calculation in the comparison of Turducken to booster category that is attributable to the '043 as opposed to any other features?" *Id.* at 144:19-10. He responded by again describing his total adjustments. He was asked, a third time, "Are you able to tell me what portion of that total adjustment is -- was made based on the value of features not related to the '043 patent?" He was unable to identify a particular figure, relying instead on the results of the other two analytical approaches. *Id.* at 145:11-146:4.

understood to be attributable to the '043 patent. He was unable to provide a percentage each time. *Id.* at 137:25-146:4. Mr. Schoettelkotte's testimony that he apportioned "to the extent" it was necessary is not reliable or helpful to a jury. It also is not sufficient to show that his final opinions "comport[] with settled principles of apportionment" and should be "allowed to reach the jury." *VirnetX, Inc. v. Cisco, Sys.*, 767 F.3d at 1328.

In addition, Mr. Schoettelkotte's hedging language does not help the jury determine whether or not he took the ▮ royalty he ascribed to the '951 patent into account in his apportionment analysis. He was required to do so. The SafeMax, Evolve, and Transitions car seats are accused of infringing the '951 patent but the pre-existing backless booster car seats are not.

Therefore the profit premium that Mr. Schoettelkotte calculated includes the value of both the '951 and the '043 patents. If he did apportion out the value of the '951 patent from the value of the '043 patent, it is not described in his report, and he could not articulate it at deposition. A hallmark of apportionment failure. For this additional reason, Mr. Schoettelkotte's damages opinions for the '043 patent should be excluded.

The second profit premium that Mr. Schoettelkotte calculated compares the anticipated profits of the accused EveryKid and EveryFit products over Evenflo's convertible car seats. The EveryKid and EverFit car seats are 4-in-1 car seats that include rear-facing harness, high-back booster, and backless booster modes. Ex. A, Schoettelkotte Rpt. ¶ 48. None of Evenflo's existing convertible car seats included a backless booster mode.[8] *Id.* at ¶ 153. The final profit premium that Mr. Schoettelkotte calculated compares the anticipated profits of the accused EveryKid and EveryFit products over the EveryStage car seats, which did not include a backless booster mode. He does not attempt in either case to quantify the contributions of the '043 patent (assuming those

---

[8] Many also did not include a high-back booster mode. Ex. A, Schoettelkotte Rpt. ¶ 153.

14

contributions are the addition of backless booster mode) over non-patented features. *See Lucent Techs., Inc.*, 580 F.3d at 1324.

Instead, with respect to the second profit premium Mr. Schoettelkotte states that the addition of a fourth mode to a convertible car seat was "very important" (*id.* at ¶ 157) and with respect to the third profit premium, he merely states that the "primary" difference is "the backless booster mode." *Id.* at ¶ 166. During his deposition, however, Mr. Schoettelkotte again claimed that to the extent he was required to make any adjustments, he did so:

> there would be a downward adjustment **to take into account any elements not necessarily attributable to the '043** patent, so **to the extent that there was** other elements that would be driving value, anything else, as well as also downward for the other analytical analyses [listing profit premiums from the second and third comparisons] again to take into account any other elements of difference between the products outside of the '043 patent, so apportioning down from there.

Ex. B, Schoettelkotte Depo. Tr. at 140:16-141:1. However, once again, it is not possible to tell *how* Mr. Schoettelkotte accounted for any value of the '951 patent in his analysis, despite his conclusory statements that he did.

In addition, the products he compares in obtaining his second and third profit premium (the convertible car seat category and the EveryStage) are not accused of infringing the '951 patent. Because Mr. Schoettelkotte failed to appropriately apportion down to just the features accused of infringing the '043 patent, it appears he also failed to account for the separate ▮ royalty that he imposed on the '951 patent. Therefore Mr. Schoettelkotte fails to properly apportion for non-patented features with respect to any of the three profit premium calculations under the analytical method. For these reasons, his damages opinions are unreliable and untethered to the facts of this case and should be excluded.

## IV.   CONCLUSION

For the foregoing reasons, Evenflo respectfully requests the Court grant its motion.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

_____

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Sarah E. Simonetti (#6698)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com
ssimonetti@morrisnichols.com

*Attorneys for Defendant*

OF COUNSEL:

Lauren Douville
B. Trent Webb
Aaron E. Hankel
Lydia C. Raw
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO  64108
(816) 559-0348

March 10, 2022

16