**CONFIDENTIAL**
**SUBJECT TO THE PROTECTIVE ORDER**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WONDERLAND SWITZERLAND AG, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.  20-727-RGA |
| | ) | |
| v. | ) | **REDACTED PUBLIC VERSION** |
| | ) | |
| EVENFLO COMPANY, INC., | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |
| | ) | |

**WONDERLAND'S OPPOSITION TO EVENFLO'S**
**MOTION TO EXCLUDE THE OPINIONS OF PLAINTIFF'S**
**DAMAGES EXPERT W. TODD SCHOETTELKOTTE**

*Of Counsel:*

Bijal V. Vakil
Eric Lancaster
ALLEN & OVERY LLP
550 High Street, 2nd Floor
Palo Alto, CA  94301
Telephone:  (650) 388-1703

Shamita Etienne-Cummings
David M. Tennant
Victoria Moffa
ALLEN & OVERY LLP
1101 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 683-3800

Michelle Wang
James N. Reed
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 610-6300

Dated: March 28, 2022

ASHBY & GEDDES
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone:  (302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Plaintiff*

{01786354;v1 }

**CONFIDENTIAL**
**SUBJECT TO THE PROTECTIVE ORDER**

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION FOR OPPOSITION TO *DAUBERT* MOTION ...................................1

II. ARGUMENT ...............................................................................................................1

    A. Mr. Schoettelkotte's Opinions Relating to the '951 Patent are Appropriate. ..........1

        1. The Meeker Agreements are "Sufficiently Comparable" and Mr. Schoettelkotte Accounted for Any Differences in Economic Circumstances. ........................................................................................ 2

        2. Mr. Schoettelkotte Properly Relied on the Meeker Agreements' Embedded Apportionment. ........................................................... 6

        3. Mr. Schoettelkotte Properly Referred to the ▮▮▮ Agreement as Indicative of Evenflo's Past Royalty Payment Structures. ......................... 9

    B. Mr. Schoettelkotte's Opinions Relating to the '043 Patent are Appropriate. ........11

        1. Mr. Schoettelkotte Properly Apportioned Value to Non-Patented Features and Made Downward Adjustments to the Calculated Profit Premiums From the Analytical Approach. ............................................... 11

III. CONCLUSION ...........................................................................................................15

CONFIDENTIAL
SUBJECT TO THE PROTECTIVE ORDER

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*ART+COM Innovationpool GmbH v. Google Inc.*,
  155 F. Supp. 3d 489 (D. Del. 2016)..............................................................................10, 11

*Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc.*,
  No. CV 15-152-RGA, 2018 WL 4691047(D. Del. Sept. 28, 2018) ....................................7, 14

*Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*,
  809 F.3d 1295 (Fed. Cir. 2015).................................................................................................11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993)...............................................................................................................1, 11

*Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys.*,
  LLC, 927 F.3d 1292 (Fed. Cir. 2019) ..................................................................................7, 9

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2010)..................................................................................................4

*Intuitive Surgical, Inc. v. Auris Health, Inc.*,
  No. CV 18-1359-MN, 2021 WL 3662842 (D. Del. Aug. 18, 2021)......................................2, 7

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
  694 F.3d 51 (Fed. Cir. 2012)......................................................................................................5

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009)..................................................................................................5

*Omega Pats., LLC v. CalAmp Corp.*,
  13 F.4th 1361, 1378-79 (Fed. Cir. 2021) ..................................................................................8

*Plastic Omnium Advanced Innovation & Rsch. v. Donghee Am., Inc.*,
  387 F. Supp. 3d 404 (D. Del. 2018), *aff'd*, 943 F.3d 929 (Fed. Cir. 2019) ......................6, 13

*Sols. LLC v. Enfora, Inc.*,
  167 F. Supp. 3d 665 (D. Del. 2016)..........................................................................................11

*Vehicle IP, LLC v. AT & T Mobility LLC*,
  227 F. Supp. 3d 319 (D. Del. 2016)............................................................................................3

*Virnetx, Inc. v. Cisco Sys., Inc.*,
  767 F.3d 1308 (Fed. Cir. 2014)...................................................................................................2

**CONFIDENTIAL**
**SUBJECT TO THE PROTECTIVE ORDER**

*W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*,
   No. CV 11-515-LPS-CJB, 2015 WL 12731924 (D. Del. Nov. 4, 2015)...................................2

*Wonderland Switzerland AG v. Evenflo Company, Inc.*,
   No. CV 18-1990-RGA, Order, October 30, 2020............................................................ *passim*

*Zimmer Surgical, Inc. v. Stryker Corp.*,
   365 F. Supp. 3d 466 (D. Del. 2019)..................................................................................8, 14

