## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WONDERLAND SWITZERLAND AG,<br><br>Plaintiff,<br><br>v.<br><br>EVENFLO COMPANY, INC.,<br><br>Defendant. | **REDACTED PUBLIC VERSION**<br><br><br>Civil Action No. 20-cv-00727-JPM |

### PROPOSED FINAL PRETRIAL ORDER

On December 7, 2022, the Court will hold a pretrial conference pursuant to FED. R. CIV. P. Rule 16 in C.A. No. 20-cv-00727-JPM.  Trial will begin January 9, 2023.  The parties submit for the Court's approval this proposed Pretrial Order governing the trial pursuant to District of Delaware Local Rule 16.3 and the Court's Scheduling Orders.

This matter comes before the Court at a final pretrial conference held pursuant to Rule 16 of the Federal Rules of Civil Procedure.

Plaintiff's Counsel: Plaintiff Wonderland Switzerland AG ("Wonderland") is represented by:

Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19801
(302) 654-2067
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

Noah A. Brumfield (*pro hac vice*)
David M. Tennant (*pro hac vice*)
Shamita D. Etienne-Cummings (*pro hac vice*)

{01859476;v1 }                                    1

Jacob Rothenberg (*pro hac vice*)
Megan Ines (*pro hac vice*)
ALLEN & OVERY LLP
1101 New York Avenue, NW
Washington, DC  20005
Telephone:  (202) 833-3810
Noah.brumfield@allenovery.com
David.tennant@allenovery.com
Shamita.etienne@allenovery.com

Bijal V. Vakil (*pro hac vice*)
Eric E. Lancaster (*pro hac vice*)
ALLEN & OVERY LLP
550 High Street, Second Floor
Palo Alto, CA  94301
Telephone: (650) 388-1700
Bijal.vakil@allenovery.com
Eric.lancaster@allenovery.com

Majesty Jala (*pro hac vice*)
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, NY  10020
Telephone:  (212) 610-6300
Majesty.jala@allenovery.com

Katherine Kieckhafer (*pro hac vice*)
ALLEN & OVERY LLP
One Beacon Street
Boston, MA  02108
Telephone:  (857) 353-4500
Katherine.kieckhafer@allenovery.com

Defendant Evenflo Company, Inc. is represented by:

Jeremy A. Tigan (#5239)
Sarah Elizabeth Simonetti
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
Telephone:  (302) 658-9200
jtigan@mnat.com
ssimonetti@mnat.com

Lauren Douville (*pro hac vice*)
B. Trent Webb (*pro hac vice*)
Aaron E. Hankel (*pro hac vice*)
Maxwell C. McGraw (*pro hac vice*)
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO  64108
Telephone:  (816) 559-0348
ldouville@shb.com
bwebb@shb.com
ahankel@shb.com
mmcgraw@shb.com

## I.    NATURE OF THE CASE

The parties in this case are Wonderland Switzerland AG ("Wonderland" or "Plaintiff") and Evenflo Company, Inc. ("Evenflo" or "Defendant"). Wonderland alleges Evenflo infringes United States Patent Nos. 7,625,043 and 8,141,951 (collectively, "the asserted patents," or the "'043 patent," and the "'951 patent").[1] The operative pleadings are Wonderland's First Amended Complaint (D.I. 41) and Evenflo's Answer to Amended Complaint (D.I. 43). Specifically, the parties will try the issues of infringement, invalidity, and damages to the jury, with the remainder of the issues of law, such as Wonderland's claims for an injunction, being tried separately to the Court.

### A.    Wonderland's Claims

Wonderland alleges infringement to claims 1 and 4-8 of the '951 patent, and claim 1 of the '043 patent (collectively, "the asserted claims").  Wonderland accuses the following versions of Evenflo's car seats of infringing the asserted patents:  Evenflo's EveryFit 4-in-1 Car Seat ("EveryFit Car Seat"), EveryKid 4-in-1 Car Seat ("EveryKid Car Seat"), SafeMax 3-in-1 Car Seat

---

[1] All claims related to U.S. Patent No. D837,537 in Wonderland's Original Complaint (D.I. 1) were withdrawn by Wonderland and not re-alleged in its First Amended Complaint (D.I. 41).

("SafeMax Car Seat"), Evolve 3-in-1 Car Seat ("Evolve Car Seat"), and Transitions 3-in-1 Car Seat ("Transitions Car Seat") (collectively, the "accused products").

Wonderland further alleges that Evenflo infringes the asserted patents directly and indirectly, and that Evenflo's infringement of the '043 patent has and continues to be willful. Wonderland further alleges that, in the alternative, Evenflo infringes the asserted patents under the doctrine of equivalents.

Wonderland seeks damages to compensate it for Evenflo's infringement to date in the form of a reasonable royalty.  Wonderland also seeks injunctive relief against future acts of infringement by Evenflo under 35 U.S.C. § 283.  Wonderland also seeks prejudgment and post-judgment interest and costs, pursuant to 35 U.S.C. § 284 and FED. R. CIV. P. Rule 54, attorneys' fees pursuant to 35 U.S.C. § 285, and enhanced damages against Evenflo.

### B.  Evenflo's Defenses

Evenflo denies all of Wonderland's claims. Specifically, with respect to infringement, Evenflo denies that the accused products infringe any of the asserted claims, both directly and indirectly, and literally or under the doctrine of equivalents. Moreover, Evenflo denies Wonderland's allegations that the alleged infringement was willful.

Further, Evenflo alleges that the asserted claims of the asserted patents are invalid under 35 U.S.C. §§ 102 and 103.

Because the asserted patents are not infringed and invalid, Evenflo contends that Wonderland is entitled to no damages. Moreover, Evenflo contends that any damages are limited by 35 U.S.C. § 287, and that Wonderland's damages claims are overstated. Evenflo also seeks its attorneys' fees pursuant to 35 U.S.C. § 285.

### C.     Claim Construction

The parties filed a joint claim construction brief on June 15, 2021 (D.I. 46), and a claim construction hearing was held on August 23, 2021.  On August 26, 2021, the Court issued a Claim Construction Order (D.I. 66), with the following terms and constructions:

| Claim Term | Court's Construction |
| --- | --- |
| Receptacle | "a three dimensional space sized to receive an attachment arm" |
| Engagement | No construction necessary: plain and ordinary meaning |

However, as noted below, the parties raised an ancillary claim construction dispute over the scope of the term "engagement" in the '043 patent. During oral argument on this issue, the presiding Court (Judge Andrews) indicated that this scope dispute would be resolved on summary judgment as warranted.  *See* D.I. 77 at 44 ("When we get to summary judgment, if it makes a difference to something, you're free to bring up that I need to construe it in some way because it makes a difference.").

