1

```
1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF DELAWARE
2

3    _____
                                      |
     WONDERLAND SWITZERLAND AG,       |
4                                     |
              Plaintiff,              |
5                                     |  NO. 20-CV-00727
     vs.                              |
6                                     |
     EVENFLO COMPANY, INC.,           |
7                                     |
              Defendant.              |
8                                     |
9    _____
```

```
12              TRANSCRIPT OF THE RULE 50 MOTION

13                      BEFORE THE

14              HONORABLE JON P. MCCALLA
```

```
17                      WEDNESDAY

18                 JANUARY 11, 2023
```

```
22
               TINA DuBOSE GIBSON, RPR
23                OFFICIAL REPORTER
             FOURTH FLOOR FEDERAL BUILDING
24             MEMPHIS, TENNESSEE 38103
```

**UNREDACTED TRANSCRIPT**

2

1           A P P E A R A N C E S

2

3       Appearing on behalf of the Plaintiff:

4           KAREN E. KELLER
            Shaw Keller, LLP
5           1105 North Market Street, 12th Floor
            Wilmington, Delaware  19801
6           (302) 298-0700
            kkeller@shawkeller.com

7

            SHAMITA D. ETIENNE-CUMMINGS
8           ERIC LANCASTER
            Allen & Overy
9           595 Market Street
            Allen & Overy LLP
10          San Francisco, California 94105
            (650) 388 1700
11          shamita.ettienne@allenovery.com
            eric.lancaster@allenovery.com

12

13

        Appearing on behalf of the Defendant:
14

            SHARON A. ISRAEL
15          LAUREN E. DOUVILLE
            EMILY R. SOSOLIK
16          Shook, Hardy & Bacon, LLP
            2555 Grand Boulevard
17          Kansas City, Missouri 64108
            (816) 474-6550
18          sisrael@shb.com
            ldouville@shb.com
19          esosolik@shb.com

20

21

22

23

24

25

**UNREDACTED TRANSCRIPT**

WEDNESDAY

JANUARY 11, 2023

----------------------

THE COURT:  When we have a phone conference, we do have to make sure that everybody announces their name because Ms. Gibson is on the line.  She's done these before for this group, so she does know you, but she won't recognize anybody's voice.  I'm going to start with the moving party. I'm going to -- I'm going to start with Ms. Israel.  I'm treating you as in charge here, but I'm going to get you to announce yourself and then say who is with you.  If there is anybody else who is going to speak, probably not unless we --

MS. ISRAEL:  Yes, Your Honor.

THE COURT:  That's perfectly fine.  So will you announce yourself and introduce who is here with you.

MS. ISRAEL:  Yes, Sharon Israel, on behalf of Evenflo, and with me is Lauren Douville and Emily Sosolik.

THE REPORTER:  I'm sorry.  Lauren Douville and?

MS. ISRAEL:  Emily S-O-S-O-L-I-K.

THE REPORTER:  Thank you.

THE COURT:  Now, everybody knows on the movant side that if you speak, even though we can see you, that you should state your name.  So we're good on that.

Okay.  Ms. Cummings, are you in charge of this

**UNREDACTED TRANSCRIPT**

 1   group, or is someone else in charge?

 2             MS. CUMMINGS:  I will be speaking today, Your

 3   Honor, Shamita Cummings for Wonderland.  With me is Eric

 4   Lancaster and Karen Keller.

 5             THE COURT:  All right.  I think everybody

 6   understands how we are going to proceed.  The movant may make

 7   their motion.

 8             MS. ISRAEL:  Thank you, Your Honor, Sharon Israel

 9   on behalf of Evenflo.  Pursuant to Federal Rule of Civil

10   Procedure 50(a), Evenflo respectfully moves for judgment as a

11   matter of law that Evenflo -- one, Evenflo has not infringed

12   any of the asserted claims to U.S Patent Numbers 7,625,043 or

13   8,141,951, either literally or under the document of

14   equivalents, nor has induced infringement, nor has

15   contributorily infringed the claim -- the specific claims at

16   issue, and that Wonderland has not met its burden but to

17   show -- to prove infringement, and that no reasonable jury

18   would be able to find otherwise.

