IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WONDERLAND SWITZERLAND AG | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-727 (JPM) |
| | ) | |
| EVENFLO COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OPENING BRIEF IN SUPPORT OF EVENFLO'S RULE 50(A) ORAL MOTION FOR JUDGMENT AS A MATTER OF LAW**

# **TABLE OF CONTENTS**

I.     LEGAL STANDARD UNDER RULE 50(A)..................................................................1

II.    ARGUMENT ...............................................................................................................2

    A.    No Reasonable Jury Could Find That Evenflo Has Infringed the Asserted
          Claims of Wonderland's Patents..........................................................................2

           1.    Legal Standards for Infringement ..........................................................3
           2.    The '043 Patent: 4-in-1 Products ...........................................................4
           3.    The '043 Patent: 3-in-1 Products ...........................................................7
           4.    The '951 Patent......................................................................................8
           5.    Induced Infringement............................................................................10
           6.    Contributory Infringement ....................................................................11

    B.    No Reasonable Jury Could Find That Evenflo Willfully Infringed the '043
          Patent.................................................................................................................11

    C.    Wonderland's Claims for Reasonable Royalties Are Not Supported by
          Sufficient Evidence ...........................................................................................13

III.   CONCLUSION...........................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Apple Inc. v. Samsung Electronics Co., Ltd.*,
  839 F.3d 1034 (Fed. Cir. 2016)...................................................................................1

*Bai v. L & L Wings, Inc.*,
  160 F.3d 1350 (Fed. Cir. 1998)..................................................................................3

*Bayer Healthcare LLC v. Baxalta Inc.*,
  989 F.3d 964 (Fed. Cir. 2021)..................................................................................11

*Dawn Equip. Co. v. Kentucky Farms, Inc.*,
  140 F.3d 1009 (Fed. Cir. 1998)..................................................................................3

*Dow Chem. Co. v. Mee Indus., Inc.*,
  341 F.3d 1370 (Fed. Cir. 2003)................................................................................13

*E-Pass Technologies, Inc. v. 3Com Corp.*,
  473 F.3d 1213 (2007).................................................................................................10

*Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*,
  946 F.3d 1367 (Fed. Cir. 2020)...........................................................................11, 12

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
  535 U.S. 722 (2002).....................................................................................................9

*Fireman's Fund Ins. Co. v. Videfreeze Corp.*,
  540 F.2d 1171 (3d Cir. 1976)......................................................................................2

*Garretson v. Clark*,
  111 U.S. 120 (1884)...................................................................................................13

*Hoganas AB v. Dresser Indus., Inc.*,
  9 F.3d 948 (Fed. Cir. 1993) ........................................................................................4

*Karlin Tech., Inc. v. Surgical Dynamics, Inc.*,
  177 F.3d 968 (Fed. Cir. 1999).....................................................................................3

*Kremsky v. Kremsky*,
  758 Fed. Appx. 236 (3d Cir. 2018)..............................................................................2

*Lear Siegler, Inc. v. Sealy Mattress Co. of Mich.*,
  873 F.2d 1422 (Fed. Cir. 1989)...................................................................................4

*Lucent Techs. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009)................................................................................4, 13

*Marra v. Phila. Hous. Auth.*,
  497 F.3d 286 (3d Cir. 2007)...........................................................................................1

*MKS Instruments, Inc. v. Advanced Energy Indus., Inc.*,
  325 F. Supp. 2d 471 (D. Del. 2004)................................................................................4

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  843 F.3d 1315 (Fed. Cir. 2016).......................................................................................4

*Rego v. ARC Water Treatment Co. of Penn.*,
  181 F.3d 396 (3d Cir. 1999)............................................................................................2

*ResQNet.com, Inc. v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010).......................................................................................13

*Seal-Flex, Inc. v. Athletic Track & Ct. Const.*,
  172 F.3d 836 (Fed. Cir. 1999).........................................................................................3

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
  930 F.3d 1295 (Fed. Cir. 2019).....................................................................................13

