**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| WONDERLAND SWITZERLAND AG,<br><br>Plaintiff,<br><br>v.<br><br>EVENFLO COMPANY, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:20-cv-00727-JPM |

**PERMANENT INJUNCTION**

**ORDER GRANTING WONDERLAND'S POST-TRIAL MOTION FOR PROSPECTIVE RELIEF**

Before the Court is Plaintiff Wonderland Switzerland AG's ("Wonderland") Post-Trial Motion for Prospective Relief, filed on February 15, 2023. (ECF No. 233.) Wonderland moves the Court for a permanent injunction to enjoin Defendant Evenflo Company, Inc. ("Evenflo") from making, using, offering to sell, and selling its EveryKid, EveryFit, SafeMax, Evolve, and Transitions Car Seats. (Id.) This Motion for a permanent injunction is **GRANTED**.

# I. BACKGROUND

## A. Factual Background

Wonderland brought the instant action alleging that Evenflo's EveryFit, EveryKid, Evolve, SafeMax, and Transitions car seats ("the Accused Products") infringe U.S. Patent No. 7,625,043 ("the '043 Patent") and U.S. Patent No. 8,141,951 ("the '951 Patent"). (ECF No. 41.) Both Parties design, manufacture, and sell a variety of products for children including child car seats. (Id. ¶¶ 6, 9.) These patents describe child car seats that can be converted into different configurations or

otherwise adjusted so that children can safely continue to use the same car seat as they grow. (Id. ¶ 7.)

Wonderland is a corporation organized in Switzerland, with its principal place of business in Steinhausen, Switzerland. (Id. ¶ 1.) Wonderland and its affiliates design, manufacture, and sell products for children including car seats, play yards, strollers, rockers, and highchairs for brands such as Graco, Nuna, and Joie. (Id. ¶ 6.)

Evenflo is a Delaware corporation with its principal place of business in Miamisburg, Ohio. (ECF No. 107-1 at PageID 1584.) Evenflo was founded in 1920 and originally specialized in manufacturing baby feeding products such as infant feeding nipples. (Id.) Evenflo has since expanded its product lines to include bottles, sterilizers, car seats, strollers, safety gates, play pens, highchairs, and other child-focused products. (Id.)

*i. Evenflo's EveryFit / EveryKid Car Seats*

The EveryFit and EveryKid car seats are 4-in-1 convertible car seats manufactured by Evenflo. (Id. at PageID 1585.) These car seats can be used in four different modes: "(1) a rear-facing mode, (2) a forward facing mode, (3) a highback booster mode, and (4) a no-back booster mode." (Id.) The EveryFit and EveryKid car seats have nearly identical designs. (Id. at PageID 1586.) The primary differences between them include their price, quality of soft goods, fabric color, and whether the seat includes a removable snack tray. (Id. at PageID 1586.)

*ii. Evenflo's Evolve / SafeMax / Transitions Car Seats*

The Evolve, SafeMax, and Transitions car seats are 3-in-1 convertible car seats manufactured by Evenflo. (Id.) These car seats can be used in three different modes: (1) a forward facing harness mode, (2) a highback booster mode, and (3) a no-back booster mode. (Id.) The Evolve, SafeMax, and Transitions car seats have nearly identical designs. (Id. at PageID 1585–

88.) The primary differences between them include the shape and styling of the head rests, the soft goods design, and the presence of cup holders. (Id. at PageID 1585–88.)

*iii. The '043 Patent*

The '043 Patent is titled "Child Car Seat with Multiple Use Configurations" and was issued on December 1, 2009. (ECF No. 41 at PageID 512.) Wonderland is the assignee of the '043 Patent and has the full and exclusive right to bring suit and enforce the '043 Patent. (Id. ¶ 16.) The '043 Patent describes a car seat for use in transporting children in an automobile that can be utilized in different configurations for children of different sizes. ('043 Patent col. 1 ln. 15–20.) This car seat includes a seat member and a seat back portion that are detachable from one another so that the seat can be used as either a car seat or a booster seat. (Id. col. 3 ln 24–29.) The car seat described by the '043 Patent also has a vertically movable head rest that can be adjusted to accommodate the growth of the child using the car seat. (Id. col. 4 ln 12–17.)