**CONFIDENTIAL**
**SUBJECT TO THE PROTECTIVE ORDER**

**TABLE OF EXHIBITS\***

| No. | Exhibit |
|---|---|
| 22 | Schoettelkotte Opening, additional paragraphs along with Schedules 8.0 – 8.3 |
| 23 | Wonderland 1, Transcript of Trial Proceedings |
| 24 | October 30, 2021 Order, Wonderland 1, Dkt. 141 |
| 25 | Evenflo's Opening Brief, Wonderland 1, Dkt. 118 |

**\*** Citations to letter exhibits refer to exhibits attached to Evenflo's Motion to Exclude the Opinions of Plaintiff's Damages Expert W. Todd Schoettelkotte. Citations to Exhibits 1–18 refer to exhibits attached to Wonderland's Opening Brief in Support of Wonderland's Motion for Summary Judgment and Wonderland's *Daubert* Motion.

CONFIDENTIAL
SUBJECT TO THE PROTECTIVE ORDER

## I.    INTRODUCTION FOR OPPOSITION TO *DAUBERT* MOTION

Evenflo fails to show that any of Mr. Schoettelkotte's damages opinions are inherently unreliable, unfit, or otherwise inadmissible under *Daubert*.[1]  There is no basis for this Court to exclude Mr. Schoettelkotte's damages opinions.  In a prior case between these parties, this Court found that Evenflo's challenges to the comparability of the Meeker agreements "go to the weight of Plaintiff's expert's approach, not his qualifications, his methodology, or the fit of his analysis to the facts of this case" and present "issues [that] are fodder for cross-examination, not issues that would cause the Court to exercise its gatekeeping function to exclude the testimony." *Wonderland Switzerland AG v. Evenflo Company, Inc.*, No. CV 18-1990-RGA, Order, October 30, 2020, Ex. 24.[2]  Evenflo's attempts to re-package those previously rejected arguments should be similarly rejected along with their remaining arguments.

## II.    ARGUMENT

### A.    Mr. Schoettelkotte's Opinions Relating to the '951 Patent are Appropriate.

Contrary to Evenflo's assertion, the Meeker agreements referenced by Mr. Schoettelkotte are sufficiently economically comparable to a hypothetical agreement between Wonderland and Evenflo.  Mr. Schoettelkotte properly accounted for any economic differences in his analysis and related opinions.  Def. Br. 4-6 (D.I. 99).  Further, the Meeker agreements have an embedded apportionment, in that the royalty rates therein represent compensation for the value of an invention comparable to the '951 Patent and therefore do not require further apportionment.  Def.

---

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993).

[2] In *Wonderland 1,* this Court also previously rejected Evenflo's challenges to Mr. Schoettelkotte's use of an analytical approach based on Evenflo's expected profit for the accused products at the time of the hypothetical negotiation.  Evenflo's challenge to Mr. Schoettelkotte's analytical approach analysis for the '043 Patent in the present case similarly "go[es] to the weight of Plaintiff's expert's approach" and should likewise be rejected. *Wonderland Switzerland AG v. Evenflo Company, Inc.*, No. CV 18-1990-RGA, Order, October 30, 2020, Ex. 24.

{01786354;v1 }

**CONFIDENTIAL**
**SUBJECT TO THE PROTECTIVE ORDER**

Br. 6-10.  Evenflo's other argument relating to Mr. Schoettelkotte's opinions and the '951 patent is directed to the ███ agreement.  This argument similarly fails as Mr. Schoettelkotte does not use the ███ agreement as a basis for arriving at the reasonable royalty rate or as "*quantitative reference point*" but merely as a reference for the royalty payment structure and as a confirmation that his opinion of ███ per unit is reasonable.  Def. Br. 10-12.

> 1.     **The Meeker Agreements are "Sufficiently Comparable" and Mr. Schoettelkotte Accounted for Any Differences in Economic Circumstances.**

Courts "have long acknowledged that any reasonable royalty analysis necessarily involves an element of approximation and uncertainty." *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014) (internal quotations omitted).  "[W]hen considering past licenses to technologies other than the patent in suit … an effort must be made to link the past license agreements to the infringed patent, such that the fact finder can adequately evaluate the probative value of the agreements. This can involve efforts … to account for differences in the … economic circumstances of the contracting parties." *W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*, No. CV 11-515-LPS-CJB, 2015 WL 12731924, at *5 (D. Del. Nov. 4, 2015) (internal quotations omitted). Evenflo argues that the Meeker agreements are "economically non-comparable" as the agreements "were executed between 1986 and 1999;" covered the assignment of future rights in several inventions that were then "unknown in scope or quantity;" involved a consultant (Mr. Meeker) who was not a competitor; and granted an exclusive license.  Def. Br. 4-5.  However, the Federal Circuit does not require "identity of circumstances" between the agreement and the hypothetical license at issue for an existing agreement to be considered sufficiently comparable. *Virnetx, Inc.*, 767 F.3d at 1330.  Provided the expert has established "baseline comparability," the issue of degree of comparability goes to sufficiency of evidence, and not admissibility. *Intuitive Surgical, Inc. v. Auris Health, Inc.*, No. CV 18-1359-MN, 2021 WL 3662842, at *5 (D. Del. Aug. 18, 2021);