### D.     Summary Judgment and *Daubert* Motions

On March 10, 2022, Wonderland filed a motion for partial summary judgment of: (1) the proper construction of "connected to" in the '951 patent and "receptacle" in the '043 patent; and (2) validity of the asserted patents.  (D.I. 103, 106).  Wonderland also filed a *Daubert* motion to preclude certain opinions from Evenflo's damages expert.  (D.I. 105, 106).

Also on March 10, 2022, Evenflo moved for summary judgment of non-infringement of both asserted patents because: (1) the plain and ordinary meaning of "connected to" in the '951 patent requires two structures, which the accused products lack; (2) the accused products do not infringe the '043 patent's limitation requiring a "pair of receptacles" that are each "sized to receive" the accused attachment arms; (3) the accused products do not infringe the '043 patent's

limitation "attachment arms . . . for engagement" when properly construed; and (4) the accused products do not infringe the '043 patent's limitation requiring "a locking mechanism on [the] seat back." (D.I. 101, 102).

All of these motions are fully briefed, and the Court held a hearing on the motions on May 27, 2022. The Court has not yet ruled on these motions.

## II.   FEDERAL JURISDICTION AND VENUE

This is a civil action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, and this Court has jurisdiction over this action pursuant to 35 U.S.C. §§ 271, *et seq.*, and 28 U.S.C. §§ 1331 and 1338(a). Personal jurisdiction and venue are not disputed.

## III.   FACTS

### A.   Uncontested Facts[2]

The following facts are not disputed and have been agreed to and stipulated to by the parties:

1.     Wonderland is a corporation limited by share ownership (AG) duly organized and existing under the laws of Switzerland, having its principal place of business at Beim Bahnhof 5, 6312 Steinhausen, Switzerland.

2.     Evenflo is a Delaware corporation having its principal place of business at 3131 Newmark Road, Miamisburg, Ohio 45342.

3.     The parties do not contest that the Court has personal jurisdiction over the parties solely for the limited purpose of this action only.

---

[2] This list may be supplemented upon resolution of the parties' outstanding motions.

4.      The United States Patent and Trademark Office ("PTO") issued U.S. Patent No. 7,625,043, entitled "Child Car Seat with Multiple Use Configurations," on December 1, 2009.

5.      The PTO issued U.S. Patent No. 8,141,951, entitled "Child Safety Seat," on March 27, 2012.

6.      Wonderland filed this lawsuit on May 29, 2020.

7.      Evenflo has made, used, sold, and offered for sale in the United States, and continues to do so, the EveryFit Car Seat, EveryKid Car Seat, SafeMax Car Seat, Evolve Car Seat, and Transitions Car Seat.

### B.      Contested Facts

Wonderland's Statement of Contested Facts is attached as **Exhibit A.1**.

Evenflo's Statement of Contested Facts is attached as **Exhibit A.2**.

Should the Court find that any of the issues of law listed in **Exhibits B.1** or **B.2** of the Joint Pretrial Order should be considered as issues of fact, they shall be incorporated as issues in **Exhibit A.1** or **A.2**, respectively.  The parties reserve the right to modify or supplement their statements of facts that remain to be litigated to the extent necessary to reflect the Court's rulings on any motions or subsequent orders of the Court or by agreement of the parties.

## IV.   ISSUES OF LAW

Wonderland's Statement of Issues of Law is attached as **Exhibit B.1**.

Evenflo's Statement of Issues of Law is attached as **Exhibit B.2**.

Should the Court find that any of the issues identified in **Exhibits A.1** or **A.2** of the Joint Pretrial Order should be considered as issues of law, they shall be incorporated as issues in **Exhibits B.1** or **B.2**, respectively.  Conversely, if the Court determines that any issue identified in **Exhibits B.1** or **B.2** is more properly considered an issue of fact, it shall be incorporated into **Exhibits A.1** or **A.2**, respectfully.  The parties reserve the right to modify or supplement their

statement of issues of law that remain to be litigated to the extent necessary to fairly reflect the Court's rulings on any motions or subsequent orders of the Court or by agreement of the parties.

## V.  WITNESSES

Any witness not listed will be precluded from testifying, absent good cause.  In the absence of an alternative agreement among the parties, witnesses will be sequestered unless a fact witness is also a party's corporate representative(s) at trial.

The parties will identify by email to the opposing party the witnesses they intend to call (in the order in which the witnesses will be called), and whether those witnesses will be called live or by deposition, by 7 p.m. EST two calendar days before such witness will be called to testify.  The other party shall identify any objections to such witness(es) by 7 p.m. EST the following day, and the parties shall meet and confer to resolve any objections by 10 p.m. EST that same evening.  If good faith efforts to resolve the objections fail, the party objecting to the witness shall bring its objections to the Court's attention for resolution the next day.

The parties agree that fact witnesses, unless they are party representatives, will be sequestered for opening statements and the testimony of fact witnesses. The parties agree that expert witnesses need not be sequestered.

Except as provided under D. Del. LR 43.1 or by express permission of the Court, once tendered for cross examination, no witness shall communicate with anyone else regarding the substance of the witness's testimony until such time as the witness is excused by the Court from that examination.

### A.  List of Live Witnesses Plaintiff Expects to Call

Wonderland identifies the following trial witnesses.  Wonderland reserves the right to call witnesses on Evenflo's witness list (either live or by deposition designation).  Wonderland also reserves the right to call by deposition any of the witnesses identified in its deposition designations.

Wonderland reserves the right to amend or supplement its trial witness list as part of the meet and confer process leading up to trial, in response to Evenflo's pretrial disclosures and objections, in response to any pretrial rulings or orders from the Court, and in the event that any of the individuals listed below become unable to attend the trial or otherwise unable to provide testimony. Wonderland also reserves the right to call rebuttal witnesses.  Inclusion on this list does not imply or establish that Evenflo may compel the live testimony of that witness and does not waive any objections that Wonderland may have should Evenflo seek to introduce testimony of that witness.

Wonderland expects to call for live testimony:

1. Renee Wang

2. Curtis Michael Hartenstine

3. Jackie Chu

4. Kerry Strzelecki

5. Eric Dahle

6. Andrew Davis

7. Brian Pleiman

8. Bryan Adams

9. Christopher Russell

10. Phil Przybylo

11. Steve DeLong

12. Jon Conaway

13. Jon McGuire

14. Kimberly K. Cameron

15. W. Todd Schoettelkotte

Wonderland reserves the right to call any witness by deposition testimony (and has so designated) if necessary.

**B.      List of Live Witnesses Defendant Expects to Call**

Evenflo respectfully submits this list of witnesses that it may call to testify at trial either in person or by deposition.

Evenflo further reserves the right to call additional witnesses to testify at trial either in person or by deposition to provide foundation testimony should any party contest the authenticity or admissibility of any material proffered at trial. After the parties exchange objections to such materials, Evenflo will address this issue with Wonderland and/or the Court, and will provide notice of any additional witnesses it will or may call to establish the authenticity and admissibility of materials to be proffered at trial.