19             The specific claims at issue are Claim 1 of the

20   '043 patent and Claims 1 and 4 to 6 of the '951 patent.  To

21   be very clear, Claims 7 and 8 of the '951 patent were

22   previously asserted but have been withdrawn.  To the extent

23   there's any issue with that, there is no evidence in the

24   record of infringement of any type of Claim 7 or -- 7 and 8

25   of the '951 patent.

**UNREDACTED TRANSCRIPT**

1          In addition, that also applies to Claims 5 and 6

2    with respect to what we'll define as the accused three-in-one

3    products.  Those claims were also withdrawn.  And thus we

4    move for judgment as a matter of law of noninfringement with

5    respect to any of the claims that have been withdrawn.  But I

6    don't think they have been formerly withdrawn on the record.

7          THE COURT:  They should reflect, Ms. Cummings,

8    that they're formally withdrawn on the record.

9          MS. CUMMINGS:  Yes, they were form- -- it should

10   be reflected that they were formerly withdrawn.

11         MS. ISRAEL:  They are still in the pretrial

12   order.

13         THE COURT:  Right, they are.  But they've also

14   been removed from the verdict form.  And, of course, as we go

15   through the trial, there are various amendments to what was

16   initially contained in the pretrial order, but actually, it's

17   a good point.

18         MS. ISRAEL:  Second, Evenflo also moves for

19   judgment as a matter of law that Evenflo has not willfully

20   infringed the '043 patent, and Wonderland has not met its

21   burden to show willful infringement, no reasonable jury could

22   find otherwise.

23         Third, Wonderland has not presented sufficient

24   evidence to be entitled to a reasonable royalty.

25         And, finally, Wonderland is not entitled to any

**UNREDACTED TRANSCRIPT**

1   equitable or other relief and we make this without prejudice

2   to Evenflo to be able to put on evidence and arguments

3   following any verdict, if needed, in accordance with the

4   pretrial order in this case.  To let you know that we do plan

5   to file a written motion as well detailing out our specific

6   bases for our motion.

7           THE COURT:  Absolutely.  And I want to make sure,

8   I think we've covered what you intended to cover, but I want

9   to make sure we have because then there's going to be a

10  response.  Anything else?  Now, we've got four specific

11  points that, of course, I wrote down more than that, if you

12  were to go claim by claim.  I think we -- and I understand

13  that it's a claim-by-claim assertion in the case.  I think

14  we've covered what you wanted to, but I can never say that

15  the motion has covered everything you want because I'm just a

16  judge, and it really is the party's responsibility.

17          MS. ISRAEL:  Well, just for clarity, I do believe

18  we had some claim construction issues that we continue to

19  dispute, and that may -- you may find that there are further

20  disputes as the case proceeds, but those include the issues

21  of construction of "connected to" with respect to the '951

22  patent and -- hang on, I think we do have one more.

23          MS. DOUVILLE:  I guess, perhaps the receptacle

24  issue.

25          THE REPORTER:  I'm sorry?

**UNREDACTED TRANSCRIPT**

1          THE COURT:  That is lead defense counsel speaking

2   at this time.

3          MS. ISRAEL:  And perhaps with respect to

4   receptacle, which the Court has construed to be a

5   three-dimensional space size to receive an attachment arm.

6   Based on some -- based on what's transpired, at least in the

7   past 24 hours, we anticipate we may have a further dispute

8   with respect to that.  To the extent we do, we want to

9   preserve that issue as well.

10         THE COURT:  And the other speaker was

11  Ms. Douville.  She spoke briefly.  It's D-O-U-V-I-L-L-E.

12              Response?

13         MS. CUMMINGS:  We oppose each one of these

14  positions.

15         THE REPORTER:  I'm sorry.  I'm sorry.  Who is

16  speaking again?

17         MS. CUMMINGS:  Oh, I'm sorry.  This is Shamita

18  Cummings for Wonderland.

19         THE REPORTER:  Thank you.

20         MS. CUMMINGS:  And we oppose all four positions

21  that Ms. Israel has made on behalf of Evenflo.  The first

22  being Wonderland opposes that there isn't sufficient evidence

23  in the record to establish that a reasonable jury can find

24  infringement of the asserted claims of the '043 patent and

25  the '951 patent under either the document of equivalence or

**UNREDACTED TRANSCRIPT**

1    literally, that there's sufficient evidence in the record for

2    a reasonable jury to find induced infringement of the

3    asserted claims as just outlined, and that a reasonable jury

4    has sufficient evidence to find for contributory infringement

5    of the asserted claims of the '043 patent and the '951

6    patent.