*Tex. Instruments Inc. v. Cypress Semiconductor Corp.*,
  90 F.3d 1558 (Fed. Cir. 1996).........................................................................................4

*VirnetX, Inc. v. Cisco Sys., Inc.*,
  767 F.3d 1308 (Fed. Cir. 2014).....................................................................................13

**Statutes**

35 U.S.C. § 271(a) ...........................................................................................................3

**Rules**

Federal Rule of Civil Procedure 50 ..................................................................................1

Federal Rule of Civil Procedure 50(a).....................................................................*passim*

Federal Rule of Civil Procedure 50(b)..............................................................................1

Pursuant to Federal Rule of Civil Procedure 50(a), Evenflo Company, Inc. ("Evenflo") submits this opening brief in support of Evenflo's Rule 50(a) oral motions for judgment as a matter of law, as set forth on the record at the close of Plaintiff's case-in-chief and renewed at the close of all evidence.[1]  While the Court denied the motions,[2] Evenflo submits this brief for completeness of the record. Evenflo respectfully moves for judgment as a matter of law that (1) Evenflo has not infringed any of the asserted claims of U.S. Patent Nos. 7,625,043 or 8,141,951, either literally or under the doctrine of equivalents, either directly or indirectly;[3] (2) Evenflo has not willfully infringed the '043 patent; and (3) Wonderland Switzerland Ag ("Wonderland") has not presented sufficient evidence to be entitled to a reasonable royalty.  Evenflo, therefore, requests that the Court issue judgment as a matter of law, deciding these issues in Evenflo's favor.[4]

## I.      LEGAL STANDARD UNDER RULE 50(A)

Motions for judgment as a matter of law raise procedural issues that are not unique to patent law and thus are reviewed under the law of the regional circuit in which the appeal from the district court would usually lie.  *Apple Inc. v. Samsung Electronics Co., Ltd.*, 839 F.3d 1034, 1040 (Fed. Cir. 2016) (en banc).  In the Third Circuit, entry of judgment as a matter of law is appropriate when "there is insufficient evidence from which a jury reasonably could find liability."  *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007) (citation omitted).  In other words, "a party is

---

[1] *See* 1/11/23 (Transcript Of The Rule 50 Motion), 4:8-7:9, 14:8-15:5, 17:9-19:8; 1/12/23 Trial Transcript, 1521:16–1538:5 (Evenflo's Renewed Rule 50(a) oral motion), 1565 (authorizing filing of written Rule 50(a) motion within 10 days).

[2] *See* 1/11/23 Rule 50 Motion Trial Transcript, 16:17–17:5, 20:17-18; 1/12/23 Trial Transcript, 1542:20–1543:4.

[3] Subsequent to Evenflo's oral Rule 50(a) motion, Wonderland withdrew its claims of indirect infringement. *See* 1/12/23 Trial Transcript, 1511:3–9.

[4] Evenflo's Rule 50(a) motion is without prejudice to Evenflo presenting further evidence and argument following the verdict under Rule 50(b) or as provided by the Pretrial Order with respect to any request(s) for equitable or other relief, which request(s) should be denied.

entitled to judgment as a matter of law where a 'reasonable jury would not have legally sufficient evidentiary basis to find for the party on that issue.'" *Kremsky v. Kremsky*, 758 Fed. Appx. 236, 239 (3d Cir. 2018) (citing Fed. R. Civ. P. 50).

Rule 50(a) provides that a court may grant judgment as a matter of law in a jury trial at the close of the evidence if it determines that there is no legally sufficient evidentiary basis for a reasonable jury to find for a party on an issue. *Rego v. ARC Water Treatment Co. of Penn.*, 181 F.3d 396, 400 (3d Cir. 1999). Where the moving party bears the burden of proof, the Third Circuit standard "requires the judge to test the body of evidence not for its insufficiency to support a finding, but rather for its overwhelming effect." *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1177 (3d Cir. 1976) (internal citations omitted). The court "must be able to say not only that there is sufficient evidence to support the finding, even though other evidence could support as well a contrary finding, but additionally that there is insufficient evidence for permitting any different finding." *Id.* (internal citations omitted).