*iv. The '951 Patent*

The '951 Patent is titled "Child Safety Seat" and was issued on March 27, 2012. (ECF No. 41 at PageID 536.) Wonderland is the assignee of the '951 Patent and has the full and exclusive right to bring suit and enforce the '951 Patent. (Id. at ¶ 21.) The '951 Patent describes "a child safety seat equipped with a mechanism for adjusting [the] height of the backrest." ('951 Patent col. 1 ln 15–16.) The adjustment mechanism uses an engaging board with tooth-shaped structures and an engaging mechanism that engages and disengages with these tooth-shaped structures to allow adjustment. (Id. col. 6 ln. 46–55.)

**B. Procedural Background**

Wonderland filed its initial complaint alleging patent infringement on May 29, 2020. (ECF No. 1.) Wonderland filed a First Amended Complaint on May 24, 2021. (ECF No. 41.) The Parties engaged in claim construction briefing and the Court held a claim construction hearing on

August 23, 2021. (ECF Nos. 46, 77.) The Court issued a Claim Construction Order on August 26, 2021, construing the terms "receptacle" and "engagement." (ECF No. 66.) The Court conducted jury selection on January 6, 2023 and held a 5-day jury trial on this matter between January 9, 2023 and January 13, 2023. (ECF Nos. 245–250.) The jury returned a verdict on January 13, 2023, finding that Evenflo infringed one or more claims of both the '043 Patent and the '951 Patent with each of the Accused Products, but that Evenflo's infringement was not willful. (ECF No. 207.) The Court entered Judgment in Wonderland's favor on January 18, 2023. (ECF No. 210.)

Wonderland filed the Instant Motion with an accompanying Opening Brief and Declarations on February 15, 2023. (ECF Nos. 233, 236, 237, 238.) Evenflo filed its Answering Brief in Opposition and accompanying Declaration on March 15, 2023. (ECF Nos. 254, 255.) Wonderland filed its Reply on March 29, 2023. (ECF No. 267.) The Court held a hearing on multiple pending Motions, including the instant Motion, on May 3, 2023. (ECF No. 279.)

## II. LEGAL STANDARD

The Federal Circuit has provided the following guidance in relation to the issuance of a permanent injunction following a finding of infringement:

> The Patent Act provides a patentee with the "right to exclude others from making, using, offering for sale, or selling the [patented] invention." 35 U.S.C. § 154(a)(1). This right has its roots in the U.S. Constitution's Intellectual Property Clause, which refers to inventors' "exclusive Right to their respective . . . Discoveries." U.S. Const. art. I, § 8, cl. 8. In furtherance of this right to exclude, district courts "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. "[N]ot surprising[ly], given the difficulty of protecting a right to *exclude* through monetary remedies that allow an infringer to *use* an invention against the patentee's wishes," historically courts have "granted injunctive relief upon a finding of infringement in the vast majority of patent cases." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 395 (2006) (Roberts, C.J., concurring) (emphasis in original).

> A party seeking a permanent injunction must demonstrate:
>
>> (1) that it has suffered an irreparable injury;
>> (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.
>
> Id. at 391 (majority opinion). The decision to award or deny permanent injunctive relief lies within the equitable discretion of the district court; these traditional equitable principles do not permit the adoption of "certain expansive principles suggesting that injunctive relief could not issue in a broad swath of cases." Id. at 391, 393.

Apple Inc. v. Samsung Electronics Co., Ltd., 809 F.3d 633, 638–639 (Fed. Cir. 2015) (alterations in original).

"If the court determines that a conduct-barring injunction is not warranted, it may instruct the parties to try to negotiate an ongoing royalty and, if the parties cannot agree, award a royalty." Prism Techs. LLC v. Sprint Spectrum L.P., 849 F.3d 1360, 1377 (Fed. Cir. 2017). An ongoing royalty is not justified "as a matter of course whenever a permanent injunction is not imposed." Paice LLC v. Toyota Motor Corp., 504 F.3d 1293, 1315 (Fed. Cir. 2007).