{01786354;v1 }

2

**CONFIDENTIAL**
**SUBJECT TO THE PROTECTIVE ORDER**

(*Vehicle IP, LLC v. AT & T Mobility LLC*, 227 F. Supp. 3d 319, 327 (D. Del. 2016) (that "a license is not perfectly analogous generally goes to the weight of the evidence").

Evenflo misrepresents Mr. Schoettelkotte's opinion, stating that "Mr. Schoettelkotte does not opine that the Meeker agreement is economically comparable to the hypothetical negotiation." Def. Br. 5. However, Mr. Schoettelkotte's report clearly states it is his opinion that "the Meeker agreements provide royalty rate data points the parties would have considered at the time of the hypothetical negotiation for the '951 Patent." Opening Report, Ex. A, at ¶ 81.

First, Evenflo's argument based on the dates of the Meeker agreements is improper. Mr. Schoettelkotte accounted for the dates of the agreements and determined that it did not make them inapplicable since they include a reasonable royalty that would necessarily include any potential sales price increases (and inflationary pressures). Mr. Schoettelkotte explained that "the ███████████ structure of the Meeker agreements" will overcome concerns over the "impact of inflation" ███████████████████████████████████████ ████████████ which would necessarily reflect the effect of inflation and similar factors over time. Opening Report, Ex. A, at ¶ 78. Further, the Meeker agreements spanned over 14 years, with the first agreement in effect on October 1986 and the last agreement in effect until December 2000. Opening Report, Ex. A, at ¶¶ 73-75. Despite executing later agreements as late as in January 1999, Evenflo never once negotiated for new royalty rates and instead agreed to the same ████ ████████ for the entire 14-year period. Mr. Schoettelkotte explains, therefore, how the ████████████ adequately accounted for "inflation or other factors [that] may have affected the monetary value" of the subject of the Meeker agreements over time. Opening Report, Ex. A, at ¶ 78. Notably, Evenflo's expert in *Wonderland 1*, Melissa Bennis, would agree with Mr. Schoettelkotte on this point. Ms. Bennis considered the Meeker agreements to be "comparable"

CONFIDENTIAL
SUBJECT TO THE PROTECTIVE ORDER

to a hypothetical license between Wonderland and Evenflo in June 2018.  *Wonderland 1*,

Transcript of Trial Proceedings, February 8, 2021, Ex. 23, at 803:2-13, 15-20, 842:15-843:1,

903:10-13, 947:14-17.  Ms. Bennis acknowledged the same differences that Evenflo now takes

issue with and determined that the Meeker agreements were relevant, informative, and applicable

to the hypothetical negotiation between Wonderland and Evenflo.  *Id.*

Second, any argument that Mr. Meeker's status as a sole inventor is different than the

hypothetical agreement fails as well.  Mr. Schoettelkotte accounted for this in his opinions stating:

(1) the Meeker agreements defined its scope as ranging from products ████████████

████████████████████████████████████████████████████████████████

████████████████████████  and (2) while the Meeker agreements potentially cover several

inventions, the ████████████████████████████████████████████████

████████████████████████  "Mr. Meeker's inventions (such as the technology

comparable to the '951 patent) into a car seat."  Opening Report, Ex. A, at ¶¶ 73, 75-77; Reply

Report, Ex. C, at ¶ 49.

Third, Mr. Schoettelkotte accounted for the difference in the relationship of Evenflo *vis-à-*

*vis* Mr. Meeker, its consultant, and Evenflo *vis-à-vis* Wonderland, a competitor.   Mr.

Schoettelkotte opines that the competitive dynamic warrants an upward adjustment to the ████

████████████.  Opening Report, Ex. A, at ¶¶ 79, 96, 182; *see Finjan, Inc. v. Secure Computing*

*Corp.*, 626 F.3d 1197, 1212 (Fed. Cir. 2010) (plaintiff competed against the defendant, but not

against the counterparty in the comparable agreement).  This upward adjustment aligns with the

Court's upward adjustment in *Wonderland 1*. No. 18-1990-RGA, 2021 WL 4453656, at *14-15

(D. Del. Sept. 29, 2021) (Court adjusted the "rate upwards … because the parties are direct

**CONFIDENTIAL**
**SUBJECT TO THE PROTECTIVE ORDER**

competitors in the industry of the patented invention, which both parties agree typically warrants a higher royalty rate").