Evenflo's list of potential witnesses is made to comply with the Court's Order and the parties' agreements and to preserve its rights, based on the present status of the case. The parties will exchange objections and motions *in limine* and otherwise present to the Court disputes regarding the issues and evidence to be presented to the jury and the relevancy and admissibility of certain testimony and exhibits. Evenflo's list of potential witnesses does not waive Evenflo's right to object to certain categories of evidence as irrelevant or otherwise inadmissible and does not waive its right to pursue motions *in limine*. Until the Court addresses and rules on such disputes, Evenflo reserves its rights to make final decisions regarding what witnesses to call, and what exhibits to proffer. The inclusion of a witness on Evenflo's list of potential witnesses does not represent or otherwise require that Evenflo call that witness to testify, does not constitute a representation that Evenflo will bring an identified potential witness to trial, and does not mean that Evenflo has the power to compel the attendance or live testimony of that potential witness.

Evenflo's listing of potential witnesses and designations of deposition testimony is also made based on Evenflo's present understanding of the trial date, the availability of potential witnesses, and the issues. In the event that an individual whom Evenflo identified as a potential witness is not available for trial or otherwise cannot testify in person, Evenflo may designate a replacement witness to testify either in person or by deposition, and will provide reasonable notice to Wonderland.

After the parties complete their pretrial exchanges and the Court rules on motions or other disputes that are presented during pretrial, Evenflo reserves the right to further clarify the witness(es) it will call and whether the respective witness(es) will provide their testimony in person or by deposition.

Subject to the foregoing, Evenflo's current list of witnesses that it will or may call to testify at trial, either in person or by deposition, is set forth below.

1. Eric Dahle

2. Bryan Adams

3. Jon Conaway

4. Jon McGuire

5. Steve DeLong

6. Brian Pleiman

7. James Hutchinson

8. Chris Russell

9. Andrew Davis

10. Renee Wang

11. Curtis Hartenstine

12. Corey Campbell (technical expert)

13. Mark Peterson (damages expert)

14. One or more witnesses identified by Wonderland.

**C.      Testimony By Deposition**

Wonderland's Deposition Designations are attached as **Exhibit C.1**.

Evenflo's Deposition Designations are attached as **Exhibit C.2**.

Should a fact witness identified as testifying live become unavailable, as that term is defined by the Federal Rules of Civil Procedure and Federal Rules of Evidence, the parties may designate specific pages and lines of transcript that they intend to read or play in lieu of the witness's appearance upon reasonable notice.  The parties shall immediately notify each other in the event they have decided not to call a witness to testify live at trial. Each party is entitled to offer testimony designated by any other party (whether as a designation or counter-designation), even if not separately listed on its own deposition designation list, unless that testimony was designated solely to rebut testimony the Court later holds is inadmissible.

When the witness is called to testify by deposition at trial, the party calling the witness shall provide the Court with two copies of the transcript of the designations and counter-designations that will be read or played.  The parties agree to use deposition videos to the extent such videos exist for the depositions the parties wish to read or play at trial.  The parties will be charged for all time that elapses from the time the witness is called until the next witness is called, according to the proportions to be provided by the parties.

If a party decides to play less than all of the designated testimony for a witness at trial, or to include less than all of its counter-designations or counter-counter-designations, the opposing parties may use such dropped testimony as counter-designations or counter-counter designations to the extent the usage of such testimony in such manner is otherwise consistent with FED. R. EVID.

106, Fed. R. Civ. P. 32, and any other applicable Federal Rule of Evidence or Federal Rule of Civil Procedure.

Unless otherwise agreed between the parties, the party offering deposition testimony (other than for the purpose of impeachment) shall identify the deposition testimony to be offered from previously-exchanged designations by 7 p.m. EST two calendar days prior to the testimony being offered into the record (in good-faith).  The parties will meet and confer by 10 p.m. EST the following calendar day before the deposition testimony is to be played to resolve any objections to deposition testimony.  Any issues that remain will be raised orally with the Court before the designations are played.  Unless the Court requests otherwise, there will be no written submissions to the Court.

If deposition testimony is to be presented by video, then the party playing the designated testimony shall also serve the other party with electronic video clips of all testimony to be played by 7 p.m. EST the calendar day before the witness is to be called at trial, subject to revision on any pending objections to be resolved by the Court.

Designated deposition testimony will be offered to the Court as designated testimony that the parties may read into the record or play by video, and such testimony will count against the party's trial presentation time.  Specifically, any affirmative designations offered by a party will count against that party's trial presentation time whereas any counter-designations by the other party will count against the party who made the counter-designation.

### D.     Impeachment

Pursuant to Fed. R. Evid. 613, deposition or other testimony or statements not specifically identified on a party's deposition designation list or exhibit list may be used at trial for the purpose of impeachment, if otherwise competent for such purpose.  The Court will rule at trial on any objections based on lack of completeness and/or lack of consistency.

## VI.    EXHIBITS

### A.    Evidentiary Exhibits

Wonderland's exhibit list is attached as **Exhibit D.1**. Wonderland identified its exhibits with PTX numbers, starting with PTX1.

Evenflo's exhibit list is attached as **Exhibit D.2**. Evenflo identified its exhibits with DTX numbers, starting with DTX1.

A joint exhibit list is attached as **Exhibit D.3.**  Any joint trial exhibits will be identified with JTX numbers, starting with JTX1.

On or before the first day of trial, counsel will deliver to the Courtroom Deputy a completed AO Form 187 exhibit list for each party.

Each party may use a subset of an exhibit as a standalone exhibit, subject to evidentiary objections (e.g., FED. R. EVID. 106). Each Subset Exhibit shall be marked with the entire exhibit's number followed by a letter (e.g., PTX1-A, DTX12-A).

A party's failure to introduce any exhibit appearing on its list shall not be commented on during trial.

Each party may use an exhibit that is listed on the other party's exhibit list, to the same effect as though it were listed on its own exhibit list, subject to objections. Any exhibit, once admitted, may be used equally by each party. The listing of an exhibit by a party on its exhibit list does not waive any objections to that exhibit by the listing party should the opposing party attempt to offer it into evidence. In other words, a party does not waive its objections to an exhibit by including that exhibit on its own exhibit list.

The parties agree that any date listed on an exhibit list is provided for convenience only and is neither evidence nor an admission of the date of the document, and that failing to list a date on an exhibit list is neither evidence nor an admission of whether the document is dated.

The parties agree that any description of a document listed on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding that document.

Legible photocopies of United States patents may be offered and received into evidence in lieu of certified copies thereof, subject to all other objections which might be made to the admissibility of certified copies. Likewise, legible photocopies of United States patent applications may be offered and received into evidence in lieu of certified copies thereof, subject to all other objections which might be made to the admissibility of certified copies.

Legible photocopies of documents may be offered and received in evidence in lieu of originals thereof, subject to all foundational requirements and other objections that might be made to the admissibility of originals, and subject to the right of the party against whom it is offered to inspect an original upon request reasonably in advance of any proposed use of the photocopy.