7              Furthermore, as to the second position that

8    Ms. Israel outlined, Wonderland opposes Evenflo's (inaudible)

9    concerning willful infringement of the '043 patent.  We

10   believe that the jury has enough sufficient evidence -- a

11   reasonable jury has sufficient evidence to find for

12   Wonderland on willfulness.  And also a reasonable jury has

13   sufficient evidence to determine a reasonable royalty rate

14   provided that infringement is found.

15             In addition, a reasonable jury has sufficient

16   evidence with regard to awarding equitable relief.

17             Furthermore, Wonderland opposes any objection or

18   assertion of claim construction as it pertains to connected

19   to as recited in the asserted claims of the '951 patent and

20   as it pertains to the term "receptacle," as it is asserted in

21   the Claim 1 of the '043 patent.

22             THE COURT:  And any reply at this time?

23             MS. ISRAEL:  With respect to equitable --

24             THE REPORTER:  I'm sorry.  I am just not able to

25   hear you, and I'm not sure who is speaking.

**UNREDACTED TRANSCRIPT**

1          MS. ISRAEL:  Okay.  Sorry, this is Sharon Israel.

2   I have one comment in response, which is equitable relief is

3   an issue for the Court, so it's not something that should be

4   going to the jury to begin with.

5          MS. CUMMINGS:  This is Shamita Cummings.  I'm

6   sorry.  I was just reading off.  I agree, and we believe that

7   there is evidence in the record for a determination on

8   equitable relief.

9          THE COURT:  All right.  This is Judge McCalla.

10   These motions, I think, have been adequately articulated.  On

11   the issue of equitable relief, of course, that's a matter for

12   the Court.  Everybody understands that, and we would not be

13   addressing that at this time.

14          On issues as to claim construction, the motion

15   will be denied.  The Court has articulated its reasons for

16   the claim construction, and there is a basis in the record

17   for the claim construction.  That is really something that we

18   possibly would be able to address at a different time, but

19   we've addressed it multiple times already.

20          In connection with whether or not there is

21   insufficient evidence to assert infringement as to the

22   claims, actually, I should note that there has been a

23   reduction in the number of claims as to which infringement is

24   asserted.  And I understand why those were taken out, and it

25   did appear appropriate, so I have no problem with that.

**UNREDACTED TRANSCRIPT**

1  Those were matters on which there would have been certainly

2  no evidence, and the defendant would have prevailed.

3          In connection with the matter, though, as to

4  whether or not -- as to any of the existing claims, the

5  matter should be -- should it result in a Rule 50 motion, it

6  would be inappropriate, based on the current record, for the

7  Court to find that a reasonable jury could not have

8  sufficient evidence or basis to find in favor of the

9  plaintiff.

10          In other words, there is a sufficient factual

11  basis at this point in time for the plaintiff to go to the

12  jury on these matters.  And I should note that we really had

13  a rather extensive record that's well developed in the case

14  with a total of nine witnesses who testified thus far and

15  lengthy testimony by Dr. Cameron on the issue of

16  infringement.  So it would be inappropriate for the Court to

17  take those issues away from the panel.  They'll have to go to

18  the -- at least at this stage, it appears that they will

19  definitely have to go to the jury.

20          On the question of willful infringement, that's

21  actually been a question that the Court has been thinking

22  about.  And I'm always thinking about all of them, of course,

23  but that's the one that we focused on a little bit

24  internally, and I did want to hear a little further response

25  from the plaintiff on that.  There is some specific

**UNREDACTED TRANSCRIPT**

1   information that does provide perhaps a basis that I would

2   like to have articulated a little more clearly.

3               MS. DOUVILLE:  Mr. Lancaster will be handling

4   that issue.

5               MR. LANCASTER:  Yes, this is Eric Lancaster on

6   behalf of Wonderland.  Your Honor, willfulness is a question

7   of fact for the jury to be decided on the preponderance of

8   the evidence.  The Federal Circuit has said that the jury

9   needs to find no more than deliberate or intentional

10  infringement for willfulness.  Here, there is evidence that

11  numerous engineers and other Evenflo employees involved in

12  the design of all of the products being accused of

13  infringement were aware of the details of Claim 1 of the '043

14  patent prior to designing and during the design process of

15  the accused products.