## II.    ARGUMENT

### A.    No Reasonable Jury Could Find That Evenflo Has Infringed the Asserted Claims of Wonderland's Patents

Wonderland alleges that Evenflo's accused 4-in-1 products (EveryFit/EveryKid) and accused 3-in-1 products (Evolve, Transitions, and SafeMax) infringe claim 1 of the '043 patent. Wonderland also alleges that Evenflo's accused 4-in-1 products infringe claims 1, 4, 5, and 6 of the '951 patent and Evenflo's accused 3-in-1 products infringe claims 1 and 4 of the '951 patent.[5] Wonderland failed to present sufficient evidence from which a reasonable jury could find

---

[5] Claims 7 and 8 of the '951 patent, which Wonderland previously asserted against the 3-in-1 and 4-in-1 products, and claims 5 and 6 of the '951 patent as previously asserted against the 3-in-1 products have been withdrawn by Wonderland.

infringement of any of these claims—literally or under the doctrine of equivalents—and Evenflo is entitled to judgment as a matter of law of noninfringement. Wonderland has the burden of proof to establish infringement, and for at least the reasons stated herein, it failed to meet its burden.

### 1. Legal Standards for Infringement

Whoever, without authority, makes, uses, sells, or offers to sell any patented invention in the United States is liable for patent infringement. 35 U.S.C. § 271(a). Determining whether a patent claim has been infringed involves two steps: (1) claim construction to determine the scope of the claims, followed by (2) determination of whether the properly construed claim encompasses the accused structure. *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998). The first step, claim construction, involves a question of law for the court. *Id.* The second step, determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact. *Id.* To show infringement of a patent, a patentee must supply sufficient evidence to prove that the accused product contains, either literally or under the doctrine of equivalents, every limitation of the properly construed claim. *Seal-Flex, Inc. v. Athletic Track & Ct. Const.*, 172 F.3d 836, 842 (Fed. Cir. 1999).

For literal infringement, JMOL in favor of a party is properly granted "if no reasonable jury could determine that every limitation recited in the properly construed claim either is not, or is, found in the accused device." *Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 974 (Fed. Cir. 1999).

For infringement under the doctrine of equivalents, the inquiry involves determining whether "the element of the accused device at issue performs substantially the same function in substantially the same way, to achieve substantially the same result, as the limitation at issue in the claim." *Dawn Equip. Co. v. Kentucky Farms, Inc.,* 140 F.3d 1009, 1015–16 (Fed. Cir. 1998) (describing the "function/way/result" inquiry). A patentee must "provide particularized testimony

and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device or process, or with respect to the function, way, result test when such evidence is presented." *Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996).  Conclusory statements are not enough to sustain a claim of equivalence.  *MKS Instruments, Inc. v. Advanced Energy Indus., Inc.*, 325 F. Supp. 2d 471, 473 (D. Del. 2004).  A patentee's "evidence and argument on the doctrine of equivalents cannot merely be subsumed in [its] case of literal infringement."  *Lear Siegler, Inc. v. Sealy Mattress Co. of Mich.*, 873 F.2d 1422, 1425 (Fed. Cir. 1989).  In addition, prosecution history estoppel prevents a patentee from using the doctrine of equivalents to recapture subject matter surrendered during prosecution from the literal scope of a claim.  *See Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 950 n.6 (Fed. Cir. 1993).

"To prove inducement of infringement, the patentee must [ ]show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement."  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016). "In order to succeed on a claim of contributory infringement, in addition to proving an act of direct infringement, plaintiff must show that defendant knew that the combination for which its components were especially made was both patented and infringing and that defendant's components have no substantial non-infringing uses." *Lucent Techs. v. Gateway, Inc.,* 580 F.3d 1301, 1320 (Fed. Cir. 2009).[6]

### 2.  The '043 Patent: 4-in-1 Products

Claim 1 of the '043 patent recites:

---

[6] As noted *supra*, subsequent to Evenflo's oral Rule 50(a) motion, Wonderland withdrew its claims of indirect infringement. *See* 1/12/23 Trial Transcript, 1511:3–9. They are discussed herein for completeness.