> In most cases, where the district court determines that a permanent injunction is not warranted, the district court may wish to allow the parties to negotiate a license amongst themselves regarding future use of a patented invention before imposing an ongoing royalty. Should the parties fail to come to an agreement, the district court could step in to assess a reasonable royalty in light of the ongoing infringement.

Id.

If a district court determines that imposition of an ongoing royalty is warranted, the court must provide a "concise but clear explanation" of its reasons for the fee award imposed. Id. (citing Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)).

## III. ANALYSIS

Wonderland moves the Court to enter a permanent injunction enjoining Evenflo from its continued infringement or, in the alternative, to pay an enhanced ongoing royalty. (ECF No. 223.) Wonderland argues that prior to Evenflo's infringement it was the sole producer of 3-in-1 car seats with forward-facing harness mode, a high-back booster mode, and a no-back booster mode. (ECF No. 236 at PageID 11140.) Wonderland also argues that it was the sole producer of 4-in-1 car seats with a rear facing harness mode, a forward-facing harness mode, a high back booster mode, and a no back booster mode. (Id.)

### A. Wonderland Has Suffered an Irreparable Injury

"To satisfy the first eBay factor, the patentee must show that it is irreparably harmed by the infringement. This requires proof that a 'causal nexus relates the alleged harm to the alleged infringement.'" Apple Inc., 809 F.3d at 639 (quoting Apple Inc. v. Samsung Elecs. Co., 695 F.3d 1370, 1374 (Fed. Cir. 2012) [hereinafter "Apple II"]). "This just means that there must be proof that the infringement causes the harm." Id. at 640. "The purpose of the causal nexus requirement is to establish the link between the infringement and the harm, to ensure that there is 'some connection' between the harm alleged and the infringing acts." Id. (citing Apple II, 695 F.3d at 1264).

"When a patentee alleges it suffered irreparable harm stemming from lost sales solely due to a competitor's infringement, a finding that the competitor's infringing features drive consumer demand for its products satisfies the causal nexus inquiry." Id. at 641. When a product contains features in addition to the infringing features, it may "be nearly impossible from an evidentiary standpoint" to prove that the infringing features are the sole features driving consumer demand, and the causal nexus requirement does not demand such a showing. Id. Evaluating causal

connection is a "flexible analysis," and "proving a causal nexus requires the patentee to show 'some connection' between the patented features and the demand for the infringing products." Id

Irreparable injury may also be caused by "erosion in reputation and brand distinction." Douglas Dynamics, 717 F.3d at 1344. "Simply because a patentee manages to maintain a profit in the face of infringing competition does not automatically rebut a case for irreparable injury." Id. Irreparable harm may still occur even if the patentee managed to increase its market share. Id. Infringing activity may cause the patentee's product to "lose some of its distinctiveness and market lure because competitors could contend that they had 'similar features' without noting that those features infringe [the patentee's] proprietary technologies." Id.

Wonderland argues that Evenflo's products directly compete with Graco's products, and therefore by extension such competition harms Wonderland in a manner sufficient to establish irreparable harm. (ECF No. 236 at PageID 11140.) Wonderland also argues that it has irreparably lost market share, and will continue to lose market share, in the products that it makes outside of car seats such as play yards, strollers, and highchairs. (Id. at PageID 11142.) Wonderland argues that this is because the initial lost sale of a Graco car seat results in reduced goodwill and later follow-on sales of other Graco products due to reduced brand loyalty. (Id. at PageID 11142–43.) Wonderland also argues that it has a policy against licensing its patents, and that Evenflo's infringement absent an injunction would result in irreparable harm by forcing Wonderland to deviate from this policy of non-licensure that it maintains to protect the competitive position of Graco in the marketplace. (Id. at PageID 11144.)