Lastly, Mr. Schoettelkotte accounted for the fact that the Meeker agreements ███████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████ Opening Report, Ex. A, at

¶¶ 83, 182.

Mr. Schoettelkotte's explanation of economic comparability and/or efforts to account for economic differences clearly go beyond the use of "loose or vague comparability" or "radically different" agreements at issue in the cases cited by Evenflo. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012) (comparing licenses that involve a different technology or industry); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327-28 (Fed. Cir. 2009) (comparing agreements covering "PC-related patents" seemingly relying on "personal computer kinship" for comparability).  This Court rejected the same arguments in *Wonderland 1* as issues that "go to the weight of Plaintiff's expert's approach, not his qualifications, his methodology, or the fit of his analysis to the facts of this case. The issues are fodder for cross-examination, not issues that would cause the Court to exercise its gatekeeping function to exclude the testimony." *Wonderland 1*, Order, October 30, 2020 (D.I. 141), Ex. 24.[3]

---

[3] Notably, the issues raised by Evenflo in its motion against Mr. Schoettelkotte's opinion in *Wonderland 1* include many of the same issues raised by Evenflo in its present motion.  For example, in *Wonderland 1*, Evenflo argued that the exclusive nature of the Meeker agreements, the difference in relationship between the parties, and the number of patents covered under the Meeker agreements warranted exclusion. *Wonderland 1*, Opening Brief In Support of Evenflo Company, Inc.'s Motion for Summary Judgment, September 22, 2020 (D.I. 118), Ex. 25.  For the same reasons Evenflo's arguments in *Wonderland 1* were rejected, Wonderland requests the Court deny Evenflo's present motion.

**CONFIDENTIAL**
**SUBJECT TO THE PROTECTIVE ORDER**

For at least these reasons, the Court should not exclude Mr. Schoettelkotte's damages opinion for the '951 Patent, particularly his reliance on the Meeker agreements.

      **2.**      **Mr. Schoettelkotte Properly Relied on the Meeker Agreements' Embedded Apportionment.**

Evenflo wrongly argues that Mr. Schoettelkotte "failed to account for the value of non-patented features in the accused products, incorrectly assuming that the Meeker agreements provided 'built-in' apportionment." Def. Br. 6-7. Accounting for the value of non-patent features can be accomplished in multiple ways, but "[t]he essential requirement [for apportionment] is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *Plastic Omnium Advanced Innovation & Rsch. v. Donghee Am., Inc.*, 387 F. Supp. 3d 404, 414 (D. Del. 2018), *aff'd*, 943 F.3d 929 (Fed. Cir. 2019). "Apportionment may be done through the royalty base, the royalty rate, or both." *Id.*

Mr. Schoettelkotte's analysis with respect to the Meeker agreements relies on Dr. Cameron's opinion that *certain* patents licensed to Evenflo under the Meeker agreements are technically comparable to the '951 Patent. Opening Report, Ex. A, at ¶ 77. Specifically, Dr. Cameron opined that the patented inventions "are comparable to the '951 Patent because they are all related to similar adjustment mechanisms used in child seats." Cameron Infringement Report, Ex. 4, at ¶ 406; Cameron Reply Report, Ex. 21, at ¶ 315. Notably, Evenflo has not moved to exclude Dr. Cameron's '951 Patent comparability opinions. Therefore, it appears that Evenflo has no issue with the admissibility of Dr. Cameron's technical comparability opinion related to the '951 Patent on which Mr. Schoettelkotte relies.

Based on his understanding from Dr. Cameron, Mr. Schoettelkotte explained that (1) certain of Mr. Meeker's inventions are comparable to the '951 Patent; (2) for the right to ███████ "Mr. Meeker would have been entitled to a royalty of ███████

6



**CONFIDENTIAL**
**SUBJECT TO THE PROTECTIVE ORDER**

██████ and thus (3) such royalty would apply to ████████████████████

██████ (such as the technology comparable to the '951 patent)."  Opening Report, Ex. A, at ¶¶

77, 81; Reply Report, Ex. C, at ¶ 49.  Because the Meeker Agreements' ██████████████

would have been applied to ████████████—including an invention comparable to the '951

Patent—such rates necessarily embody the proper apportionment of the value of the '951 Patent.

*See Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys.*, LLC, 927 F.3d 1292, 1301 (Fed. Cir.