To the extent any exhibit(s) requires special software for viewing or accessing the exhibit(s), the parties will first meet and confer in good faith on any third-party software tools that may be used by the parties to demonstrate or otherwise publish such exhibits to the jury.

Four days before the first day of trial, the parties shall make available for inspection physical exhibits to be used at trial, labeled with an exhibit number.  Physical exhibits include non-document trial exhibits or demonstrative exhibits, detailed below.

### B.    Demonstrative Exhibits

The parties agree that they will not pre-exchange or identify exhibits or demonstratives to be used with any witness on cross-examination.

Subject to other provisions of this Order, once the pretrial conference has been held, no party shall be permitted to offer as evidence any exhibit not present on its exhibit list absent good cause shown or by agreement of the parties, except that documents, deposition transcripts, or

portion thereof, or other items, not specifically identified herein or offered into evidence, may still be used at trial for purposes of cross-examination, impeachment or rehabilitation, if otherwise competent for such purposes, and may be admitted into evidence consistent with the requirements of the Federal Rules of Evidence.

The parties agree that documents produced by the parties and by third-parties under subpoena are authentic.

The parties agree that the demonstrative exhibits the parties intend to use at trial need not be included on their respective lists of trial exhibits to be filed with the Court. The parties further agree that demonstrative exhibits are materials or things presented for demonstration only and, as such, do not include presentation materials of items in (or expected in good faith to be in) evidence, e.g., call-outs of exhibits such as the asserted patents, boards of exhibits, witness testimony, the accused products, or the like.

Any party wishing to use a demonstrative exhibit will provide a copy of such exhibit(s) by 8 p.m. EST the night before the exhibits are intended to be used.  When exchanging trial demonstratives, the party seeking to use a demonstrative exhibit will provide a color representation of the demonstrative materials intended for us in the exhibit to the other side in PDF form. For demonstrative exhibits that cannot be placed in PDF form (e.g., video or animations), the party seeking to use the demonstrative exhibit will provide it to the other side in its native form via a downloadable link or email attachment. For irregularly sized materials, the party seeking to use the demonstrative exhibit will provide a color representation as a PDF of 8.5" x 11" copies of the demonstrative exhibits. Wonderland's demonstrative exhibits will be identified by numbers prefixed with "PDEM" and Evenflo's demonstrative exhibits will be identified by numbers prefixed with "DDEM." If a party's demonstrative exhibit changes after being provided to the

opposing party, the party intending to use the demonstrative exhibit must promptly notify the opposing party of the change(s).

Any objections to any party's demonstrative exhibit must be communicated to the opposing party by 9 p.m. EST the night before the exhibit is intended to be used. The parties will meet and confer that same evening by 10 p.m. EST, if required, to discuss and attempt to resolve any objection to an identified demonstrative exhibit.  Any issues that remain will be raised orally with the Court before the exhibits are presented.

The above provisions regarding the exchange of demonstrative exhibits does not apply to demonstrative exhibits created during testimony or demonstrative exhibits to be used for cross examination, neither of which need to be provided to the other side in advance of their use.

### C.    Other

The parties reserve the right to object on the grounds that: (a) there is no sponsoring witness through which the exhibit will be offered; (b) the exhibit is being used with a witness who has no personal knowledge of the exhibit and/or its contents under FRE 602; (c) the exhibit is not of the type that is reasonably relied upon by experts in the particular field under FRE 703; and/or (d) the exhibit was not timely disclosed under 35 U.S.C. § 282.

## VII.   BIFURCATED TRIAL

[**Wonderland's position**] On eve of trial, through a statement in the joint pretrial order, Evenflo asks to bifurcate the trial into two phases—one for liability (infringement and invalidity) and another for willful infringement and, presumably, damages—pursuant to Fed. R. Civ. P. 42(b). In addition to being belated and procedurally improper, Evenflo's statement is without merit. Evenflo asks for bifurcation based on a single email chain, ███████████████████. It fails to articulate any efficiency gained or undue prejudice avoided.   Rather the opposite:

Bifurcation, on the eve of trial, would cause only unnecessary delay, duplication of effort, and prejudice to Wonderland.

## I. Legal Standard

District courts may bifurcate issues into separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. Pro. 42(b). "Although the Court has discretion in deciding whether or not to bifurcate a case, bifurcation remains the exception rather than the rule." *Sepracor Inc. v. Dey L.P.*, No. CIV.A. 06-113-JJF, 2010 WL 2802611, at *3 (D. Del. July 15, 2010) (internal quotation marks and citation omitted); *see Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*, No. CV 17-1734-RGA, 2021 WL 982730, at *1 (D. Del. Mar. 16, 2021) (same); *Johns Hopkins Univ. v. CellPro*, 160 F.R.D. 30, 32–33 (D.Del.1995) ("In the normal course of litigation, all claims and issues in a civil action are presented for resolution in one trial.").

As the party requesting bifurcation, Evenflo "has the burden of establishing that it is appropriate." *Sprint*, 2021 WL 982730 at *1. "In deciding whether one trial or separate trials will best serve the convenience of the parties and the court, avoid prejudice, and minimize expense and delay, the major consideration is directed toward the choice most likely to result in a just final disposition of the litigation[.]" *In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986); *see Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1433–34 (D. Del. 1989) ("[A] court must take into account the 'overall equities' of the case in ruling on a motion to bifurcate.").

## II. Argument

In this proposed pretrial order, Evenflo makes two requests:  First, Evenflo asks for willful infringement (and presumably damages) to be bifurcated from liability.[3] Second, Evenflo asks that all evidence relevant to injunctive relief be excluded from the jury trial, framing as a request for bifurcation.  Wonderland objects to Evenflo's choice to raise this issue via joint pre-trail statement, rather than by motion—both because it is belated and because it deprives Wonderland and the Court of the benefit of fulsome briefing and process on the issue.  *See, e.g.*, *Lab'y Skin Care, Inc. v. Ltd. Brands, Inc.*, 757 F. Supp. 2d 431, 442 (D. Del. 2010) (bifurcating trial on motion at summary judgment).  Nonetheless, Wonderland addresses each of Evenflo's requests below.

### A. Evenflo fails to show bifurcation is warranted on willfulness (and damages).

*Bifurcation on the eve of trial, on the basis of a single email, only maximizes expense and inefficiency.*  "[A]n overlapping of issues is significant to the decision whether to bifurcate." *Willemijn*, 707 F. Supp. at 1434.  Here, the overlap of issues is clear.  Here, Evenflo is mistaken that ▮▮▮▮▮▮▮▮▮▮ is irrelevant to Evenflo's infringement liability.  At the very least, ▮ ▮▮▮▮▮▮ is direct evidence of Evenflo's pre-suit knowledge of the '043 patent.  This knowledge is not just relevant to willfulness, but also to Wonderland's indirect infringement allegations: Willful infringement requires the jury to decide whether the accused infringer had knowledge of the patent.  *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016).  Induced infringement requires the jury to decide whether the accused infringer had knowledge of the patent.  *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015).  Contributory infringement requires the jury to decide whether the accused infringer had knowledge of the patent.