16              Now, there is additional evidence that -- the

17  fact that they -- it is a known or should not have known

18  standard.  So the fact that they had seen the entirety of

19  Claim 1 of the '043 patent, were aware that the '043 patent

20  was related to the Graco Nautilus product, a product that

21  there is evidence they tore down as part of their development

22  process, is an additional fact that the jury would support a

23  jury's conclusion that the -- there was willful infringement

24  here.

25              THE COURT:  To what degree is there documentation

1  that would support a willfulness determination?

2         MR. LANCASTER:  Well, there is documentation

3  beyond the testimony of witnesses.  So beyond the testimony

4  of witnesses, there is documentation discussing the teardowns

5  of the accused -- or, sorry, of the practicing Wonderland

6  products.

7         THE COURT:  It's been stipulated that teardowns

8  are essentially routine.

9         MR. LANCASTER:  And they can be routine, Your

10  Honor, but that knowledge that is in the designer's mind

11  during the teardown, it's a different thing for the company

12  to have torn down a product and for it to be some place in

13  the company.  What we have here is that the specific people,

14  including Mr. Conaway, who was involved in the design of both

15  sets of (inaudible) products.  He was aware of teardowns of

16  Wonderland -- of the practicing Wonderland products.

17         So you have, again, a specific designer involved

18  in the specific design -- and this is one example -- in the

19  specific design of the products that are infringing, aware of

20  not -- you know, both the patent claims, as well as the

21  products that he's tearing down were practicing the patent

22  claims and that his team were tearing down were practicing

23  those claims because they refer to, again, the '043 as the

24  Nautilus patent.  They acknowledge those features.  Those

25  images you saw were the Nautilus -- images of Nautilus car

**UNREDACTED TRANSCRIPT**

1    seats within the '043 patent.

2         So there is document evidence there.  There are

3    e-mails reflecting the attachment that was entered into, into

4    evidence reflecting the teardowns of the -- one of the

5    four-in-one practicing products for Graco.  There, again, is

6    the reference -- Exhibit No. 44, which was Reference Number

7    106, the hazard quality analysis team meeting notes.

8         That, again, reflected that three-in-one concept

9    as being developed to compete with Graco Nautilus.  So many

10   of the same features are being planned to be integrated into

11   the seat, so we have specific reference to teardown of the

12   Graco Nautilus, knowledge of the features, that the '043

13   patent was related to the Graco Nautilus, and planned

14   integration of those features into the Graco Nautilus.

15        There was also Exhibit 57, which was a May 18,

16   2018, e-mail from Mr. Przybylo to Allen Ball that states they

17   integrated so many of these same features to compete.  So

18   that's another piece of record evidence supporting this.

19        We also have evidence of the intent to compete,

20   including the Graco 4Ever, and they have no products prior to

21   the copying or competing.  And those are from Exhibit 48,

22   Exhibit 66.  Exhibit 46 is another exhibit talking about

23   Evolve being designed to compete with the Graco Nautilus.

24   And, again, Exhibit No. 61 is an Evenflo three-in-one deck

25   talking about the fact that the competition and the knowledge

**UNREDACTED TRANSCRIPT**

1  and awareness between these two products.

2      MS. ISRAEL:  Your Honor, may I respond?

3      THE COURT:  You may.  Also on the issue of not

4  entitled to reasonable royalty, there is sufficient evidence

5  of that, but let's talk about this a little bit more.

6      MS. ISRAEL:  Sharon Israel for Evenflo, and I

7  will try to speak loudly.

8      We disagree.  No reasonable jury could find

9  willful infringement, and Wonderland hasn't met its burden

10  here.  Knowledge of the patent is not enough, and there is no

11  evidence that the alleged infringement was deliberate or

12  intentional.  A lot of what Wonderland is relying on, in

13  fact, is based on the teardown of Wonderland products or

14  Graco products.

15      As we know and the parties stipulated, it's

16  common in the industry to tear down competitor products.