1. A car seat for use in an automobile to transport a child, comprising: a seat assembly defining a generally horizontal seat surface for supporting a child positioned thereon, said seat assembly including a pair of receptacles; and

a seat back having a locking mechanism for selectively detachably connecting said seat back to said seat assembly, said seat back including a rear support portion oriented in generally upright position when attached to said seat assembly, said seat back having a pair of attachment arms projecting generally perpendicularly outwardly relative to said rear support portion for engagement with said seat assembly so as to be received within corresponding said receptacles.[7]

No reasonable jury could find that Evenflo's 4-in-1 products infringe claim 1 of the '043 patent literally or under the doctrine of equivalents because, at a minimum, they do not include (1) "a pair of receptacles," (2) "a pair of attachment arms," or (3) "a seat back having a locking mechanism."

*"A pair of receptacles":* As the evidence showed, the 4-in-1 products have a single space or cavity in a seat bottom, not a pair of receptacles,[8] and a reasonable jury could not find otherwise.[9] In addition, Wonderland did not any present evidence to establish that this limitation would be met under the doctrine of equivalents.

*"A pair of attachment arms":* The rails of the 4-in-1 products are not generally perpendicular, and the rails do not engage with the booster assembly.[10] In addition, the guiding horns on the booster seat are not generally perpendicular, do not engage with the booster assembly,

---

[7] *See* Trial Exhibit No. 1, at 10:47–60.

[8] Evenflo continues to object to the construction and/or lack of clarification of the construction of receptacle, precluding certain arguments with respect to whether that limitation is met. Nonetheless, under any construction, the accused products do not meet this limitation. *See generally*, Evenflo's Opposition to Wonderland's Motion in *Limine* No. 1 Regarding Claim Construction (D.I. 148); Order on Motions in *Limine* (D.I. 176).

[9] *See, e.g.*, Trial Exhibits Nos. 24, 24a, 25; 1/10/23 Trial Transcript, 739:8–742:4 (Bryan Adams testimony).

[10] *See, e.g.*, Trial Exhibits Nos. 24, 24a, 25, 28–33; 1/10/23 Trial Transcript, 715:13–717:14, 723:14–24, 730:12–732:13 (Bryan Adams testimony); 1/12/23 Trial Transcript, 1442:17–1445:19 (Corey Campbell testimony).

and therefore and cannot meet this limitation.[11] Furthermore, Wonderland did not present any evidence that these components are the same or have the same purpose or function.

Moreover, there is no infringement under the doctrine of equivalents because the rails are not equivalent to a pair of attachment arms.[12]  Under any construction, the rails do not engage with the booster seat assembly (function) using a specific geometry (way) to accomplish structural integration of the seat back with the seat assembly (result). Further, the rails and horns are separate components[13] with separate functions and purposes and do not project generally perpendicular from a rear support portion of the seat back, and Dr. Cameron's testimony was conclusory and insufficient to support a doctrine of equivalents theory.[14] Indeed, her doctrine of equivalents position that the rails are "received" into the seat assembly is no different than her opinions of literal infringement and misstates the function of the attachment arms of the claims, as well as the function of Evenflo's accused rails.

***"A seat back having a locking mechanism":*** The 4-in-1 products do not include "a seat back having a locking mechanism."  Any alleged locking mechanism for the 4-in-1 products is located on the booster base, *not* on the seat back.[15]  In addition, the alleged locking mechanism that Dr. Cameron pointed to "for selectively detachably connecting said seat back to said seat

---

[11] *See, e.g.*, Trial Exhibits Nos. 24, 24a, 25; 1/12/23 Trial Transcript, 1442:17–1445:19 (Corey Campbell testimony).