In Response, Evenflo argues that Wonderland has not demonstrated that it will suffer irreparable harm and that Wonderland's assertions that it will suffer such harm are "threadbare, self-serving, and conclusory." (ECF No. 254 at PageID 10986.) Evenflo argues that Wonderland

has not cited any evidence of lost sales or market share, and further that Wonderland has not demonstrated a causal nexus between the infringement and the alleged harm. (Id. at PageID 10988.) Evenflo argues that the existence of competition is not enough to prove irreparable harm. (Id. at PageID 10989.) Evenflo argues that Wonderland is a manufacturer and does not sell directly to consumers, and therefore it cannot "stand in Graco's shoes for purposes of establishing irreparable harm." (Id.) Evenflo argues that, even if Wonderland could assert a harm that Graco had suffered, that Graco and Evenflo are not the only competitors in the market and that there is no evidence that Wonderland sells less product as a result of Evenflo's infringement. (Id. at PageID 10990.) Similarly, Evenflo argues that Wonderland has not pointed to any data showing that it lost goodwill or sales of other products such as highchairs, play yards, or strollers as a result of Evenflo's infringement. (Id. at PageID 10994–95.)

While Evenflo argues that Wonderland has failed to demonstrate any evidence that it will suffer lost sales or market share or that there is any causal nexus relating the alleged harm to the alleged infringement, this assertion is not supported by the record. (Id. at PageID 10986.) While Evenflo may dispute the weight of the evidence that Wonderland has put forth, Wonderland has put forth a significant body of testimony and evidence supporting its claims of lost sales, market share, and reputation. (See, e.g., ECF Nos. 246–250.) Wonderland's witnesses at trial provided significant testimony asserting that Wonderland has been, and will continue to be, directly harmed as a result of Evenflo's infringement of the Asserted Patents.

Renee Wang, a Wonderland employee, testified that Graco is Wonderland's biggest customer, and that Wonderland is the sole supplier for Graco's car seats. (ECF No. 246 at PageID

9506, 9521.) Kerry Strzelecki, a Newell Brands[1] employee, similarly testified that Graco and Wonderland have maintained a close working relationship for more than thirty-five years, and that Wonderland is Graco's exclusive supplier for its car seats. (ECF No. 248 at PageID 10256–57.) Jon Conaway, an Evenflo employee, testified that Graco is one of Evenflo's top competitors in the U.S. market for car seats. (ECF No. 247 at PageID 9903.) Eric Dahle, another Evenflo employee, testified that the accused products were developed specifically to compete directly with Graco's products. (Id. at PageID 9792–98.) Renee Wang also provided testimony that Evenflo's infringement naturally leads to the loss of Graco's market share across other products because a parent might choose to purchase strollers, play yards, highchairs, or other products from the same brand from which they first purchased a car seat. (ECF No. 246 at PageID 9532–34.)

Wonderland has provided sufficient evidence to demonstrate that it will suffer irreparable harm as a result of Evenflo's continued infringement. Witnesses called at trial testified that the Accused Products directly competed with Graco's products, and that this competition has reduced Graco's market share. While Graco and Wonderland are separate businesses and legal entities, the fact that Wonderland is Graco's sole supplier of car seats demonstrates that Wonderland will be directly injured by Graco's lost sales of car seats or loss of market share in the car seat market. The evidence before the Court demonstrates that Wonderland has suffered irreparable harm stemming from lost sales and market share, and that there is a causal nexus between Evenflo's infringement and the harm to Wonderland. Apple Inc., 809 F.3d at 639–640. Based on the evidence presented, sales of Evenflo's Accused Products have, and are likely in the future, to come

---

[1] Graco is a "brand that is owned by" Newell Brands and is "the biggest brand, not only in the baby division but also for Newell Brands overall." (ECF No. 247 at PageID 9867; ECF No. 248 at PageID 10251, 10254.)

at the expense of reduced sales of Graco's, and by extension Wonderland's, products. The Accused Products were intentionally developed with the goal of replacing, and directly competing with, Graco's products. (ECF No. 247 at PageID 9792–98.) Evenflo deliberately developed its products to be priced lower than Graco's products. (ECF No. 246 at PageID 9586–87.) The similarity between Graco's products and Evenflo's Accused Products has caused Graco's products to lose some of their "distinctiveness and market allure" and has also harmed Graco's reputation as an innovator in the marketplace. While such reputational and product-specific factors are likely to impact Graco more directly, they still cause Wonderland irreparable harm because of Graco and Wonderland's close working relationship and exclusive supplier arrangement.