2019) (affirming an analysis that start from "discussions centered on a license rate" for the same

patent that "already informally apportion[] the proposed license rates to the value of the patented

technology"); *Intuitive Surgical, Inc. v. Auris Health, Inc.*, No. CV 18-1359-MN, 2021 WL

3662842, at *6 (D. Del. Aug. 18, 2021) ("The Federal Circuit has voiced approval of an expert's

damages opinion where 'apportionment is essentially embedded in' or 'built in[to]' an agreement

relied on as comparable.").  The cases Evenflo cites to as support for its argument on lack of

apportionment are inapposite.  Def. Br. 9.  In *Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc.*, the

Court rejected a "cursory" apportionment analysis where the expert "simply" stated that

apportionment "would have been considered" by the parties in the comparable agreements.  No.

CV 15-152-RGA, 2018 WL 4691047, at *8 (D. Del. Sept. 28, 2018).   In contrast, Mr.

Schoettelkotte pointed to and quoted specific terms of the Meeker Agreements and relied on Dr.

Cameron's opinion that the ████████████████ (representing ████████████████

████████████████████████████████████████████████████████

████████████████████████████ reflect the value of comparable technology to the

'951 Patent.[4]  Opening Report, Ex. A, at ¶ 77.

---

[4] Further, Mr. Schoettelkotte took into account the difference ██████████ between the Meeker
agreements and the hypothetical negotiation as well as the existence of other adjustable headrests

CONFIDENTIAL
SUBJECT TO THE PROTECTIVE ORDER

In *Omega Pats., LLC v. CalAmp Corp.*, the Court disallowed the apportionment theory that set a standard license rate regardless of how many patents were licensed for relying on a "generic licensing" "internal policy" and not on a "comparable license or comparable negotiation," and not for lack of logic. 13 F.4th 1361, 1378-79 (Fed. Cir. 2021). In doing so, the Court acknowledged that "built-in apportionment based on [comparable] license agreements" would have been acceptable if the agreements "attributed [the] per-unit royalty to the value" of the patent. *Id.* at 1379. As discussed, Mr. Schoettelkotte's opinion relies on a comparable license under which the percentage royalty rates represent the value of an invention comparable to the '951 Patent.

Evenflo harps that Mr. Schoettelkotte presents no evidence or basis that the "patents licensed … under the Meeker agreement were ever incorporated into an Evenflo product" and that "all three of the 'technologically comparable' Meeker patents contributed equal relative value to three distinct commercial products." Def. Br. 8. However, in *Wonderland 1*, Evenflo presented at trial evidence of royalty reports related to the Meeker agreements including the royalties paid by Evenflo for products to which the royalties were applied, including car seats. *Wonderland 1*, Transcript of Trial Proceedings, February 8, 2021, Ex. 7 at 804-805. Further, Evenflo's disagreement with Mr. Schoettelkotte's apportionment is premised on its refusal to acknowledge the "built-in" apportionment in the Meeker Agreements' █████████████ (hence, its insistence on a different apportionment approach that instead assigns values of the patents licensed under the Meeker agreement to distinct products). Even if this were the case, such objection goes to "the weight of the evidence and witness credibility," and not exclusion. *Zimmer Surgical, Inc.*

---

in the car seat market (an adjustment specific to the '951 Patent) and adjusted the ███████████ ████ from the Meeker agreements ████████████████ Opening Report, Ex. A, at ¶ 182.

CONFIDENTIAL
SUBJECT TO THE PROTECTIVE ORDER

*v. Stryker Corp.*, 365 F. Supp. 3d 466, 498 (D. Del. 2019) (apportionment is not limited to specific

methodologies and disagreement with the expert's chosen approach is an issue of weight).

Evenflo ignores that the ███████ rates in the Meeker agreements represent what Evenflo

has historically been willing to pay for ████████████████████████. To further

ensure that the ███████ rates represent what Evenflo would be willing to pay for the '951 Patent,

Mr. Schoettelkotte relies on Dr. Cameron's opinion that technology comparable to the '951 Patent

has been licensed under the Meeker agreements. Then, while the ███████ royalty rates

(representing ████████ of the accused product selling prices) already represent the value of an

invention comparable to the '951 Patent, and despite upward pressure on the ███████ rates due

to competition and ████████████, Mr. Schoettelkotte nevertheless reduced the

███ rate from the Meeker agreements to an effective rate of ████████████ in recognition

of the existence of other adjustable headrests in the car seat market and the difference in exclusivity

between the Meeker agreements and the hypothetical negotiation. Opening Report, Ex. A, at ¶

182. Courts have allowed similar analyses that starts with a royalty rate based on a comparable

agreement, such as the Meeker agreements rates in this case, "adjusted … as necessary" for the

hypothetical negotiation. *See Elbit Sys. Land & C4I Ltd.,* 927 F.3d at 1301 (Fed. Cir. 2019) (expert

started with an "embedded" "comparable royalty rate" and made an upward adjustment to account

for the increased value of the patented technology).