---

[3] However, it also asks both trials to be heard before the same jury.  It is unclear whether Evenflo is requesting actual bifurcation with two trials or a single trial with two phases. *Cf. Sprint*, 2021 WL 982730 at *1 ("Defendants probably could be clearer about what they mean by bifurcation.").

*Id.*  Notably, all of Evenflo's cases on bifurcation of willfulness pre-date the Supreme Court's decision in *Halo* and its progeny, which clarify the willfulness standard and what questions go to the jury.  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016); *see, e.g.*, *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 2732 (2022).[4]

Under *Halo*, on the facts presented here, bifurcation makes little sense.  It only delays resolution and increases expense by requiring presentation of the same piece of evidence, by the same witnesses, to the same judge and jury.  *Cf. Sprint,* 2021 WL 982730 at *3 (denying motion to bifurcate willfulness where "there has been no showing that bifurcation would promote judicial economy, and the presence of overlapping issues and evidence will not serve judicial efficiency").[5]

Evenflo's counterarguments are without merit.  First, Evenflo asserts that bifurcation would be efficient because it would "obviate the need for evidentiary rulings on ███████

███ "  It is difficult to see how this can be true—parties have already briefed Evenflo's motion *in limine* (i.e., request for an evidentiary ruling) on ███████████  and, further, the whole, second trial Evenflo requests is procedurally much more extensive, expensive, and complicated than a single evidentiary ruling.

Second, Evenflo appears to imply that bifurcation would be more efficient because it could eliminate the need for any proceedings on willfulness or damages.  However, it is well-established that the "potential elimination of a second trial on damages and willfulness, should Defendant[] be found not liable, is not enough to show that judicial economy would be served through

---

[4]     As indicated in its interrogatory responses, Wonderland intends to present additional evidence on willfulness, including the appearance of the '043 patent in the prosecution history for Evenflo's own patent. ██████████████, however, appears to be the only evidence of willfulness to which Evenflo takes issue.

[5] Evenflo emphasizes that the third-party author of the email will not be called at trial.  The question is, however, one of notice to Evenflo, which can be ascertained on the face of the document.

bifurcation." *Sprint*, 2021 WL 982730 at *3 (citing *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 742 F. Supp. 2d 492, 497 (D. Del. 2010)).  This is particularly true where, as here, "there are certain topics on which overlapping evidence would need to be presented twice if the trial was bifurcated." *Id.*; s*ee Sprinturf, Inc. v. Sw. Recreational Indus., Inc.,* No. CIV.A. 01-7158, 2004 WL 96751, at *2 (E.D. Pa. Jan. 15, 2004) ("[T]he validation of this type of self-serving argument, without more, would permit all defendants in all cases to sever liability from damages.").[6]

   Third, Evenflo asserts that ███████████ is "likely to confuse the jury" and delay trial, "by focusing them on ████████████████████████████████████████."  Evenflo's conclusory statements are, however, not enough.  For bifurcation, Evenflo has the burden to "demonstrate[] that this [case's] complexity is of such magnitude that separate trials would be required to enable the jury to ably fulfill its role as fact finder." *SenoRx*, 920 F. Supp. 2d at 571.  Evenflo has made no effort to do so—it has "not shown that there is anything overwhelmingly complex about the asserted patents or technologies," i.e., two patents on children's car seats.  *Sprint*, 2021 WL 982730 at *2; *cf. SenoRx*, 920 F. Supp. 2d at 571 (denying motion to bifurcate in case involving "medical device engineering, brachytherapy, and radiation therapy").  Evenflo should not "pre-judge the yet-unnamed jurors by assuming they are unable to digest the facts and law in this case." *Synopsys*, 2006 WL 1452803 at *4.[7]  Evenflo's request to

---

[6] Evenflo also appears to imply that bifurcation is the default in patent cases.  Not so.  "[T]he decision to bifurcate *vel non* is a matter to be decided on a case-by-case basis and must be subject to an informed discretion by the trial judge in each instance." *Synopsys, Inc. v. Magma Design Automation*, No. CIVA 05-701 (GMS), 2006 WL 1452803, at *4 (D. Del. May 25, 2006) (quoting *Lis v. Robert Packer Hosp.,* 579 F.2d 819, 824 (3d Cir.1978)).

[7] If Evenflo believes ███████████ products are unrelated and irrelevant, then it could have and should have moved to exclude evidence on those products—it has not.  *Sprint*, 2021 WL 982730 at *2 (denying bifurcation where "less drastic remedies than bifurcation" were available).

bifurcate should be denied.  *Cf. Sprinturf, Inc. v. Southwest Recreational Indus., Inc*., 2004 WL 96751, at *2 (E.D. Pa. Jan. 15, 2004).

In sum, by Evenflo's own theory, bifurcation for willfulness would result in a second trial to re-examine a single email.  This makes no sense, and would result only in delay, waste, and inefficiency.

***Bifurcation on the eve of trial would severely prejudice Wonderland.***  **"**Perhaps the most important consideration for a court ruling on a motion to bifurcate is whether separate trials would unduly prejudice the non-moving party." *Willemijn*, 707 F. Supp. at 1435.  Here, the Court has scheduled a one week trial beginning January 9, 2023, in less than two months. The prejudice Wonderland faces, from duplicating costs and delaying trial, is imminent and can only be cured by denying Evenflo's request.  *SenoRx*, 920 F. Supp. 2d at 569 (explaining that the prejudice of delay and duplication of two separate trials against a plaintiff "is real, and cannot be mitigated by any action short of denying the request for separate trials"); *Willemijn*, 707 F. Supp. at 1435 (unfair delay of the final disposition of the matter is sufficient prejudice to deny bifurcation).

In contrast, Evenflo's claims of prejudice are unfounded.  Evenflo states that "introduction of ███████████ … will prejudice the jury on liability, and no curative instruction would mitigate such prejudice."  Evenflo, however, identifies no specific prejudice it would suffer.  As explained above, t████████████████████████████████████████ ████████████████ Adverse evidence is not the same as unduly prejudicial evidence. *See United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979) ("Relevant evidence is inherently prejudicial; but it is only Unfair prejudice, Substantially outweighing probative value, which permits exclusion of relevant matter under [FRE] 403.").  Evenflo's request for bifurcation should be denied, and decided instead in the context of Evenflo's motion in limine on the same.

**B. Evenflo's request for bifurcation on "any equitable issue" is, at best, a misplaced motion in limine.**

Evenflo's requests that the Court also "bifurcate any equitable issues, including the issue of a permanent injunction, and exclude evidence of alleged market harm of Wonderland's customer, Graco, from the jury trial."  This request appears to be, much like its request on willfulness, a motion in limine masquerading as a belated request for bifurcation.