17  There has been no evidence, in fact, that Wonderland's own

18  products practice the '043 patent.  They have not put in any

19  evidence specifically showing and mapping how the -- their

20  Nautilus product allegedly practices.  That was their burden.

21  They didn't meet it.

22      The evidence shows that Evenflo acted

23  consistently with standards of behavior in the industry.

24  There's no evidence of intentional copying of a product

25  covered by a patent.  And there's been no evidence to meet

**UNREDACTED TRANSCRIPT**

```
1    any of the elements of willfulness or to show that Evenflo
2    acted with willful blindness.  Teardowns aren't sufficient.
3    Just competition with the Graco Nautilus is not sufficient,
4    and no reasonable jury should be able to find willful
5    infringement.
6              MR. LANCASTER:  Brief response to that, Your
7    Honor?
8              THE COURT:  You may.
9              MR. LANCASTER:  So --
10             THE COURT:  Can you announce your name?
11             MR. LANCASTER:  My apologies.  Eric Lancaster
12   from Allen & Overy on behalf of Wonderland.  So when we look
13   at this, the evidence is what was -- we don't have to prove
14   that these were practicing products.  What's relevant is the
15   mindset of the Evenflo employees, and if we look at their
16   subjective belief, they said that the '043 patent was the
17   Graco Nautilus patent.
18             They've acknowledged that, that they heard it
19   referenced that way, and it was referencing the Nautilus
20   product.  So they have knowledge and awareness of the Graco
21   known -- that the '043 was the Graco Nautilus patent.  So
22   it's not just a -- that it is our burden to show they
23   actually practiced.  It's their brief that it was practicing
24   and that that's what was covered, and there's certain
25   evidence in the record sufficient for the jury to find that.
```

**UNREDACTED TRANSCRIPT**

1          Again, the evidence here must be viewed in the

2    light most favorable to the nonmovant.  And every fair and

3    reasonable inference must be provided to us, and there is

4    legal evidence sufficient for the jury to find that.

5          For example, there is the *Polara Engineering,*

6    *Inc. vs. Campbell Co.*, Case 894 F.3d 1339 in the Federal

7    Circuit 2018.  And in this case, the evidence -- they found

8    that the evidence introduced at trial, the jury could have

9    found they intentionally copied based on the fact that

10   Mr. Campbell was aware of the patent prior to developing its

11   product and they developed -- then he testified that they

12   developed it to compete with the other product.

13         So we think that is a relevant case that supports

14   our position that there has been sufficient evidence

15   presented to the jury, factual basis, when all inferences are

16   provided in our favor.

17         THE COURT:  Obviously, this is a much closer

18   question; however, the standard is one that favors the party

19   opposing the motion in a light most favorable to the

20   nonmovant patent.  And while I think it's somewhat close, as

21   you can tell, we're going to deny the motion at this time.

22         Now, I think we've addressed each of the motions,

23   and I did allude briefly to the royalty question; but of

24   course, we've had substantial expert testimony.  That's

25   certainly contested, and I understand that.  But every issue

**UNREDACTED TRANSCRIPT**

1     that's been raised by the defense at this time is one as to

2     which a jury should be allowed to make a determination.

3            I think we've concluded the matters.  I do

4     appreciate everybody.  Is there something we've missed?  I

5     wasn't quite sure (inaudible).

6            MS. ISRAEL:  Your Honor, this is Sharon Israel.

7            THE COURT:  Yes, as long as you speak up for the

8     court reporter, you're okay.

9            MS. ISRAEL:  Yes.  All right.  This is Sharon

10    Israel on behalf of Evenflo.  May I address indirect

11    infringement briefly?

12           THE COURT:  Yes, you may.  Please do.

13           MS. ISRAEL:  Okay.  There has -- there has not

14    been sufficient evidence of -- Wonderland has not met its

15    burden.  There's not sufficient evidence of either induced

16    infringement or contributory infringement.  I'll take those

17    one at a time.  First, direct infringement, which is the

18    basis of no induced infringement or contributory

19    infringement.

20           However, in addition, owner manuals alone are not

21    sufficient to prove inducement, and that seems to be what

22    Wonderland has been relying on.  And knowledge of the patents

23    is not enough.  There's no evidence -- there's no evidence

24    that Evenflo knew the asserted patents and knew use of the

25    accused products that allegedly constitute infringement.