[12] *See, e.g.*, 1/12/23 Trial Transcript, 1442:17–1458:17 (Corey Campbell testimony).

[13] In fact, Dr. Cameron never opined that the combination of the two components would satisfy this limitation under the doctrine of equivalents; her equivalents theory was limited to the rails alone. Her testimony was conclusory and insufficient to support a doctrine of equivalents theory that this limitation was met.

[14] *See, e.g.*, 1/10/23 Trial Transcript, 1028:15–1030:11 (Kimberly Cameron testimony).

[15] *See, e.g.*, Trial Exhibits Nos. 24, 24a, 25; 1/10/23 Trial Transcript, 738:5–739:7 (Bryan Adams testimony); 1/12/23 Trial Transcript, 1458:18–1463:13 (Corey Campbell testimony).

assembly" does not have any movable parts and is incapable of "selectively detachably connecting." Further, Wonderland's evidence regarding infringement under the doctrine of equivalents for this limitation was conclusory and insufficient to support a finding of infringement.[16]

### 3.  The '043 Patent: 3-in-1 Products

No reasonable jury could find that Evenflo's 3-in-1 products infringe claim 1 of the '043 patent literally or under the doctrine of equivalents.  At a minimum, the 3-in-1 products do not include (1) "a pair of receptacles" or (2) "a pair of attachment arms."

*"A pair of receptacles":*  The 3-in-1 products do not have "a pair of receptacles."  They have a single cavity/space that is not a pair of receptacles.[17]  In addition, Wonderland did not present any evidence to establish that this limitation would be met under the doctrine of equivalents.

*"A pair of attachment arms":*  The 3-in-1 products do not have "a pair of attachment arms." They have structural tubes of the rail assembly that do not touch the booster.[18]  Moreover, there is no infringement under the doctrine of equivalents because the structural tubes of the 3-in-1 products does not engage with the booster, and Wonderland's evidence was insufficient to support a finding of infringement.[19]

---

[16] *See* 1/10/23 Trial Transcript, 1006:24-1008:15 (Kimberly Cameron testimony).

[17] *See, e.g.*, Trial Exhibit No. 53; 1/12/23 Trial Transcript, 1464:13–1469:7 (Corey Campbell testimony).

[18] *See, e.g.*, Trial Exhibit No. 53; 1/12/23 Trial Transcript, 1469:8–1473:11 (Corey Campbell testimony).

[19] *See, e.g.*, 1/11/23 Trial Transcript, 1076:11–1077:11 (Kimberly Cameron testimony).

### 4.  The '951 Patent

Wonderland failed to show, and no reasonable jury could find, that Evenflo's 3-in-1 products and 4-in-1 products include each and every limitation of the asserted claims (claims 1 and 4 for the 3-in-1 products, and claims 1, 4, 5, and 6 for 4-in-1 products).  The '951 patent describes a child safety seat with a height-adjustable backrest.  For height adjustment, the claimed invention requires a "driving device that is movably connected to the [adjustable] backrest."[20]  The "driving device" is composed of two distinct structures—a "connecting member" and "a pulling member connected to the connecting member."[21]  The claims recite a "backrest movably disposed on the engaging board" (claim 1) and require "a pulling member connected to the connecting member" (claim 1) and that "the driving device further comprises a spring connected between the engaging member and a protruding portion of the backrest" (claim 4).[22]  Wonderland failed to present sufficient evidence that the accused products infringe the asserted claims for at least the following reasons:

*"Backrest movably disposed on the engaging board" (claim 1):*  The accused seats have a single plastic handle or release button to adjust the height of the headrest.[23]  The backrest of all versions of Evenflo's accused products does not move (it is stationary), and a backrest is not a headrest.  Similarly, a headrest alone is not a backrest. The accused seats' plastic handle or release button does not move a back support and does not adjust along a board connected to a seat body.[24]

---

[20] *See* Trial Exhibit No. 10.