Evenflo and Wonderland's status as direct competitors in the same market further serves as "one factor suggesting strongly the potential for irreparable harm." Presidio Components, Inc. v. American Technical Ceramics Corp., 702 F.3d 1351, 1363 (Fed. Cir. 2012); Douglas Dynamics, LLC v. Buyers Products Co., 717 F.3d 1336, 1345 (Fed. Cir. 2013) ("Where two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions.").

Because Wonderland will suffer irreparable harm from Evenflo's continued infringement of the '043 Patent and the '951 Patent, the first eBay factor weighs in favor of enjoining Evenflo's infringing conduct.

**B. Monetary Damages are Inadequate to Compensate for Evenflo's Infringement**

"The second eBay factor is whether 'remedies available at law, such as monetary damages, are inadequate to compensate' for the irreparable harm suffered by the patentee." Apple Inc., 809 F.3d at 644–645 (quoting eBay, 547 U.S. at 391). Monetary damages may be an inadequate remedy for harm caused by patent infringement when the harm, including harm from lost sales, is difficult to quantify. Id. at 645. Courts have recognized that it may be difficult to quantify harm

in cases where the sale of a single product can influence the future sale of other products produced by the patentee.[2] Id. Courts have also recognized that an individual customer who is satisfied with a product might recommend and advertise the product to their friends, family, and colleagues, which may result in further lost sales that are difficult to quantify.[3] (Id.)

Reputational loss can also be an irreparable harm for which monetary damages are an inadequate remedy. Douglas Dynamics, 717 at 1345. This is especially true when an infringer manages to increase their share in the market through its infringing activity. Id.

Wonderland argues that monetary damages are inadequate compensation because such damages cannot compensate for its loss of market share. (ECF No. 236 at PageID 11144.) Wonderland argues that monetary damages cannot compensate for the harm caused by "Evenflo's unauthorized use of its patented technology, which contravenes Wonderland's policy (and right) to not license its patents to third parties." (Id. at PageID 11145.) Wonderland argues that Evenflo has a history of continuing sales of infringing products in previous litigation, and that there is no reason to believe that Evenflo will cease its infringement of the '043 Patent and '951 Patent absent an injunction. (Id.)

In Response, Evenflo argues that monetary damages are adequate to compensate Wonderland for any infringement. (ECF No. 254 at PageID 10996.) Evenflo reiterates its argument that Wonderland has cited no evidence of lost sales or lost market share, and further has provided no evidence of lost customer goodwill or harm to reputation. (Id.) Evenflo argues that a party's failure to voluntarily cease infringing conduct is, standing alone, insufficient to support a finding that money damages alone are inadequate. (Id.) Evenflo further argues that "Wonderland

---

[2] This effect is sometimes referred to as the "ecosystem effect." Apple Inc., 809 F.3d at 645.
[3] This is sometimes referred to as the "network effect." Apple Inc., 809 F.3d at 645

has not sustained its burden to show that money damages in the form of a reasonable royalty are not an adequate remedy for any future alleged infringement of the asserted patents." (Id. at PageID 10996–97.)

Wonderland's harm from lost sales, lost market share, and reputational loss are each harms that are difficult to quantify and for which monetary damages do not provide adequate compensation. A customer's decision to purchase an Evenflo car seat instead of a Graco car seat not only likely deprives Graco (and thus Wonderland) of a car seat sale, but also increases the chance that the customer will later purchase additional Evenflo products instead of Graco products and recommend Evenflo products to other potential customers. See Apple Inc., 809 F.3d at 645 (discussing ecosystem and network effects). The harm of Wonderland's lost sales and market share as a result of Evenflo's infringement is likewise difficult, if not impossible, to quantify. It is difficult to determine how many sales Wonderland will lose as a result of competition from Evenflo's Accused Products versus how many sales will be gained or lost as a result of other factors such as Wonderland's pricing model, differences in advertising, general market fluctuations, or a host of other factors.