For at least these reasons, the Court should not exclude Mr. Schoettelkotte's damages

opinion for the '951 Patent, including his reliance on the embedded apportionment in the Meeker

agreements.

       **3.**    **Mr. Schoettelkotte Properly Referred to the ███████ Agreement as
Indicative of Evenflo's Past Royalty Payment Structures.**

**CONFIDENTIAL**
**SUBJECT TO THE PROTECTIVE ORDER**

Evenflo conflates issues when it objects to Mr. Schoettelkotte's reliance on the █████

agreement as it claims the agreement cannot be used as a "reasonableness check" or "to arrive at

a █████ royalty." Def. Br. 10-11.   Mr. Schoettelkotte never relied on the █████ agreement for

this purpose.  Instead, he references it solely to show that Evenflo "would have agreed to a running

royalty *rate structure* to ensure [commensurate] compensation."  *Id.* (emphasis added); Opening

Report, Ex. A, at ¶ 62.  Thus, the "jury [is] entitled to hear the expert testimony and decide for

itself what to accept or reject." *Id.*

In his report, Mr. Schoettelkotte clearly states that the █████ agreement (and the other

agreements analyzed in his report under *Georgia*-Pacific Factor 12) "do not provide royalty rate

data points" but merely "provide indications of royalty rate structures used by Evenflo in the past."

Opening Report, Ex. A, at ¶ 137.  Courts have allowed reference to other agreements "to show a

preference for a lump-sum royalty" or other royalty structures and in such cases, "the required

level of economic comparability may be lower than in instances where a license provides the core

basis for the royalty."  *ART+COM Innovationpool GmbH v. Google Inc.*, 155 F. Supp. 3d 489,

512 (D. Del. 2016).  It is clear from Mr. Schoettelkotte's report and deposition that he did not rely

on the █████ agreement to determine his █████ per unit royalty for the '951 Patent.  Specifically,

Mr. Schoettelkotte testified as follows:



> A.  Well, again, when you use the words is it appropriate, I'm not
> using the █████ agreement or even the rates there to determine I'm
> looking at it as a reasonableness check based on my opinions as it
> relates to the Meeker [agreement].  I'm certainly not determining a
> royalty rate based upon the █████ agreement. …
> …
> Q. … How did you do a reasonableness check without referring to
> the rate in the agreement?
> A.  Because I'm in essence understanding that the rate that I have
> arrived at independently of the █████ agreement is a rate that is
> not inconsistent with what I see in the █████ agreement. But again,
> one doesn't lead into the determination of the other.  What I'm aware

CONFIDENTIAL
SUBJECT TO THE PROTECTIVE ORDER

of, Dr. Cameron's opinion is to the impact of the technology in the ███████ agreement on the car seat versus the impact of the '951 patent.  Schoettelkotte Dep. 52:24-55:2.

This case is thus clearly distinguishable from *M2M Sols. LLC v. Enfora, Inc.* (cited by Evenflo) where the Court rejected the use of non-comparable licenses as a "driving force in the reasonable royalty estimate" or even "as a *quantitative* reference point."  167 F. Supp. 3d 665, 678 (D. Del. 2016) (emphasis supplied); *see also ART+COM Innovationpool GmbH v. Google Inc.*, 155 F. Supp. 3d 489, 512 (D. Del. 2016) (distinguishing the facts in *M2M Sols. LLC* from a case where the expert used other agreements to show preference for a certain royalty structure).

For at least these reasons, the Court should not exclude Mr. Schoettelkotte's damages opinion for the '951 Patent, particularly his limited reference to the ███████ agreement.

B.      **Mr. Schoettelkotte's Opinions Relating to the '043 Patent are Appropriate.**

Contrary to Evenflo's assertion, Mr. Schoettelkotte's damages opinion for the '043 Patent properly apportions the profit premium attributable to the '043 patent and accounts for the portion thereof attributable to non-patented features through a detailed analysis of the patented and non-patented features in the accused and baseline products.  Def. Br. 12-15.

1.      **Mr. Schoettelkotte Properly Apportioned Value to Non-Patented Features and Made Downward Adjustments to the Calculated Profit Premiums From the Analytical Approach.**

"The essential requirement for reliability under *Daubert* is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product. … [U]nder this apportionment principle, there may be more than one reliable method for estimating a reasonable royalty. This adaptability is necessary because different cases present different facts." *Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301–02 (Fed. Cir. 2015) (internal quotations omitted).