It is well-settled courts, not juries, decide equitable issues.  *TCL Commc'n Tech. Holdings Ltd. v. Telefonaktiebolaget LM Ericsson*, 943 F.3d 1360, 1372 (Fed. Cir. 2019).  Injunctive relief is an equitable remedy.  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  Evenflo appears to recognize this.  This renders Evenflo's request for bifurcation of "any equitable issue"— specifically, injunctive relief—at best, superfluous.  Indeed, Evenflo fails to cite to any case granting "bifurcation" on injunctive relief—only use of post-trial motions to decide the issue.  *See, e.g.*, *IGT v. Bally Gaming Int'l., Inc.*, 675 F. Supp. 2d 487, 489–93 (D. Del. 2009).  It fails to address any of the factors relevant to bifurcation.  *See SenoRx,* 920 F. Supp. 2d at 568.  Indeed, Evenflo incorrectly reverses the burden saying "Wonderland provides no reason" not to bifurcate.  *See Sprint*, 2021 WL 982730 at *1.  Again, Evenflo's request for bifurcation should be denied, and decided instead in the context of Evenflo's motion in limine on the same.

[**Evenflo's position**] As outlined in Evenflo's Motion *in Limine* #1, Wonderland's evidence of alleged willful infringement should be excluded as irrelevant and prejudicial. The evidence relates to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and unfairly places Evenflo on the horns of a dilemma with respect to preserving its privileged communications with counsel.

To the extent the Court does not preclude Wonderland's improper evidence, Evenflo requests bifurcating trial into two phases before the same jury. In the first phase, the trial will

involve issues of liability (infringement, invalidity). In the second phase, if necessary, the trial will involve Wonderland's allegations of willful infringement. Evenflo further requests that all equitable issues, including any motion—and evidence in support thereof—for permanent injunction, be addressed in a separate evidentiary hearing solely before the Court.

Under Rule 42(b) of the Federal Rules of Civil Procedure, district courts may bifurcate issues into separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." FED. R. CIV. P. 42(b). A district court has "broad discretion in separating issues and claims for trial as part of its wide discretion in trial management." *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1212 (Fed. Cir. 1987). The determination to bifurcate is made on a case-by-case basis. *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1320 (Fed. Cir. 2013). In determining whether to bifurcate, the court "should consider whether bifurcation will avoid prejudice, conserve judicial resources, and enhance juror comprehension of the issues presented in the case." *Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519, 520–21 (D. Del. 2002). The court's "major consideration is directed toward the choice most likely to result in a just final disposition of the litigation." *In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986); *see also SenoRx, Inc. v. Hologic, Inc.*, 920 F. Supp. 2d 565, 567–68 (D. Del. 2013). Evenflo has the burden of establishing that bifurcation is appropriate. *SenoRx*, 920 F. Supp. 2d at 567.

The Court should bifurcate willfulness from liability in this case. Wonderland has identified a single, prejudicial email in support of its willfulness claim for the '043 patent.[8] The email ██████████████████████████████████████████████████

---

[8] Evenflo's concerns are all the more serious in view of the fact that Wonderland is only alleging willful infringement of one of the two asserted patents (the '043 Patent). Thus, any reference or mention of willful infringement in a consolidated trial is likely to unfairly prejudice Evenflo's defense on alleged infringement of the '951 Patent.

███████████.  In the email, ████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
█████████████████████

Wonderland—without proof—argues that ████████████████████████
███████████████████████████████████████████████████████

Wonderland does not stop there however.  Wonderland's contention interrogatory relating to willfulness indicates that Wonderland will argue ██████████████████ proves willfulness with respect to all accused products, even though the email mentions only one of the asserted patents (the '043 patent) and one accused product.  As a result, Evenflo has moved *in limine* to exclude the email on multiple grounds, including Federal Rules of Evidence 402, 403, 602, 702, and 802, as well as 35 U.S.C. § 298 and *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004).

If the Court does not exclude ██████████████, Evenflo respectfully requests that the Court bifurcate willfulness from the liability portion of trial.

First, Wonderland's introduction of ███████████████ in support of its willfulness theory will prejudice the jury on liability, and no curative instruction would mitigate such prejudice. *See, e.g.*, *Knorr-Bremse*, 383 F.3d at 1344; *Lab'y Skin Care, Inc. v. Ltd. Brands, Inc.*, 757 F. Supp. 2d 431, 442 (D. Del. 2010); *see also Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*, No. CV 17-1734-RGA, 2021 WL 982730, at *2 (D. Del. Mar. 16, 2021) (denying bifurcation only after the court excluded all prejudicial willfulness evidence).  The prejudice here would be especially great based on Wonderland's plan to introduce ███████████████ email through multiple witnesses at trial.

Second, a verdict of noninfringement in the first trial would obviate the need for evidentiary

rulings regarding ██████████████, thus promoting judicial economy. *Laboratory Skin Care, Inc.*

*v. Limited Brands, Inc.*, 757 F. Supp. 2d 431, 442 (D. Del. 2010) (Stark, J.) ("The Court finds it

proper to exercise its discretion and try infringement separately from the issues of damages and

willfulness. Judicial resources may be conserved through bifurcation, as liability may not be found,

or even if found it may simplify the subsequent damages and willfulness trial."); *Robert Bosch*

*LLC v. Pylon Mfg. Corp.*, No. 08-cv-542, 2009 WL 2742750, at *1 (D. Del. Aug. 26, 2009)

(Robinson, J.) ("I have determined that bifurcation is appropriate, if not necessary, in all but

exceptional patent cases."); *see also Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1319

(Fed. Cir. 2013) ("[W]e wish to make clear that district courts, in their discretion, may bifurcate

willfulness and damages issues from liability issues in any given case.") (*en banc*).

Without bifurcation, a substantial portion of the trial will focus on an email ████████

████████████████████████████████████████████████████

████████████████████████████████. Bifurcation will thus streamline the issues at

trial, and substantially simplify the issues for the jury.

Third, if Evenflo prevails on Wonderland's claims of infringement of the '043 patent with

respect to the Evolve, Transitions, or SafeMax car seats, a separate willfulness trial will not be

necessary due to the decidedly irrelevant nature of ██████████ to the other accused car seats

and the '951 patent.

Fourth, if Wonderland tries liability issues in the same trial as willfulness, Wonderland is

likely to confuse the jury by focusing them on the accused products *plus* the unrelated technology

of ██████████. Bifurcating the trial will avoid such confusion and properly center the jury's

attention on the accused products.