**UNREDACTED TRANSCRIPT**

1    In particular, too -- one, with respect to the
2    '951 patent, there's no evidence of Evenflo's knowledge of
3    that patent at all.  So I don't think there should -- that
4    there's any evidence with respect to induced infringement
5    that Wonderland has provided and communicates with respect to
6    owners manuals not being sufficient.  I'd refer you to *E-Pass*
7    *Technologies v. 3Com Corporation,* 473 F.3d 1213, Federal
8    Circuit 2007.
9    With respect to contributory infringement,
10   Wonderland has not met all the elements to establish
11   contributory infringement.  We continue to assert that
12   there's no -- that they have not established direct
13   infringement, which is one of the elements of contributory
14   infringement.  Moreover, once again, knowledge of the patents
15   is not enough, and we have no explanation, no evidence of any
16   knowledge of the '951 patent.
17   We don't think there's sufficient knowledge of
18   the '043 patent in providing accused seats to be used in an
19   allegedly infringing manner.  Again, just knowledge of the
20   patents isn't going to be enough.
21   With respect to both the three-in-one and
22   four-in-one accused seats, they have suitable noninfringing
23   uses.  For example, each can be used as a booster seat, and
24   used as a booster seat would not implicate any of the
25   asserted claims.

**UNREDACTED TRANSCRIPT**

1            Also with respect to the four-in-one seats, they

2    can be used in the rear-facing mode, which also is not

3    practiced with either patent.  And with respect to the

4    three-in-one seat, they can also be used in an internal

5    harness mode, which was not practiced with either patent.

6            We also assert that Dr. Cameron's opinion with

7    respect to any noninfringement usage are conclusory at best

8    and insufficient.

9            THE COURT:  Be sure and announce your name.

10           MS. CUMMINGS:  Yes.  This is Shamita Cummings for

11   Wonderland.

12           There was sufficient evidence for a reasonable

13   jury to find inducement and contributory as it pertains to

14   the '043 patent as was just articulated for our conversation

15   regarding -- or discussion regarding willfulness.  There has

16   been knowledge, not only of the patent itself by Evenflo, but

17   also of the precise claim.

18           In addition, Dr. Cameron did testify using the

19   user manual for each one of the claimed elements.  And

20   similar to willful infringement, internally, the Evenflo

21   employees were well aware that the Nautilus car seat was a

22   practicing car seat and that they purposefully integrated

23   features of the Nautilus car seat into development of their

24   new product even after their -- there's evidence that even

25   after their original try to make a three-in-one harness

**UNREDACTED TRANSCRIPT**

1  booster seat, and when it failed, that was at the time where

2  they decided to do all the acts that were identified for

3  willful infringement.  So knowledge was definitely available

4  for the '043 patent and the actions to induce their customer

5  base to use an infringing patent.

6          In addition, the Claim 1 of the '043 patent

7  system is an apparatus claim, not a method claim.  So even if

8  there is a one configuration of the apparatus that was not

9  identified as infringing, the entire apparatus, as purchased,

10  as marketed, as encouraged by Evenflo to be used, is

11  infringing when you purchase the car seat in and of itself.

12          As far as the '951 patent is concerned, there is

13  actual knowledge at the time of filing of the complaint.

14  That was a party admission and stipulation.  And since that

15  point of time, there was adequate notice of how infringement

16  was made.

17          THE COURT:  We're going to go ahead and deny that

18  motion under Rule 50.  I think we have everything well

19  articulated in the record, and we are going to now be in

20  recess briefly.  We will start back at 3:45.  And who is

21  going to take our first witness?

22          MS. ISRAEL:  Your Honor, I will.

23          THE COURT:  Thank you.  Yes, I thought maybe so.

24  Ms. Israel said that she will, so now we have that on the

25  record.  So if you'll just have them ready to go.

**UNREDACTED TRANSCRIPT**

1          Now, this is your relatively brief break, but

2     sort of a routine afternoon break.

3          Yes?

4          MS. CUMMINGS:  Your Honor, I believe the next

5     witness is Mr. Campbell.  Is that correct, Ms. Douville?

6     This is Shamita Cummings from Wonderland.

7          MS. DOUVILLE:  And this is Lauren Douville

8     responding.  Yes, that's correct.