[21] *See id.*

[22] *See id.*

[23] *See, e.g.*, Trial Exhibits Nos. 24, 24a, 25, 53; 1/11/23 Trial Transcript, 1382:11–1388:2 (Corey Campbell testimony).

[24] *See* Trial Exhibits Nos. 24, 24a, 25, 53; 1/11/23 Trial Transcript, 1401:19–1403:4 (Corey Campbell testimony).

Further, Wonderland did not allege or present any evidence to support infringement under the doctrine of equivalents for this limitation.  This limitation therefore is not met literally or under the doctrine of equivalents, and no reasonable jury could find otherwise.

*"A pulling member connected to the connecting member" (claim 1):*  The accused products do not include "a pulling member connected to the connecting member."  The 3-in-1 products include a one-piece headrest button and the 4-in-1 products include a one-piece headrest handle.[25]   Under any construction of "connected to," the accused products do not meet this limitation and a reasonable jury could not find otherwise.[26]

Moreover, no reasonable jury could find the limitation is met because there is no equivalent pulling member connected to a connecting member in the accused products and Wonderland failed to show or argue otherwise.  Further, even if Wonderland had presented evidence of the doctrine of equivalents for this limitation, the doctrine of equivalents does not apply to this limitation because it is subject to prosecution history estoppel and thus is not entitled to any equivalents.  *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 733–34 (2002) (affirming ruling that prosecution history estoppel can arise for narrowing amendments and there is a presumption that a narrowing amendment surrenders all subject matter that falls between the original and amended claim scope).

*"The driving device further comprises a spring connected between the engaging member and a protruding portion of the backrest" (claim 4):*  Claim 4 further recites "a spring connected between the engaging member and a protruding portion of the backrest."  There is no evidence on

---

[25] *See* Trial Exhibits Nos. 24, 24a, 25, 53, 76.

[26] Evenflo continues to object to the construction of "connected to," precluding certain arguments with respect to whether this limitation is met.  *See*, *e.g.*, D.I. 192, which is incorporated herein by reference. Nonetheless, under any construction, the accused products do not meet this limitation.

which a reasonable jury could find claim 4 is infringed literally or under the doctrine of equivalents by the accused products for the same reasons that apply to claim 1.  In addition, in both the 3-in-1 and 4-in-1 products, a spring connects to the handle,[27] so the accused products cannot meet this limitation.

***Claims 5 and 6:*** For the 4-in-1 products, claims 5 and 6 are not infringed literally or under the doctrine of equivalents for the same reason as claim 1.  Claim 6 adds further requirements that "the backrest comprises a headrest portion and a body portion."  The 4-in-1 products are integrally formed and have a separate headrest, not a movable backrest.[28]  A reasonable jury cannot find this limitation is met either literally or under the doctrine of equivalents, and Wonderland failed to show otherwise.

### 5.  Induced Infringement

No reasonable jury could find induced infringement because there is no evidence of direct infringement, either literally or under the doctrine of equivalents.  Wonderland presented evidence of owner manuals, but owner manuals alone are insufficient to prove inducement.  *See, e.g.*, *E-Pass Technologies, Inc. v. 3Com Corp.*, 473 F.3d 1213, 1221–23 (2007).  Further, knowledge of the patents is not enough.  Wonderland presented no evidence of Evenflo's knowledge of the '951 patent or that Evenflo knew of the '043 patent and knew use of the accused products would allegedly constitute infringement.  Wonderland also presented no evidence of willful blindness or of requisite intent for inducement.

---

[27] *See, e.g.*, Trial Exhibits Nos. 24, 24a, 25, 53; 1/11/23 Trial Transcript, 1403:15–1406:16 (Corey Campbell testimony).

[28] *See, e.g.*, Trial Exhibits Nos. 24, 24a, 25; 1/11/23 Trial Transcript, 1406:17–1408:4 (Corey Campbell testimony).