Of particular importance is that Evenflo was able to create a new relationship with Walmart, a major car seat retailer, and it was able to successfully place its product on Walmart's shelves through the introduction of the Accused Products. It is difficult, if not impossible, to quantify the harm that Wonderland has suffered and will continue to suffer from having to defend its existing business relationship with Walmart in the face of Evenflo's infringement. Allowing Evenflo to get its foot in the door with Walmart and keep its foot in the door despite being found liable for infringement is likely to harm Evenflo in ways that, in the aggregate, are impossible to adequately compensate with monetary damages.

The harm to Wonderland's reputation is likewise difficult or impossible to quantify. Graco has a history of being a market and innovation leader and has developed several innovative products that it has used to build this reputation in the market. (ECF No. 246 at PageID 9350–51 (Renee Wang testifying that Graco was the first company to make the Swingomatic and portable Pack 'n Play, and that these innovations gave it a reputation that eventually led to its partnership with Wonderland).)

Allowing the Accused Products to continue to be sold alongside Graco's products would damage this reputation, because it would likely cause an average customer who is unaware that the Accused Products practice Wonderland's patents to assume that Graco's products do not contain unique or innovative technologies. Douglas Dynamics, 717 F.3d at 1344–45 ("[The patentee's] reputation as an innovator will certainly be damaged if customers found the same 'innovations' appearing in competitors' [products], particularly products considered less prestigious and innovative."). Given Wonderland and Graco's partnership and the fact that Wonderland owns the patents for the technology present in Graco's car seats, this reputational harm to Graco would cause reputational harm to Wonderland as well. Wonderland and Graco's image in the eyes of Walmart, Target, and other potential retailers would be harmed for the same reason. Wonderland may additionally suffer reputational harm because it may be seen as failing to enforce its intellectual property rights. Douglas Dynamics, 717 F.3d at 1345 ("Furthermore, . . . [the patentee's] reputation would be damaged if its dealers and distributors believed it did not enforce its intellectual property rights."). This reputational harm is difficult or impossible to quantify, and cannot be adequately compensated by awarding monetary damages.

Because the harms that Wonderland will suffer as a result of Evenflo's continued infringement cannot be adequately compensated by awarding monetary damages, the second eBay factor weighs in favor of enjoining Evenflo's infringing conduct.

**C. The Balance of Hardships Warrants an Injunction**

"To satisfy the third eBay factor, the patentee must show that the balance of hardships weighs in its favor." Apple Inc., 809 F.3d at 645 (citing eBay, 547 U.S. at 391). "This factor 'assesses the relative effect of granting or denying an injunction on the parties.'" Id. (quoting i4i Ltd. P'ship v. Microsoft Corp., 598 F.3d, 831, 862 (Fed. Cir. 2010)).

Infringement that causes a patentee to lose market share and downstream sales by forcing the patentee to compete against its own patented invention places a substantial hardship on the patentee and strongly weighs in favor of an injunction. Id. at 646 (citing Robert Bosch LLC v. Pylon Mfg. Corp., 659 F.3d 1142, 1156 (Fed. Cir. 2011)). Courts have found that this factor is especially determinative when the market is "essentially a two-horse race," meaning that the patentee and infringer are the two primary competitors in the market. Id.

"One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." Windsurfing Int'l, Inc. v. AMF, Inc., 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986). However, courts may still consider hardships suffered by an infringer when determining whether an injunction is warranted. Conceptus, Inc. v. Hologic, Inc., No. 09-cv-02280, 2012 WL 44064, *2-4 (N.D. Cal. Jan. 9, 2012) (noting that having to lay off nearly three hundred employees if an injunction were to be granted would pose a hardship on an infringer).