{01786354;v1 }

11

**CONFIDENTIAL**
**SUBJECT TO THE PROTECTIVE ORDER**

In his damages analysis for the '043 Patent, Mr. Schoettelkotte relied in part on three "analytical approach" comparisons for apportionment, which measure the "value of the patented technology … by comparing the profits earned on products incorporating the patented technology to otherwise equivalent but non-accused products or to some company or industry norm measure of profit." Opening Report, Ex. A, at ¶ 139.[5] Two of the analytical approach data points are based on Evenflo's expected additional profits for the accused products just prior to product launch. The expected additional profits are derived from comparisons made by Evenflo of its expected profit on the accused products (Turducken and Minotaur) as compared to a baseline profit. The third comparison relies on an internal Evenflo document which compares Evenflo's profit on the accused EveryKid/EveryFit products to the EveryStage product. In each of these comparisons, the benefit provided by the '043 Patent of incorporating a backless booster mode in a harnessed car seat was not present in the baseline. Furthermore, Mr. Schoettelkotte reviewed and identified any other feature differences between the accused and baseline products and confirmed that these other feature differences were present in both the accused and baseline categories – effectively netting out any contribution from these other feature differences.[6] Finally, based on his review of Evenflo's internal planning documents, marketing documents, and deposition testimony, Mr. Schoettelkotte identified that the extended use provided by the addition of a backless booster mode (as enabled by the '043 Patent) was highly anticipated and coveted by Evenflo and its customers.

---

[5] Also relied on by Mr. Schoettelkotte in arriving at his ███ per unit opinion for the '043 Patent (but not challenged in Evenflo's motion) is the analysis in *Georgia-Pacific* Factors 8 and 11 of the portion of Evenflo's accused product profitability attributable to the backless booster mode (resulting in figures of ███████). Opening Report, Ex. A, at ¶¶ 107, 181.

[6] Mr. Schoettelkotte further relied on Dr. Cameron for the understanding that certain of the feature differences would not set a car seat apart, but is merely a baseline feature that is typical within the category. Opening Report, Ex. A, at ¶¶ 140-167 and Schedules 8.0-8.3.

**CONFIDENTIAL**
**SUBJECT TO THE PROTECTIVE ORDER**

As a result of Mr. Schoettelkotte's analysis, he determined that the primary difference between the accused products and baseline products is the backless booster mode, as enabled by the '043 Patent. Opening Report, Ex. A, at ¶¶ 140-167 and Schedules 8.0-8.3. Then, based on his consideration of the *Georgia-Pacific* factors, Mr. Schoettelkotte made adjustments to the profit differences. The following table summarizes Mr. Schoettelkotte's adjustments.[7]

| Category | Turducken v. Booster Category | Minotaur v. Convertible Category | EveryFit/EveryKid v. EverySatge |
|---|---|---|---|
| Profit Difference | ███████ | ██████ | ████████ |
| GP4 | Up | Up | Up |
| GP5 | Up | Up | Up |
| GP8/11 | Up | Up | Up |
| GP9/10 | Neutral | Neutral | Neutral |
| Adjustment for Other Features | Down | Down | Down |
| **Royalty Opinion** | ███ | ███ | ███ |

Notably, despite considering upward adjustments for ███████, competition, and the popularity and commercial success of products that practice the '043 Patent, Mr. Schoettelkotte's ultimate opinion is less than each of the profit differences produced by the analytical approach, clearly demonstrating apportionment. Accordingly, Evenflo's disagreements concerning the amount of apportionment go to the weight of Mr. Schoettelkotte's opinion, rather than admissibility.

Evenflo wrongly argues "Mr. Schoettelkotte's report fails to identify what portion of each calculated profit premium is attributable to the '043 Patent, and which portion is attributable to non-patented features." Def. Br. 12-14. There is no requirement to calculate or assign a dollar or other value to the non-patented features as part of the apportionment analysis to make it reliable. *Plastic Omnium Advanced Innovation & Rsch.,* 387 F. Supp. 3d at 414 (D. Del. 2018), aff'd, 943

---

[7] Opening Report, Ex. A, at ¶¶ 175-180.
{01786354;v1 }

**CONFIDENTIAL**
**SUBJECT TO THE PROTECTIVE ORDER**

F.3d 929 (Fed. Cir. 2019) ("mathematical precision is not required" in apportionment and "experts may supplement quantitative evidence with the expert's own experience and judgment"). Mr. Schoettelkotte's report describes that ▮▮▮ is reasonably attributable to the '043 Patent, leaving the remainder of the profit for other features.[8]

This Court has previously rejected the exact approach sought by Evenflo. In *Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc.*, this Court held:

> "I believe that the following commentary is accurate: 'The challenge is that apportionment is inherently imprecise. There's never going to be a perfect basis to apportion. The proof will never be perfect. It cannot be perfect. So you can't require perfect.... Licensors and licensees are not doing [rigorous scientific analyses] to decide the royalty rate. They negotiate it based on their perception of the value being contributed—based on a lot of qualitative information typically. ... To require that sort of level of scientific discipline, (a) increases the cost of every case, and (b) divorces us from real life.'" No. CV 15-152-RGA, 2018 WL 5729732, at *2 (D. Del. Nov. 2, 2018).