Fifth, if ███████████████ is not excluded entirely, bifurcating liability and willfulness at trial is warranted because there is no overlap in the underlying factual issues for the jury.  On liability, Wonderland is required to show how each of the accused products practice each limitation of the asserted claims, as construed. Because patent infringement is "a strict liability offense," there is no requirement to show culpability. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639, 135 S. Ct. 1920, 1926, 191 L. Ed. 2d 883 (2015) (citing *Glob.-Tech Appliances, Inc. v. SEB S.A.,* 563 U.S. 754, 760 n. 2 (2011)).  Thus, the issue of infringement and willful infringement are entirely distinct. And Wonderland notably does not intend to call ██████ in its case-in-chief.

Finally, despite Wonderland's conclusory assertions to the contrary, Wonderland has not identified any actual prejudice that would result from bifurcation.  In particular, Wonderland vaguely hints at duplication of costs and delaying trial, but fails to show real risk of either.  The issue of willfulness is entirely distinct from other issues in the case; thus, any alleged willfulness evidence for the jury—which Wonderland seemingly admits covers a single email—can simply be moved from a first to second phase of trial.  For the same reasons, bifurcation will not delay trial. The truncated first phase will proceed as planned on January 9, 2023, and, if necessary, a second phase can proceed immediately thereafter (and likely during the same week) following the verdict.

In addition, Evenflo requests that the Court bifurcate any equitable issues, including the issue of a permanent injunction, and exclude evidence of alleged market harm of Wonderland's customer, Graco, from the jury trial, as set forth more fully in Evenflo's motion *in limine*. *See Illinois Tool Works, Inc. v. MOC Products Co., Inc.*, 946 F. Supp. 2d 1042, 1048 (S.D. Cal. 2012) ("Because evidence regarding ITW's size and market share is only relevant, if at all, to MOC's

equitable defenses, the Court grants in part ITW's motion and will prohibit MOC from referencing those matters before the jury.").

Evenflo contends that Wonderland's request for a permanent injunction, as well as any evidence of alleged irreparable injury or harm, should be tried in a separate bench trial before the Court and not before the jury because a permanent injunction is a question of law. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) ("The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion."); *see also Invista N. Am. S.A.R.L. v. M & G USA Corp.*, 35 F. Supp. 3d 583, 607 (D. Del. 2014) ("Permanent injunctions in patent cases must be based on a case-by-case assessment of the traditional equitable factors governing injunctions."); *Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.*, 579 F. Supp. 2d 554, 558 (D. Del. 2008). Wonderland does not dispute this.

Furthermore, Wonderland provides no reason why the issue of irreparable injury or harm should be submitted to the jury in this case.  Wonderland's request for permanent injunction is based solely on alleged harm to its third-party customer, Graco.  But Graco's alleged harm in the marketplace is not relevant to whether Evenflo infringes the asserted patents.  Graco's alleged harm is also not relevant to damages.  Therefore, admitting evidence or argument that Wonderland, let alone Graco, has suffered harm in the marketplace based on competition from Evenflo creates an unnecessary risk of confusing the jury as to its significance and requires the Court to provide careful instructions during trial. *See, e.g., Novartis Pharm. Corp. v. Teva Pharm. USA, Inc*., No. CIV.A.05-CV-1887 DMC, 2009 WL 3754170, at *5 (D.N.J. Nov. 5, 2009) ("[b]ifurcat[ing] . . . damages and/or equitable relief and trial of the underlying issues of obviousness and inequitable conduct separately"). This needlessly complicates trial for both the jury and the Court.

Second, Wonderland does not allege that Evenflo committed willful infringement based on Evenflo's competition with Graco.  But even if it had, such competition evidence would not be relevant to willful infringement and is therefore properly excluded not only from any bench trial but also from a jury trial.  In particular, Wonderland intends to introduce voluminous evidence about Evenflo's knowledge of Graco's products, Evenflo's competition with Graco in the marketplace, and Graco's speculation about the value of Wonderland's alleged inventions.  Such evidence will require Evenflo to respond—in a one week trial that concerns multiple accused products and two asserted patents—with substantial, irrelevant evidence regarding marketplace dynamics and industry competitive practices.  Not only would this require additional trial time, introducing equitable issues to the jury "risks contaminating the jury's consideration of infringement and validity and would likely result in more time during the jury phase of the trial discussing limiting instructions." *In re Biogen '755 Patent Litig.*, No. CV102734CCCJBC, 2018 WL 3613162, at *4 (D.N.J. July 26, 2018) (granting a motion *in limine* to exclude evidence or argument to the jury regarding an equitable issue); *see also Integra LifeSciences Corp.*, 2018 WL 2186677, at *4 (denying request for an advisory jury verdict on equitable estoppel as "not to burden the jury with an additional, unnecessary decision"). To avoid prejudice to Evenflo and wasting additional trial time on issues for the Court to decide, the more prudent approach is to supplement the record for a bench trial with non-overlapping evidence.  *See TruePosition Inc. v. Andrew Corp.*, No. 05-747, 2008 WL 205305, at *2 n.4 (D. Del. Jan. 23, 2008) (using post-trial briefing to decide equitable defenses on the trial record and permitting counsel to seek leave to supplement the record with evidence regarding equitable defenses after the close of jury trial); *see also IGT v. Bally Gaming Int'l., Inc.*, 675 F. Supp. 2d 487, 489–93 (D. Del. 2009) (considering evidence relating to

an injunction relief post-trial); *Advanced Cardiovascular Sys.*, 579 F. Supp. 2d at 558–62 (D. Del. 2008) (same); *Praxair v. ATMI*, 479 F. Supp. 2d 440, 443 (D. Del. 2007) (same).[9]

## VIII.   MOTIONS *IN LIMINE*

Wonderland reserves the right to assert one or more motions *in limine* as part of the meet and confer process leading up to the submission of the pre-trial order, in response to Evenflo's pretrial disclosures and objections, and in response to any pretrial rulings or orders from the Court, including any orders from the Court with respect to either party's motions for summary judgment or *Daubert* motions.

Evenflo reserves the right to assert one or more motions *in limine* as part of the meet and confer process leading up to the submission of the pre-trial order, in response to Wonderland's pre-trial disclosures and objections, and in response to any pre-trial rulings or orders from the Court, including any orders from the Court with respect to either party's motions for summary judgment or *Daubert* motions.

The Parties have stipulated to the following motions in limine:

- **(1) Prior Litigation:** Parties agree to not reference or introduce evidence relating to the Wonderland 2018 case (Case No. 18-1990-RGA) or the outcome of that case, except for impeachment.  Should one party open the door by mentioning the prior case, the other reserves the right not only to impeach any witness who may have opened the door, but to then put in additional evidence associated with the first case

---

[9] Wonderland complains about the timing of Evenflo's request lack merit.  Wonderland proposed adding a section on bifurcation to the pretrial order, and Evenflo merely used that additional as a springboard to raise the issue for the Court. Moreover, the timing only goes to the manner of trial, not to Wonderland's rights. In contrast, a consolidated trial on all issues poses systemic and incurable prejudice to Evenflo's rights, as detailed herein.

to rebut and correct any statements that were made, subject to specific objections at trial.