9          THE COURT:  Okay.

10         MS. CUMMINGS:  And I believe -- this is Shamita

11    Cummings for Wonderland.  I believe we have -- we filed a

12    motion in limine last night.

13         THE COURT:  Yes.

14         MS. CUMMINGS:  Or this morning, I can't --

15         THE COURT:  In the early morning hours, yes, you

16    did.

17         MS. CUMMINGS:  And that -- that will affect --

18    the outcome of that motion will affect --

19         THE COURT:  It's clear that we would, on a fairly

20    brief review, would not be granting the motion.  Do you want

21    to speak to that briefly?  And I understand this is a serious

22    motion.  I understand that.

23         MS. CUMMINGS:  Just briefly.  Every opinion that

24    Mr. Campbell provided in his expert report was predicated on

25    the fact that he interpreted the claim construction for

**UNREDACTED TRANSCRIPT**

1    receptacle to require a bounded surface.  He confirmed that

2    during his deposition.  So, therefore, he has not offered any

3    opinion in which -- would apply to the claim construction of

4    receptacle not to include a bounded surface, and that was

5    rejected by the Court as --

6              THE COURT:  That is correct, and that's why I

7    wanted to hear a brief response from defense counsel about

8    that.

9              MS. DOUVILLE:  Yes, Your Honor, and this is

10   Lauren Douville speaking on behalf of Evenflo.  Your Honor, I

11   believe we may have filed -- and hopefully, it's in the

12   docket -- our response, but I will --

13             THE COURT:  I haven't seen it.  Sorry.

14             MS. DOUVILLE:  I apologize.  So our position on

15   that is that it's not correct that Mr. Campbell has never

16   provided an opinion relating to there being a single cavity

17   on the underside of the accused booster seat of the accused

18   car seat.

19             In fact, there are at least 11 or 12 different

20   mentions within his expert report, which we are happy to

21   provide to Your Honor, referring to either a single open

22   cavity or one open cavity and disagreeing with Dr. Cameron on

23   that basis with respect to her opinions of infringement.

24             THE COURT:  I thought the response was going to

25   be that he would be consistent with what the Court previously

**UNREDACTED TRANSCRIPT**

 1   ruled.  That's what I was waiting to hear.

 2          MS. DOUVILLE:  And that's what I would like to

 3   get to next, Your Honor.  Again, Lauren Douville speaking on

 4   behalf of Evenflo.

 5          Mr. Campbell does not intend to take the stand

 6   and argue or opine that there needs to be a bounded space in

 7   order for there to be a receptacle.  What we understand --

 8   and this is included in our response to the motion -- is that

 9   he is permitted to take the stand and articulate an opinion

10   that there is no pair of receptacles, including, based on the

11   guidance that was provided in the Court's summary judgment

12   ruling, which identified this as a fact issue for the jury to

13   decide.

14          Your Honor had identified in that summary

15   judgment ruling that there were aspects of the seat geometry

16   from which a reasonable juror could possibly conclude that

17   there were two receptacles but that, you know, this expert

18   would be allowed to testify as to why that seat geometry does

19   not include two receptacles.

20          And we've already had cross-examination on this

21   very issue today with Wonderland's expert, Dr. Cameron.  So

22   the jury heard this, and they didn't raise any objections at

23   that time to that evidence coming into the record.  We

24   believe this to be, frankly, an attempt just to prevent our

25   expert from testifying on that issue.  And I think, for the

**UNREDACTED TRANSCRIPT**

1    reasons stated, we don't perceive there to be any issue with

2    the expert witness, Mr. Campbell, running afoul of the

3    Court's prior ruling and Evenflo's prior promise that he will

4    not utter the words "bounded space" in his testimony.

5            THE COURT:  And I just received the memo, and you

6    did say this expert will not testify -- and we're going to

7    try to -- expert tends to have some problems with the term,

8    so a person who is qualified to render an opinion.  I'm not

9    criticizing you guys.  We just try to help the jury

10   understand that the role of that person is not to decide an

11   issue for them.  That's the reason.  It's more and more

12   around the country become the safer way and more appropriate

13   way to say that.  And so I see that this particular

14   individual will not testify that a bounded space is required,

15   and that's -- I wanted to be certain of that.  So that's

16   helpful.