### 6.  Contributory Infringement

No reasonable jury could find contributory infringement because there is no evidence of direct infringement, either literal or under the doctrine of equivalents, of any claims.  Further, knowledge of the patents is not enough.  Wonderland presented no evidence of Evenflo's knowledge of the '951 patent or that Evenflo knew of the '043 patent and knew use of the accused products would allegedly constitute infringement.  With respect to both the 3-in-1 and 4-in-1 products, both have suitable noninfringing uses (for instance, use as a booster seat would not implicate any of the asserted claims), and  Wonderland failed to present sufficient evidence to show otherwise.  As to the 4-in-1 products, they can be used in rear-facing mode, which would not practice either patent.  As to the 3-in-1 products, they can used in internal harness mode, which would not practice either patent.

### B.  No Reasonable Jury Could Find That Evenflo Willfully Infringed the '043 Patent

"Willful infringement is a question of fact."  *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 987 (Fed. Cir. 2021) (citation omitted).  "To establish willfulness, the patentee must show the accused infringer had a specific intent to infringe at the time of the challenged conduct." *Id.* (citing *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105–06 (2016)).  Knowledge of the asserted patent and evidence of infringement "is necessary, but not sufficient, for a finding of willfulness."  *Bayer Healthcare*, 989 F.3d at 987–88.  Rather, the concept of willfulness requires a jury to find "deliberate or intentional infringement."  *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020) (citation omitted).

To determine whether Evenflo acted willfully, facts that may be considered include, but are not limited, whether Evenflo acted consistently with the standards of behavior for its industry; whether Evenflo intentionally copied a product of Wonderland that is covered by the '043 patent;

whether or not Evenflo reasonably believed it did not infringe the '043 patent; whether or not Evenflo made a good-faith effort to avoid infringing the '043 patent, for example, whether Evenflo attempted to design around the '043 patent; and whether or not Evenflo tried to cover up its infringement.  *See Eko Brands*, 946 F.3d at 1377.

Wonderland failed to meet its burden to prove willful infringement of the '043 patent, and no reasonable jury could find willful infringement.[29]  First and foremost, Wonderland put on no evidence that its own products practice the '043 patent.  Instead, Wonderland tried to make the inference that because Evenflo knew about the '043 patent and Evenflo engineers had broken down the Nautilus product, Evenflo intentionally copied the product.[30]  But Bryan Adams, the lead engineer who developed the EveryFit/EveryKid, testified that his engineering team spent around eighteen months—roughly five to six thousand hours—designing the EveryFit/EveryKid and had no knowledge of the '043 patent.[31]  Eric Dahle, Evenflo's director of engineering and product safety, also testified that designing the 3-in-1 products was over a year-long process that took thousands of hours.[32]  Further, the parties stipulated that teardowns of competitor products are common in the industry, so this evidence showed that Evenflo acted consistently with standards of behavior in the industry.[33]

Wonderland also did not present evidence of Evenflo trying to cover up alleged

---

[29] *See* 1/12/23 Trial Transcript, 1536:1–1537:10 (Evenflo's Rule 50(a) oral motion).

[30] *See, e.g.*, 1/10/23 Trial Transcript, 794:2–797:16 (Andrew Davis live deposition testimony); 818:4–819:4 (Eric Dahle testimony).

[31] *See* 1/10/23 Trial Transcript, 750:1–10 (Bryan Adams testimony).

[32] *See* 1/10/23 Trial Transcript, 838:20–839:2 (Eric Dahle testimony).

[33] The parties stipulated in the preliminary and final jury instructions as follows: "It is routine and commonplace in the car seat industry for a company to do competitive research, including breaking down and testing competitors' products.  Both Evenflo and Wonderland engage in competitive research."

infringement or evidence to meet any elements of willfulness or show that Evenflo acted with willful blindness.  Wonderland therefore failed to meet its burden to establish that Evenflo's "conduct rose to the level of wanton, malicious, and bad-faith behavior required for willful infringement." *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1309 (Fed. Cir. 2019).