Wonderland argues that the balance of hardships favors an injunction, as any hardship Evenflo suffers stemming from an injunction would be far outweighed by the hardships Wonderland would suffer were the instant Motion to be denied. (ECF No. 236 at PageID 11145–

46.) Wonderland argues that it would face hardship because "Wonderland and Evenflo are direct competitors in the marketplace, [and] Wonderland has been effectively forced to compete against its own patented inventions." (Id. at PageID 11145.) Wonderland further argues that Evenflo has a history of continuing to sell infringing products even following an adverse judgment of infringement, and that an injunction is necessary to protect its interests. (Id. at PageID 11145–46.)

In Response, Evenflo argues that injunctive relief "may issue only in accordance with the principles of equity," and that in the instant action "equity dictates that injunctive relief should be denied." (ECF No. 254 at PageID 10998.) Evenflo argues that Wonderland has ignored the hardship Evenflo would face if the Court were to impose an injunction. (Id. at PageID 10986.) Evenflo also argues that the balance of hardships does not justify granting an injunction. (Id. at PageID 10998.) Evenflo argues that an injunction will require it to lay off more than 250 employees and shut down its plant in Piqua, Ohio where its car seats are manufactured. (Id.)

While Evenflo will undoubtedly suffer hardship from being enjoined from selling the Accused Products, such hardship is outweighed by the hardship that Wonderland would suffer from the denial of an injunction. As discussed above, Wonderland would continue to be harmed by losses in sales, market share, and reputation as a result of Evenflo's infringement. Wonderland points out that the accused products account for approximately 8% of Evenflo's net sales and roughly 5–6% of Evenflo's net profit. (ECF No. 236 at PageID 11146; ECF No. 238 at PageID 11158–59.) Evenflo does not appear to dispute these estimates. (See ECF No. 254.) While this is not an insignificant portion of Evenflo's business, it is not such a large portion that its loss will pose an insurmountable hardship to Evenflo's ability to conduct business if an injunction is imposed.

Evenflo will still be permitted to sell other car seats that do not practice the '043 Patent or the '951 Patent, as it did before developing the Accused Products. The fact that the enjoined portion of Evenflo's business was built on infringing products also weighs against the hardship Evenflo will suffer by being enjoined. Windsurfing Int'l, 782 F.2d at 1003 n.12. Furthermore, Evenflo is currently in the process of changing the design of the Accused Products so that they no longer include features protected by the '043 Patent or the '951 Patent. (ECF No. 279 at PageID 11581–82.) The fact that Evenflo has a forthcoming asserted non-infringing alternative reduces the hardship that Evenflo will face if the Accused Products are enjoined, because it may soon have similar alternative products that it can sell even with an injunction in place.

There is no compelling reason before the Court why the loss of jobs producing infringing products at Evenflo would outweigh Wonderland's right to exclude infringing products or the harm that Wonderland suffers from Evenflo's infringement.

Because the balance of hardships weighs in Wonderland's favor, the third eBay factor weighs in favor of enjoining Evenflo's infringing conduct.

**D. The Public Interest Would not be Disserved by a Permanent Injunction**

The fourth eBay factor requires the patentee to show that "the public interest would not be disserved by a permanent injunction." Apple Inc., 809 F.3d at 646 (quoting eBay, 547 at 391). "[T]he public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions." Apple Inc., 809 F.3d at 647. The fact that a patentee does not practice a patent does not prevent it from receiving injunctive relief, especially when the Parties are direct competitors in the same market. Presidio Components, 702 F.3d 1351.

Wonderland argues that the public interest is best served by an injunction.[4] (ECF No. 236 at PageID 11147.) Wonderland argues that in the instant action there is "no material trade-off between protecting Wonderland's patent rights and protecting the public." (Id.) Wonderland argues that an injunction will serve the public interest by incentivizing companies to invest in new technologies through the enforcement of protections provided by the patent system. (Id.) Wonderland concedes that access to safe car seats is "undoubtedly important to the public interest," but argues that its proposed injunction is narrowly tailored and will pose no risk to the supply of safe car seats on the market. (Id.) Specifically, Wonderland argues that Evenflo will still be permitted to sell other non-infringing car seat models, and that the proposed injunction will have no effect on car seats produced by other manufacturers. (Id. at PageID 11147–48.) Wonderland further argues that it "has adequate manufacturing capacity to satisfy consumer demand for the enjoined Evenflo car seats in the United States." (Id. at PageID 11148.)