Evenflo's other objections to Mr. Schoettelkotte's apportionment analysis do not go to whether the analysis is "a legally sound and verifiable methodology." Rather, Evenflo simply questions or "disagrees with [Mr. Schoettelkotte's] apportionment analysis"—this is "an issue of the weight of the evidence and witness credibility," not exclusion. *Zimmer Surgical, Inc.*, 365 F. Supp. 3d at 498 (D. Del. 2019). Evenflo asserts that Mr. Schoettelkotte did not "account for the separate ▮ royalty … imposed on the '951 patent" as compared to products not accused of infringing the '951 Patent. Def. Br. 15. This complaint is without merit as all of the baseline comparisons to which Mr. Schoettelkotte compares the accused products include car seats with

---

[8] Evenflo's argument that Mr. Schoettelkotte should have considered the Meeker agreements as relevant for the '043 Patent are unfounded. Def. Br. FN 2. Mr. Schoettelkotte makes clear that it is his opinion that there are other more relevant data points for the '043 Patent, rather than the Meeker agreements. Reply Report, Ex. C, at ¶¶ 46-47.

**CONFIDENTIAL**
**SUBJECT TO THE PROTECTIVE ORDER**

*adjustable headrest*.  Therefore, any profit premium attributable to the '951 patent (*i.e.*, an adjustable headrest) would have been netted out.[9]  Opening Report, Ex. A, at ¶¶ 144-145, 155-156, 160-165, Schedule 8.0-8.3.  Furthermore, as described in Mr. Schoettelkotte's report, Evenflo's expectation documents for the Turducken and Minotaur highly touted the additional backless booster mode to be added to the booster and convertible categories (as enabled by the '043 Patent), not the inclusion of an adjustable headrest (which already existed within in each of the booster and convertible categories). Opening Report, Ex. A, at ¶¶ 140-157.

Evenflo argues that the "existing convertible car seats" and the "EveryStage car seats" do not include a backless booster mode.  It then argues that Mr. Schoettelkotte failed to "quantify the contributions of the '043 patent (assuming those contributions are the addition of backless booster mode)." Def. Br. 14-15.  The absence of a backless booster mode in the baseline car seats supports Mr. Schoettelkotte's opinion that the profit difference between the baseline and accused products is attributable to the added backless booster feature attributable to the '043 patent.  Opening Report, Ex. A, at ¶¶ 154, 157, 166.

## III.    CONCLUSION

Wonderland's damages opinions are legally and factually proper.  Because Evenflo has failed to show otherwise, Wonderland respectfully requests that this Court DENY Evenflo's Motion and allow Mr. Schoettelkotte's opinions.

ASHBY & GEDDES

---

[9] While the backless booster car seats in the booster category do not have adjustable headrests, as explained in Mr. Schoettelkotte's report, the overall category was devoid of a 3-in-1 car seat with a backless booster mode and only with the '043 Patent could a 3-in-1 car seat be added to the booster category. Moreover, of the ▮▮▮▮▮▮▮ in profit premium resulting from the booster category comparison, Mr. Schoettelkotte's ▮▮▮ royalty opinion for the '043 Patent more than accommodates for the presence of the '951 Patent ▮▮▮ if any portion of the premium can be attributed to the '951 Patent.  Opening Report, Ex. A, at ¶¶ 140-147 and Schedules 8.2 and 8.3.
{01786354;v1 }

15

**CONFIDENTIAL**
**SUBJECT TO THE PROTECTIVE ORDER**

                               /s/ *Steven J. Balick*

*Of Counsel:*
                                  _____
                                  Steven J. Balick (#2114)

Bijal V. Vakil (*pro hac vice*)           Andrew C. Mayo (#5207)
Eric Lancaster (*pro hac vice*)           500 Delaware Avenue, 8th Floor
ALLEN & OVERY LLP                 P.O. Box 1150
550 High Street, 2nd Floor          Wilmington, DE 19899
Palo Alto, CA 94301              Telephone: (302) 654-1888
Telephone: (650) 388-1703        sbalick@ashbygeddes.com
                                  amayo@ashbygeddes.com

Shamita Etienne-Cummings (*pro hac vice*)
David M. Tennant (*pro hac vice*)      *Attorneys for Plaintiff*
Victoria Moffa (*pro hac vice*)
ALLEN & OVERY LLP
1101 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 683-3800

Michelle Wang (*pro hac vice*)
James N. Reed (*pro hac vice*)
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 610-6300

Dated: March 28, 2022