- **(2) Product Recalls:** Wonderland agrees not to affirmatively raise argument on or put into evidence recalls of certain accused Evenflo products (Evolve, Transitions). Wonderland reserves the right, should Evenflo open the door to evidence of recalls by testifying about recalls generally or by testifying that Evenflo products have never been recalled, to not only impeach that witness's statements but also to put in additional evidence to rebut or correct those statements.

- **(3) Interrogatory 5:** Evenflo, despite disputing prejudice or lack of relevance, will not reference or rely upon Wonderland's Amended and Supplemental Response to Evenflo's Interrogatory No. 5 (August 20, 2021) or the contentions stated therein, which Wonderland asserts erroneously identified four products as practicing the '043 patent ███████████████████████████ and which Wonderland subsequently amended to correct.  Should Evenflo's position change, it will provide notice to Wonderland, and Wonderland will raise specific objections at that time.

- **(4) COVID-19:** Evenflo never intended to and thus agrees not to make statements regarding COVID-19 coming from Taiwan or China.

## IX.　DISCOVERY

Each party has completed discovery.

## X.　TRIAL

### A.　Length & Time

This matter is scheduled for a 5-day jury trial beginning at 9:30 a.m. on January 9, 2022. Until the case is submitted to the jury for deliberations, the jury will be excused each day at a time decided by the Court. The trial will be timed. The Court will allocate to counsel for each party a

number of hours in which to present their respective cases, including time for opening and closing argument, but not time for *voir dire*.

### B.    Order

The order of presentation of evidence will be as follows: (1) Opening Statements (Wonderland first, followed by Evenflo); (2) Wonderland's presentation of evidence of issues for which Wonderland bears the burden of proof; (3) Evenflo's presentation of evidence rebutting Wonderland's presentation, and Evenflo's presentation of evidence on issues for which it bears the burden of proof; (4) Wonderland's presentation of evidence rebutting Evenflo's presentation of evidence on issues for which Evenflo bears the burden of proof; and (5) Closing Arguments (Wonderland first, followed by Evenflo, followed by Wonderland's rebuttal).

To the extent it is necessary based on the jury's verdict, the Court will hold hearing bench trial following the conclusion of the jury trial to resolve any remaining equitable issues. Prior to the bench trial, the parties will be given an opportunity to submit witness lists, designated testimony and objections, exhibits and objections, and contested and uncontested statements of fact and law to the Court. To the extent any such materials are not included in the pretrial materials for the jury trial, neither party shall be prohibited from including them later for purposes of any bench trial.

### C.    Jury

There shall be at least eight (8) jurors. The Court will conduct jury selection through the Court's "prejudice" method.

### D.    Jury Notes

The parties agree that the jurors will be permitted to write notes by hand during the presentations of the parties and that jurors will be permitted to bring these notes as well as the provide jury notebook(s) into the deliberation room.  The parties further propose that the jurors be

instructed not to exchange or share their notes with each other (though they may discuss the contents of their notes) and that the jurors' notes be collected by the clerk each evening after daily recess, and collected and destroyed without review and the jury's discharge.

      **E.**    **Party Set-up**

The parties request the Court grant access to the Court room on the Friday before trial to allow them to set up and test counsel's tables, including electronic and computer devices to be used during the trial.

## XI.   AMENDMENTS TO THE PLEADINGS

Neither party seeks any amendment(s) to the pleadings.

## XII.   ADDITIONAL MATTERS

Both parties have designated materials as confidential during discovery.  Recognizing that a party seeking to seal material introduced at trial bears a heavy burden to demonstrate why such a sealing order is necessary, Wonderland's position is that the majority of documents designated with some form of confidentiality do not require the Courtroom to be sealed.  Wonderland proposes that any exhibit or testimony that a party seeks to maintain as confidential will only be held in such confidence if the matter is raised and a proffer made at the time the evidence (or discussion by counsel) will be presented to the Court.

## XIII.  SETTLEMENT

The parties have engaged in a good faith effort to explore resolution of the controversy by settlement.

**IT IS HEREBY ORDERED** that this Final Pretrial Order shall control the subsequent

course of the action, unless modified by the Court to prevent manifest injustice.

DATED: _____

_____

HONORABLE JON P. McCALLA
UNITED STATES DISTRICT COURT JUDGE

APPROVED AS TO FORM AND SUBSTANCE:

| | |
|---|---|
| ASHBY & GEDDES | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| /s/ Andrew C. Mayo | /s/ Jeremy A. Tigan |
| _____ | _____ |
| Steven J. Balick (#2114) | Jeremy A. Tigan (#5239) |
| Andrew C. Mayo (#5207) | Sarah Elizabeth Simonetti |
| ASHBY & GEDDES | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| 500 Delaware Avenue, 8th Floor | 1201 North Market Street |
| P.O. Box 1150 | P.O. Box 1347 |
| Wilmington, DE  19899 | Wilmington, DE 19899 |
| (302) 654-1888 | Telephone:  (302) 658-9200 |
| sbalick@ashbygeddes.com | jtigan@mnat.com |
| amayo@ashbygeddes.com | ssimonetti@mnat.com |
| Noah A. Brumfield (*pro hac vice*) | Lauren Douville (*pro hac vice*) |
| David M. Tennant (*pro hac vice*) | B. Trent Webb (*pro hac vice*) |
| Shamita D. Etienne-Cummings (*pro hac vice*) | Aaron E. Hankel (*pro hac vice*) |
| Jacob Rothenberg (*pro hac vice*) | Maxwell C. McGraw (*pro hac vice*) |
| Megan Ines (*pro hac vice*) | SHOOK, HARDY & BACON L.L.P. |
| ALLEN & OVERY LLP | 2555 Grand Boulevard |
| 1101 New York Avenue, NW | Kansas City, MO  64108 |
| Washington, DC  20005 | Telephone:  (816) 559-0348 |
| Telephone:  (202) 833-3810 | ldouville@shb.com |
| Noah.brumfield@allenovery.com | bwebb@shb.com |
| David.tennant@allenovery.com | ahankel@shb.com |
| Shamita.etienne@allenovery.com | mmcgraw@shb.com |
| Bijal V. Vakil (*pro hac vice*) | |
| Eric E. Lancaster (*pro hac vice*) | *Attorneys for Defendant* |
| ALLEN & OVERY LLP | |
| 550 High Street, Second Floor | |
| Palo Alto, CA  94301 | |

Telephone:  (650) 388-1700
Bijal.vakil@allenovery.com
Eric.lancaster@allenovery.com

Majesty Jala (*pro hac vice*)
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, NY  10020
Telephone:  (212) 610-6300
Majesty.jala@allenovery.com

Katherine Kieckhafer (*pro hac vice*)
ALLEN & OVERY LLP
One Beacon Street
Boston, MA  02108
Telephone:  (857) 353-4500
Katherine.kieckhafer@allenovery.com

*Attorneys for Plaintiff*