17           Yes, Ms. Cummings?

18           MS. CUMMINGS:  Your Honor, Shamita Cummings for

19   Wonderland, just briefly.

20           Mr. Campbell's opinions in his expert report were

21   that he believed that the base assembly of the asserted -- of

22   the accused product was a single cavity.  And the reason he

23   believed it was a single cavity was because it did not have a

24   bounded surface in it.  And so, therefore, if he's going to

25   now advance an opinion that it's a single cavity for some

**UNREDACTED TRANSCRIPT**

1  other reason, we would never have been notified of that -- of

2  their reason.  And so we had no ability during discovery to

3  test it and to understand what his theories are.

4          THE COURT:  Let me go back to counsel.  I think I

5  know the answer, but just tell me.

6          MS. DOUVILLE:  Yes, this is Lauren Douville,

7  speaking on behalf of Evenflo.

8          So we disagree with that position.  He never

9  testified that there had to be -- our interpretation of this

10 witness's opinions is that he was not requiring there to be a

11 bounded space, but his opinion is that the receptacles are

12 formed in the seat assembly.  The seat assembly, it is

13 undisputed in this trial, is a physical object and that there

14 must be, therefore, these receptacles, a three-dimensional

15 space to receive an attachment arm must be formed in the seat

16 assembly, which would require it to be a part of the physical

17 part of the booster base.

18         Dr. Cameron has testified that there are

19 boundaries to what she has identified as receptacles that are

20 formed by physical attributes of the product.  There is

21 merely a dispute between the experts as to how many physical

22 attributes need to be there in order for there to be a

23 three-dimensional space size to receive an attachment arm.

24 And the dispute comes primarily around with the term "size,"

25 and we have a number of citations that we can point to in the

1    expert reports on this various issue that support his

2    opinion.

3            THE COURT:  I think it's adequate.  I understand

4    that there's been some changes.  That's almost inevitable in

5    cases like this, but I think that we are able to deny the

6    motion.  I needed that clarification, which has been made on

7    the record, as to not testifying as to a bounded space as a

8    requirement.  That's -- that's certainly very important to

9    the Court, so I'm going to deny the motion.  I think we're

10    ready, just about able to proceed.

11            Now, let me tell you all one thing.  And that is

12    everybody doesn't have to sit there during the proceedings.

13    In most cases, we have people coming in and out to some

14    degree.  But I just want to say that if one or two or three

15    of you want to extend your break a little bit and come in a

16    little late, that's not a problem.  And I will always tell

17    the jury that's simply how it works, that people have things

18    to do and that they will be in and out.  Nobody asked me to

19    say that is required in this case, but we almost always say

20    that because the team has to move about.  So I'm just saying

21    that because we're going back in fairly quickly.

22            We will tell the panel that we're going to be

23    another five minutes because I want to be respectful of

24    people's need for a little bit more of a break.

25            I think that concludes everything.  We're going

**UNREDACTED TRANSCRIPT**

1    to -- thanks to you, Ms. Gibson.  I think that just make sure

2    that you coordinate with the court reporter here and, of

3    course, your portion.  We may also be getting you back on the

4    line for the initial discussion of the jury -- proposed jury

5    instruction.  We may do that at the end of the day today.  It

6    will be the end of our day here but, of course, it won't be

7    the end of the day where you're located.

8              So thank you all very much.  We're going to let

9    you be excused at this time.

10             (Adjournment.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    **C E R T I F I C A T E**

2

3

4          I, TINA DuBOSE GIBSON, do hereby certify that the

5     foregoing 27 pages are, to the best of my knowledge, skill

6     and abilities, a true and accurate transcript from my

7     stenotype notes of the Rule 50 Motions hearing held on the

8     11th day of January, 2023, in the matter of:

9

10    WONDERLAND SWITZERLAND AG

11    vs.

12    EVENFLO COMPANY, INC.

13

14

15    Dated this 12th day of January, 2023.

16

17

18

19                        s/Tina DuBose Gibson

20                        _____
                          TINA DuBOSE GIBSON, RPR
21                        Official Court Reporter
                          United States District Court
22                        Western District of Tennessee

23

24

25

**UNREDACTED TRANSCRIPT**