### C.   Wonderland's Claims for Reasonable Royalties Are Not Supported by Sufficient Evidence

The patentee bears the burden of proving damages. *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1372, 1381 (Fed. Cir. 2003). Where licenses are at issue, the patentee further has "the burden to prove that the licenses were sufficiently comparable." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1329 (Fed. Cir. 2009); *see ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010).

The most common approach to determining a reasonable royalty is through a hypothetical negotiation, which "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Lucent Techs., Inc.,* 580 F.3d at 1324. A less common approach is the "analytical method" which "focuses on the infringer's projections of profit for the infringing product." *Id.*

Regardless of the method used, "a patentee must take care to seek only those damages attributable to the infringing features." *VirnetX, Inc. v. Cisco Sys., Inc.,* 767 F.3d 1308, 1326 (Fed. Cir. 2014). A patentee "must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative," *Garretson v. Clark,* 111 U.S. 120, 121 (1884) (quotation marks omitted).

Wonderland failed to present sufficient evidence to show that it is entitled to a reasonable

royalty.[34] With respect to the royalty Wonderland proposed for alleged infringement of the '951 patent, Wonderland failed to meet its burden to show economically comparable agreements to establish a royalty rate through the testimony of Mr. Todd Schoettelkotte, and it failed to properly apportion any alleged damages.[35] Further, Wonderland failed to meet its burden to show entitlement to its alleged royalty for the '043 patent with Mr. Schoettelkotte's testimony.  He relied on the analytical method, failing to properly apportion, or to attribute the value of the patented invention as distinct from unpatented features of the accused products.[36]  Accordingly, there is insufficient evidence of a reasonable royalty.[37]

## III.   CONCLUSION

For the foregoing reasons, Evenflo's Rule 50(a) motion should be granted.

---

[34] *See* 1/12/23 Trial Transcript, 1525:16–1526:19 (Evenflo's Rule 50(a) oral motion).

[35] *See* 1/11/23 Trial Transcript, 1238:15–1282:1 (Todd Schoettelkotte testimony).

[36] *See id.*

[37] *See also* Evenflo's Motion To Exclude The Opinions Of Plaintiff's Damages Expert W. Todd Schoettelkotte (D.I. 98, 99, 129), which are incorporated herein by reference.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

_____

Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jtigan@morrisnichols.com

*Attorneys for Defendant*

OF COUNSEL:

Lauren Douville
B. Trent Webb
Aaron E. Hankel
Maxwell C. McGraw
Emily R. Sosolik
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO  64108
(816) 559-0348

Sharon A. Israel
Anita Liu
SHOOK, HARDY & BACON L.L.P.
600 Travis Street, Suite 3400
Houston, TX  77002
(713) 227-8008

January 23, 2023

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 23, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on January 23, 2023, upon the following in the manner indicated:

Karen E. Keller, Esquire                                          *VIA ELECTRONIC MAIL*
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Plaintiff*

Shamita D. Etienne-Cummings, Esquire             *VIA ELECTRONIC MAIL*
David M. Tennant, Esquire
Noah A. Brumfield, Esquire
Megan Ines, Esquire
Jacob Rothenberg, Esquire
ALLEN & OVERY LLP
1101 New York Avenue, NW
Washington, DC  20005
*Attorneys for Plaintiff*

Bijal V. Vakil, Esquire                                          *VIA ELECTRONIC MAIL*
Eric E. Lancaster, Esquire
ALLEN & OVERY LLP
530 Lytton Avenue, 2nd Floor
Palo Alto, CA  94301
*Attorneys for Plaintiff*

James N. Reed, Esquire                                        *VIA ELECTRONIC MAIL*
Michelle Wang, Esquire
Majesty Jala, Esquire
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, NY  10020
*Attorneys for Plaintiff*

Katherine Kieckhafer, Esquire                          *VIA ELECTRONIC MAIL*
ALLEN & OVERY LLP
One Beacon Street
Boston, MA  02108
*Attorneys for Plaintiff*


                                        */s/ Jeremy A. Tigan*
                                        _____
                                        Jeremy A. Tigan (#5239)

2