In Response, Evenflo argues that the public interest does not justify an injunction, because Wonderland does not practice the '951 Patent and there is a social benefit to allowing consumers more varied and affordable car seat choices to promote the health and safety of children. (ECF No. 254 at PageID 10998–99.) Evenflo further argues that "Wonderland has not proven that it practices its patents," and Wonderland's argument that Evenflo is an infringing "repeat offender" is a "gross exaggeration." (Id.)

The Parties agree that the public interest is best served by easy access to safe and affordable car seats. Despite Evenflo's objections, Wonderland's proposed injunction will not threaten such

---

[4] While Wonderland argues that the public interest is best served by an injunction, this is a higher standard than required by this factor. The fourth eBay factor only requires that the public interest is not disserved by an injunction, not necessary that the public interest would be served by an injunction. Apple Inc., 809 F.3d at 646 (quoting eBay, 547 at 391).

access and granting the injunction will not be contrary to the public interest. There are several different manufacturers that produce and sell car seats that incorporate a number of different features in different price ranges. Evenflo has not demonstrated that removal of the Accused Products from the market will have a measurable impact on the availability of safe car seats. Customers will still be able to purchase many different types of car seats in different price bands, including Evenflo's non-infringing car seat models. Evenflo's arguments essentially amount to an argument that injunctions should be unavailable for any potentially life-saving device as a matter of public policy. This argument runs contrary to existing case law and is incompatible with the competing public interest of protecting property rights. Apple Inc., 809 F.3d at 647; WBIP, LLC v. Kohler Co., 829 F.3d 1317, 1343 (Fed. Cir. 2016) ("[The] reasoning [that having more manufacturers of a lifesaving good in the market is better for the public interest] is true in nearly every situation involving such goods, such that, if it alone is sufficient, it would create a categorical rule denying permanent injunctions for life-saving goods . . . . As the Supreme Court has warned, categorical rules regarding permanent injunctions are disfavored . . . [a]nd Congress has expressly indicated that injunctions may be granted in cases involving lifesaving goods, such as pharmaceutical drugs.").

Because the public interest will not be disserved by a permanent injunction, the fourth eBay factor weighs in favor of enjoining Evenflo's infringing conduct.

**E. Each of the Factors Weigh in Favor of Granting a Permanent Injunction**

Each of the four eBay factors weigh in favor of enjoining Evenflo's infringing conduct. Accordingly, Wonderland's motion for a permanent injunction is **GRANTED**. The details of the injunction are set forth in further detail in the conclusion.

**F. Ongoing Royalty**

Because the Court has granted Wonderland's motion for a permanent injunction, it will not address Wonderland's motion for an ongoing royalty as an alternative to a permanent injunction.

## IV. CONCLUSION

For the foregoing reasons, Wonderland's Motion for Prospective Relief / Permanent Injunction is **GRANTED**. The following is **ORDERED**:

1. Evenflo and each of its officers, agents, servants, employees, attorneys, and any other persons who are in active concert or participation with them, are hereby permanently enjoined from infringing the Adjudged Claims, including by making, using, offering to sell, and selling the Infringing Products (the EveryKid, EveryFit, SafeMax, Evolve, and Transitions Car Seats), and any other products only colorably different therefrom in the context of the Adjudged Claims, in the United States until the respective expiration of each Asserted Patent.

2. The Permanent Injunction entered herein is effective as of Tuesday, June 20, 2023 at 11:59 p.m. EDT.

3. The Court retains jurisdiction to enforce the Judgment and Permanent Injunction pertaining to this action.

**IT IS SO ORDERED**, this 7th day of June, 2023.

s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE